# United States Court of Appeals for the First Circuit

IMAD G. EL KHOURY,
Plaintiff - Appellant,

v.

MICHAEL GOULDING, Police Chief; EFTHIMIOS BOUSIOS, Sergeant;
WILLIAM CARLO, Detective/Police Prosecutor; NICOLE HOLMES,
Defendants - Appellees,

OXANA CUMMINGS,
Defendant.

On Appeal From A Judgment Of The United States
District Court For The District Of Massachusetts, Boston

## BRIEF FOR THE DEFENDANTS - APPELLEES
## MICHAEL GOULDING, Police Chief; EFTHIMIOS BOUSIOS, Sergeant;
## WILLIAM CARLO, Detective/Police Prosecutor; NICOLE HOLMES

Francesca Papia, Bar #1203977
Leonard H. Kesten, Bar #36865
Thomas R. Donohue, Bar #88816
Brody, Hardoon, Perkins & Kesten LLP
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 880-7100
FAX (617) 880-7171
fpapia@bhpklaw.com
lkesten@bhpklaw.com
tdonohue@bhpklaw.com

Dated: November 13, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF ISSUES ................................................................1

CONCISE STATEMENT OF THE CASE ...........................................1

    A.    Statement of Procedural History ............................................1

    B.    Statement of the Facts ...........................................................6

        1.    *The Landlord-Tenant Relationship Between the Plaintiff and Oxana Cummings* ...............................................6

        2.    *The May 24, 2020 Incident* ........................................6

        3.    *The June 2, 2020 Incident* ........................................ 12

        4.    *The Criminal Complaint Application* ........................ 13

        5.    *The May 14, 2021 Hearing* ...................................... 13

STANDARD OF REVIEW ..............................................................14

    A.    Motions for Summary Judgment ..........................................14

    B.    Motions to Strike ................................................................15

SUMMARY OF THE ARGUMENT ...............................................15

ARGUMENT ..................................................................................18

    I.    The Defendants' Motion for Summary Judgment was Properly Granted Because There is No Genuine Issue of Material Fact with Respect to Any of the Plaintiff's Claims. ...................................18

        A.    The District Court correctly granted summary judgment on the Plaintiff's Section 1983 claims against Chief Goulding and Sgt. Bousios. ......................................20

1. The Plaintiff's due process claim (Count I) fails because he was afforded adequate due process of law and the conduct of Sgt. Bousios and Chief Goulding does not "shock the conscience." .................21

    i. <u>The Plaintiff's procedural due process claim fails because he was afforded adequate due process of law.</u>......................................................21

    ii. <u>The Plaintiff's substantive due process claim fails because Sgt. Bousios' and Chief Goulding's conduct does not "shock the conscience."</u>........................................25

2. The Plaintiff's "class of one" equal protection claim fails because he cannot carry his burden of proving substantial similarity or malicious intent. ........26

3. The Plaintiff's § 1983 conspiracy claim (Count III) fails because he cannot show that Sgt. Bousios and Chief Goulding conspired to deprive him of any constitutional right or that he suffered a violation of a constitutional right due to any conspiracy. .............29

4. The Defendants are also entitled to qualified immunity. .......................................................30

B. Summary Judgment was also properly entered in favor of the Defendants with respect to the Plaintiff's state law claims. ......................................................................33

1. The Plaintiff's abuse of process claim (Count IV) fails because he cannot show that any of the Defendants had an ulterior motive for applying for a criminal complaint against him.................................33

2. The Plaintiff's malicious prosecution claim (Count V) fails because he cannot demonstrate malice. ............36

ii

3.     *The Plaintiff's assault claim (Count VI) fails because he has not proffered any admissible evidence to support such a claim.*....................................39

4.     *The Plaintiff's MCRA claim (Count VII) fails because he cannot demonstrate that the Defendants violated any federal or state rights or did so through threats, intimidation or coercion.* ..........40

5.     *The Plaintiff's intentional infliction of emotional distress claim (Count IX) fails as a matter of law because the Defendants' actions were not extreme or outrageous.*................................................................43

6.     *The Defendants are also protected by common law immunity against the Plaintiff's state law claims.*..........45

II.    The District Court Properly Denied the Plaintiff's Second Motion to Strike and Properly Allowed Portions of the Defendants' Motion to Strike.............................................................46

CONCLUSION......................................................................49

CERTIFICATE OF COMPLIANCE.....................................51

CERTIFICATE OF SERVICE ..............................................52

ADDENDUM

# TABLE OF AUTHORITIES

<small>Cases:</small>

*Agis v. Howard Johnson Co.*,
  371 Mass. 140 (1976)........................................................................... 44

*Albright v. Oliver*,
  510 U.S. 266 (1994) ........................................................................... 30

*Antelman v. Lewis*,
  480 F. Supp. 180 (D. Mass. 1979) ..................................................... 34

*Bally v. Northeastern Univ.*,
  403 Mass. 713 (1989).......................................................................... 41

*Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*,
  246 F.3d 1 (1st Cir. 2001) .................................................................. 27

*Beecy v. Pucciarelli*,
  387 Mass. 589 (1982)...................................................................... 34, 36

*Broadway Management Services, Ltd. v. Cullinet Software, Inc.*,
  652 F. Supp. 1501 (D. Mass. 1987) ................................................... 34

*Buchanan v. Maine*,
  469 F.3d 158 (1st Cir. 2006) .............................................................. 27

*Caban Hernandez v. Philip Morris USA, Inc.*,
  486 F.3d 1 (1st Cir. 2007) .................................................................. 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................14, 15

*Cohen v. Hurley*,
  20 Mass. App. Ct. 439 (1985)............................................................ 34

*Com. v. Burke*,
  390 Mass. 480 (1983)......................................................................35, 38

iv

*Com. v. Porro*,
  458 Mass. 526 (2010)................................................................. 35, 38

*Commonwealth v. McCan*,
  277 Mass. 199 (1931)................................................................. 35, 38

*Cordi-Allen v. Conlon*,
  494 F.3d 245 (1st Cir. 2007) ........................................................ 28

*County of Sacramento v. Lewis*,
  523 U.S. 833 (1998) ..................................................................... 26

*Datacomm Interface, Inc. v. Computerworld, Inc.*,
  396 Mass. 760 (1986)................................................................. 33, 36

*Diaz v. Devlin*,
  No. CV 16-40039-TSH, 2019 WL 4804803 (D. Mass. Sept. 30, 2019) ............ 39

*Dodi v. Putnam Cos.*,
  No. 95-2266, 1996 U.S. App. LEXIS 22177 (1st Cir. Aug. 28, 1996) ............... 15

*Doyle v. Hasbro, Inc.*,
  103 F.3d 186 (1st Cir. 1996) ........................................................ 44

*Duarte v. Healy*,
  405 Mass. 43 (1989)..................................................................... 45

*Earle v. Benoit*,
  850 F.2d 836 (1st Cir. 1988) ................................................ 29, 30, 49

*Echavarria v. Roach*,
  2017 WL 3928270 (D. Mass. Sept. 7, 2017) ..................................... 46

*Estate of Bennett v. Wainwright*,
  548 F.3d 155 (1st Cir. 2008) ........................................................ 29

*Evans v. Avery*,
  100 F.3d 1033 (1st Cir. 1996) ...................................................... 26

*FDIC v. Kooyomjian*,
  220 F.3d 10 (1st Cir. 2000) ................................................................. 15

*Febus-Rodriguez v. Betancourt-Lebron*,
  14 F.3d 87 (1st Cir. 1994) .................................................................... 32

*Feliciano de la Cruz v. El Conquistador Resort & Country Club*,
  218 F.3d 1 (1st Cir. 2000) .................................................................... 18

*Finucane v. Town of Belchertown*,
  808 F. Supp. 906 (D. Mass. 1992) ....................................................... 44

*Fletcher v. Wagner*,
  221 F. Supp. 2d 153 (D. Mass. 2002) .................................................. 37

*Foley v. Polaroid Corp.*,
  400 Mass. 82 (1987) ............................................................................ 44

*Foster from Gloucester, Inc. v. City Council of Gloucester*,
  10 Mass. App. Ct. 284 (1980) ............................................................. 45

*Freeman v. Town of Hudson*,
  714 F.3d 29 (1st Cir. 2009) .................................................................. 28

*Gagliardi v. Sullivan*,
  513 F.3d 301 (1st Cir. 2008) ................................................................ 20

*Garcia-Garcia v. Costco Wholesale Corp.*,
  878 F.3d 411 (1st Cir. 2017) ................................................................ 48

*Goddard v. Kelley*,
  629 F. Supp. 2d 115 (D. Mass. 2009) .................................................. 42

*Gutierrez v. Massachusetts Bay Transp. Authority*,
  437 Mass. 396 (2002) .......................................................................... 33

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ............................................................................ 32

*Howcroft v. City of Peabody*,
    51 Mass. App. Ct. 573 (2001) ................................................................. 43

*Krupien v. Ritcey*,
    94 Mass. App. Ct. 131, (2018) .............................................................. 43

*Landrigan v. City of Warwick*,
    628 F.2d 736 (1st Cir. 1980) ........................................................... 29, 30

*Maldonado v. Fontanes*,
    568 F.3d 263 (1st Cir. 2009) ............................................................... 32

*Mancuso v. MIAA, Inc.*,
    453 Mass. 116 (2009) ........................................................................ 41

*McCarthy v. Northwest Airlines*,
    56 F.3d 313 (1st Cir. 1995) ................................................................ 18

*Melanson v. Browning-Ferris Indus.*,
    281 F.3d 272 (1st Cir. 2002) ............................................................... 18

*Mongeau v. City of Marlborough*,
    462 F. Supp. 2d 144 (D. Mass. 2006) ................................................ 21

*Nieves v. McSweeney*,
    241 F.3d 46 (1st Cir. 2001) ........................................................... 30, 36

*Nollet v. Justs. of Trial Ct. of Com. of Mass.*,
    83 F. Supp. 2d 204 (D. Mass. 2000), *aff'd sub nom* .................... 22, 23

*Nollet v. Justs. of Trial Ct. of Com. of Massachusetts*,
    248 F.3d 1127 (1st Cir. 2000) ............................................................ 22

*Noviello v. City of Bos.*,
    398 F.3d 76 (1st Cir. 2005) ................................................................ 14

*Obert v. Republic W. Ins. Co.*,
    398 F.3d 138 (1st Cir. 2005) .............................................................. 15

*Pagán v. Calderón,*
    448 F.3d 16 (1st Cir. 2006) ................................................................. 25

*Pearson v. Callahan,*
    555 U.S. 223 (2009) .......................................................................... 32

*Pina v. Children's Place,*
    740 F.3d 785 (1st Cir. 2014) ............................................................... 18

*Pineda v. Toomey,*
    533 F.3d 50 (1st Cir. 2008) ................................................................. 14

*Raiche v. Pietroski,*
    623 F.3d 30 (D. Mass. 2010) ............................................................... 39

*Rakes v. United States,*
    352 F. Supp. 2d 47 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) .............. 15

*Rubinovitz v. Rogato,*
    60 F.3d 906 (1st Cir. 1995) ................................................................. 27

*SBT Holdings, LLC v. Town of Westminster,*
    547 F.3d 28 (1st Cir. 2008) ................................................................. 27

*SFW Arecibo, Ltd. v. Rodriguez,*
    415 F.3d 139 (1st Cir. 2005) ............................................................... 21

*Sietins v. Joseph,*
    238 F. Supp. 2d 366 (D. Mass. 2003) .................................................. 41

*South Boston Betterment Trust Corp. v. Boston Redevelopment Auth.,*
    438 Mass. 57 (2002) ..................................................................... 43, 45

*Stromberg v. Costello,*
    456 F. Supp. 848 (D. Mass. 1978) ...................................................... 37

*Tabia v. Dekeon,*
    No. CV 19-11132-LTS, 2019 WL 2578277 (D. Mass. June 24, 2019) .............. 22

*Tatro v. Kervin*,
41 F.3d 9 (1st Cir. 1994) ................................................................. 32

*Tetrault v. Mahoney, Hawkes & Goldings*,
425 Mass. 456 (1997) ..................................................................... 44

*Titus v. Town of Nantucket*,
840 F. Supp. 2d 404 (D. Mass. 2011) ............................................. 40

*United Paperworkers Int'l Union, Local 14 v. Int'l Paper Co.*,
64 F.3d 28 (1st Cir. 1995) ............................................................... 14

*Vittands v. Sudduth*,
49 Mass. App. Ct. 401 (2000) ......................................................... 34

*Walsh v. Town of Lakeville*,
431 F. Supp. 2d 134 (D. Mass. 2006) .............................................. 27

*Wilmot v. Tracey*,
938 F. Supp. 2d 116 (D. Mass. 2013) .............................................. 26

*Young v. City of Providence*,
404 F.3d 33 (1st Cir. 2005) ............................................................. 15

## STATUTES:

42 U.S.C. § 1983 ...................................................................... *passim*

M.G.L. c. 12, § 11H ................................................................................ 41
M.G.L. c. 209A ........................................................................... *passim*
M.G.L. c. 209A, §§ 1-3 ........................................................................... 22
M.G.L. c. 209A, § 4 ................................................................... 21, 23, 24
M.G.L. c. 209A, § 5 ................................................................................ 23

## RULES:

Fed. R. Civ. P. 56 ...................................................... 1, 14, 16, 19, 48

Fed. R. Evid. 104 ................................................................................... 49
Fed. R. Evid. 801) .................................................................................. 49

**OTHER AUTHORITIES:**

J.R. Nolan & L.J. Sartorio, Tort Law § 82 (2d ed.1989) ........................................ 33

Prosser & Keeton, Torts, § 121 (5th ed. 1984) ....................................................... 34

Restatement (Second) of Torts § 21 (1) (Am. Law Inst. 1965) ............................. 39

## STATEMENT OF ISSUES

I.   Whether the District Court properly granted summary judgment in favor
     of the Defendants, Town of Weston Police Chief Michael Goulding,
     Sergeant Efthimios Bousios, Detective William Carlo, and Officer Nicole
     Holmes?

    a.   Whether the District Court properly found that the Plaintiff failed to
          adequately identify disputes of material fact as required by Rule 56
          of the Federal Rules of Civil Procedure ("Rule 56")?

    b.   Whether the District Court properly found that the Plaintiff failed to
          submit any admissible evidence to controvert the Defendants'
          statement of material facts as required by Rule 56?

II.  Whether the District Court abused its discretion in denying the Plaintiff's
     second motion to strike?

III. Whether the District Court abused its discretion in allowing portions of the
     Defendants' motion to strike?

## CONCISE STATEMENT OF THE CASE

### A.   Statement of Procedural History

On July 21, 2021, the *pro se* Plaintiff, Imad El Khoury (the "Plaintiff"),
commenced this action against the Defendants, Chief Michael Goulding ("Chief
Goulding"), Sergeant Efthimios Bousios ("Sgt. Bousios"), Detective William Carlo

("Det. Carlo"), and Officer Nicole Holmes ("Officer Holmes") (collectively, the "Defendants"), alleging various federal and state law claims. [ECF Doc. 1-1]. Specifically, the Plaintiff has asserted three counts against Sgt. Bousios and Chief Goulding pursuant to 42 U.S.C. § 1983: a due process claim (Count I); a "class of one" equal protection claim (Count II); and a "conspiracy claim" (Count III). [ECF Doc. 1-1 at 20-23]. He has also asserted state law claims for abuse of process (Count IV) and malicious prosecution (Count V) against Defendants Bousios, Goulding, and Carlo for pursuing a criminal complaint for assault and battery against him. [ECF Doc. 1-1 at 23-24]. In addition, the Plaintiff has asserted a state law claim of assault (Count VI) and a claim under the Massachusetts Civil Rights Act ("MCRA") (Count VII) against Defendants Holmes and Goulding for interactions that occurred at Oxana Cummings' home when the Plaintiff returned to retrieve his belongings. [ECF Doc. 1-1 at 24-25]. Finally, the Plaintiff has asserted a state law claim for intentional infliction of emotional distress (Count IX) against all of the Defendants. [ECF Doc. 1-1 at 25-26].

On May 6, 2022, the Defendants filed a motion for summary judgment. [ECF No. 120]. On June 6, 2022, the Plaintiff filed an opposition to the Defendants' motion and a cross-motion for summary judgment. [ECF No. 124].

That same day, the Plaintiff also filed a motion to strike the Defendants' statement of fact ("SOF") ¶ 31 and its accompanying exhibit (i.e., Exhibit 13). [ECF

No. 123]. On June 21, 2022, the Defendants filed an opposition to the Plaintiff's motion to strike. [ECF No. 126]. Then, on June 29, 2022, the Plaintiff filed a motion for leave to add a false arrest claim against Sgt. Bousios, which the Defendants opposed. [ECF Nos. 129, 137].

On July 14, 2022, the Defendants filed a reply in connection with their summary judgment motion, as well as an opposition to the Plaintiff's cross-motion for summary judgment. [ECF No. 133]. That same day, the Defendants also moved to strike portions of the Plaintiff's affidavit and other submissions he filed regarding the parties' joint SOF. [ECF No. 136]. On July 25, 2022, the Plaintiff filed an opposition to the Defendants' motion to strike and a reply in support of his cross-motion for summary judgment. [ECF Nos. 139, 140]. He also filed another motion to, among other things, strike two exhibits (i.e., Exhibit Nos. 2 and 5) filed by the Defendants. [ECF No. 138]. On August 2, 2022, the Defendants filed an opposition to the Plaintiff's motion to strike. [ECF No. 142].

On November 21, 2022, the District Court held a hearing on the Defendants' motion for summary judgment and the parties' motions to strike. [ECF No. 146].

On February 9, 2023, United States Magistrate Judge Jennifer Boal denied the Plaintiff's motion for leave to amend his complaint to add a false arrest claim against Sgt. Bousios. [ECF No. 152]. In doing so, Magistrate Judge Boal found that the

Plaintiff's proposed amendment was not only too late, but also futile. [ECF No. 152 at 5].

Then, on February 10, 2023, Magistrate Judge Boal issued a Report and Recommendation regarding the parties' three motions to strike. [ECF No. 153]. With respect to the Plaintiff's first motion to strike, Magistrate Judge Boal recommended that Exhibit 13 be stricken and indicated that the Court would not consider the Defendants' SOF ¶ 31, which relied on Exhibit 13, in its analysis on the summary judgment motions. [ECF No. 153 at 4]. With respect to his second motion to strike, the Plaintiff had moved to strike the Defendants' Exhibit 2, which was a summons report regarding the Plaintiff that he claims was falsified. The Plaintiff submitted a different version of Exhibit 2 and requested that the Court consider his version instead. Because the Defendants had no objection to this, Magistrate Judge Boal recommended that the Plaintiff's motion to strike Exhibit 2 be denied as moot because, for purposes of summary judgment, the Court would rely on the Plaintiff's version of Exhibit 2. [ECF No. 153 at 5]. Magistrate Judge Boal also recommended that the Plaintiff's motion to strike Exhibit 5, which is Oxana Cummings' application for an abuse prevention order pursuant to M.G.L. c. 209A, be denied because there is no rule that documents submitted in support of summary judgment be authenticated. [ECF No. 153 at 5].

With respect to the Defendants' motion to strike, Magistrate Judge Boal recommended that the District Court strike portions of paragraphs 19 and 20 from the Plaintiff's affidavit. [ECF No. 153 at 7]. Magistrate Judge Boal also recommended that the Defendants' motion be granted with respect to paragraphs 24, 28, and 29 of the Plaintiff's affidavit and be denied as to paragraphs 23 and 26. [ECF No. 153 at 8-10]. Additionally, Magistrate Judge Boal indicated that, to the extent that any of the Plaintiff's SOFs rely on portions of his affidavit that she recommended be stricken, those facts were acknowledged as unsupported during the Court's analysis of the parties' cross-motions for summary judgment. [ECF No. 153 at 10].

On February 10, 2023, Magistrate Judge Boal also issued a separate Report and Recommendation, recommending that the Defendants' motion for summary judgment be granted and that the Plaintiff's cross-motion for summary judgment be denied. [ECF No. 154].

On February 24, 2023, the Plaintiff filed an objection to Magistrate Judge Boal's Report and Recommendations on the parties' motions for summary judgment and the parties' motions to strike, as well as Judge Boal's denial of the Plaintiff's motion for leave to add a false arrest claim. [ECF No. 156]. That same day, the Plaintiff also filed a motion for recusal of Judge Sorokin. [ECF No. 155].

On February 28, 2023, the Court (J. Sorokin) issued an Order in which it adopted the Reports and Recommendations in their entirety. [ECF No. 157]. Judgment entered on March 16, 2023. [ECF No. 159]. The Plaintiff filed his notice of appeal on March 17, 2023. [ECF No. 160].

**B.    Statement of the Facts**

   *1.    The Landlord-Tenant Relationship Between the Plaintiff and Oxana Cummings*

On January 1, 2020, the Plaintiff rented a room with its own bathroom at Oxana Cummings' house in Weston, Massachusetts. [ECF No. 134, ¶ 32]. Cummings shared the common areas with the Plaintiff, including the kitchen. [ECF No. 134, ¶ 2]. At all relevant times, the Plaintiff and Cummings had a landlord and tenant relationship. [ECF No. 134, ¶ 33].

   *2.    The May 24, 2020 Incident*

Relations between the Plaintiff and Cummings were civil until May 24, 2020. [ECF No. 134, ¶ 45]. On Sunday, May 24, 2020 at 4:27 p.m., the Plaintiff complained by text that he had no hot water and could not take a shower before going to work. [ECF No. 134, ¶ 47]. The Plaintiff had complained multiple times about the hot water situation since April 19, 2020. [ECF No. 134, ¶ 47]. Cummings, in turn, asked if she could come to the Plaintiff's room to check the water, and the Plaintiff agreed. [ECF No. 134, ¶ 50].

However, tensions rose during their interaction, and according to Cummings, the Plaintiff became "really loud" and "scary." [ECF No. 134, ¶ 9]. Cummings also alleges that the Plaintiff "got really mad and grab[bed] her arm." [ECF No. 134, ¶ 9].

In light of this, Cummings went to the Weston Police Station at approximately 6:30 p.m. that evening and met with Officer Amanda Broughton. [ECF No. 134, ¶¶ 9, 60]. While at the station, Cummings applied for an abuse prevention order pursuant to G.L. c. 209A. [ECF No. 134, ¶ 9]. In doing so, Cummings prepared an affidavit in support of a restraining order, which provided the following version of events:

> Everything was fine until this morning when Imad star sending me rude and threatening massages because we had irregular hot water in the house even thoug I told him that plumber coming tomorrow. We exchange massages about that all day and he kept on complaining and thettening me. The water was warm, but not super hot. So he continue to scream at me and damand 500$ back for inconvinean.... He was getting really agreavated, called me a liar and was shaking and was really loud a scary. After that went 10-15 min He got really mad and grab my right arm! I was really scared and left his room immedeatly and came to Weston police. My 19 y.o. daughter was in her room but got very scared because of that noice and now my kids and I afraid to come home. Pleas Help!

[ECF No. 134, ¶ 9]. Cummings' affidavit was witnessed by Sgt. Bousios, who assisted her in applying for the abuse prevention order. [ECF No. 134, ¶ 10]. In doing so, Sgt. Bousios used a black pen to handwrite three pages of the application for the abuse prevention order. [ECF No. 134, ¶ 86; ECF No. 83-7]. Additionally, the name of the police officer "SGT. E.G. BOUSIOS", and the name of the police department

"Weston'' are typed on the first page of the abuse prevention order. [ECF No. 134, ¶ 94]. Sgt. Bousios also took a photograph of Cummings' arm to document where she indicated El Khoury grabbed her. [ECF No. 134, ¶ 7]. While the photograph also depicts a pen, Sgt. Bousios cannot confirm whether he was the person holding it. [ECF No. 134, ¶¶ 79, 116].

At approximately 7:00 p.m. that evening, Officer Broughton telephoned the Plaintiff and said that Cummings wanted to pursue criminal charges against him and that she was afraid to return to her house because the Plaintiff would be angry with her for going to the police. [ECF No. 134, ¶ 8]. Although the Plaintiff denied that he touched Cummings during their argument, Officer Broughton told him to avoid any argument or problem with Cummings when he returned to her home. [ECF No. 134, ¶ 8].

Officer Broughton also wrote a "summons report" regarding the incident. [ECF No. 134, ¶ 5, citing ECF No. 24-2 at 9]. The summons report also indicates "Arrest Date/Time: 05/24/2020 @ 1929." [ECF No. 134, ¶ 90]. While Officer Broughton entered her original narrative for the incident on May 24, 2020 at 7:34 p.m., it is important to note that 7:34 p.m. is the time at which Officer Broughton began the report, and not when she completed it. [ECF No. 134, Def Resp. ¶ 67; ECF No. 135-32, ¶ 3]. In the report, Officer Broughton wrote:

> It should be noted that upon initial contact with Cummings, she stated that she
> was uninjured and I did not notice and [*sic*] obvious markings or bruising on
> her arm where she indicated she had been grabbed.

[ECF No. 134, ¶¶ 6, 63].

In the section of report that addresses any injuries to a victim, "Apparent Minor Injury," was selected from a "pre-determined drop-down menu option within the electronic report system" used by the WPD. [ECF No. 134, ¶ 6; ECF No. 141-6 at 2]. One page of the report bears the description: "Narrative for Officer Amanda B. Broughton." [ECF No. 141-6 at 3]. The header section of Officer Broughton's narrative indicates that Sgt. Bousios' ID (474 EGB) was used to modify and approve the narrative on May 25, 2020 at 00:08 a.m., and that Sgt. Bousios added his own supplemental narrative at that time. [ECF No. 134, ¶¶ 71, 77]. The report has only the physical or handwritten signature of Sgt. Bousios. [ECF No. 134, ¶ 72].

It is critical to note that Officer Broughton's supervising sergeant, Sgt. Bousios is required to review and approve her reports. [ECF No. 134, ¶ 68]. While he does not recall any specific modifications he made, he may have corrected some spelling and/or grammar contained in the narrative prior to approving the report. [ECF No. 134, ¶ 68]. However, by no means did Sgt. Bousios make any substantive modifications to the contents of the narrative of the summons report authored by Officer Broughton. [ECF No. 134, ¶ 68].

According to Sgt. Bousios, whenever an incident report is opened, and approved by a supervisor, the WPD's electronic report system indicates that the report was "'modified,' regardless of whether content was changed." [ECF No. 134, ¶ 68].

Because it was after business hours, and due to COVID-19 protocols, Sgt. Bousios telephoned the on-call judge, Judge Michael Pomarole, regarding Cummings' request for an abuse prevention order. [ECF No. 134, ¶ 11; ECF No. 135-3 at 2].   During their conversation, Sgt. Bousios read Judge Pomarole the complete contents of Cummings' signed affidavit and described the living arrangements between the Plaintiff and Cummings. [ECF No. 134, ¶ 11; ECF No. 135-3 at 2]. While Cummings did not speak to Judge Pomarole directly while at the police station, Sgt. Bousios had described the  relevant facts relayed to him by Cummings and Officer Broughton, and may have also summarized the contents of Officer Broughton's summons report narrative for Judge Pomarole. [ECF No. 134, ¶¶ 11, 85].

Judge Pomarole issued the abuse prevention order at approximately 8:00 p.m. on May 24, 2020. [ECF No. 134, Def. SOF ¶ 13; ECF No. 135-3 at 2; ECF No. 135-6 at 2]. The order required the Plaintiff to vacate Cummings' residence. [ECF No. 134, Def. SOF ¶ 14; ECF No. 135-6 at 1].  Sgt. Bousios affixed the digital signature of the WPD on the order but does not "recall the process involved." [ECF No. 134,

¶ 91]. He also affixed his physical signature below the digital signature. [ECF No. 134, ¶ 91]. Additionally, Sgt. Bousios stated that after filling out the abuse prevention order form in accordance with Judge Pomarole's issuance of the order, "I printed the order and affixed my physical signature to the document below the words 'Weston Police' in order to demonstrate that I was the officer at the Weston Police Department who had spoken with Judge Michael Pomarole and that I had filled out the form." [ECF No. 134, ¶ 95; ECF No. 135-3 at 1].

Then, at approximately 8:00 p.m. that evening, Officer Broughton telephoned the Plaintiff again, asking him to head immediately to the Weston Police Station. [ECF No. 134, ¶ 16]. When the Plaintiff arrived, Officer Broughton handed him the emergency abuse prevention order, explained a few things related to the order, and told him to look for future mail from the court. [ECF No. 134, ¶ 16].

A hearing on the abuse prevention order was scheduled at the Waltham District Court for June 1, 2020. [ECF No. 134, ¶ 17]. On that date, the hearing was postponed until August 12, 2020 to allow the Plaintiff time to seek counsel. [ECF No. 134, ¶ 17]. In addition, the abuse prevention order was extended by agreement of the parties until the same date. [ECF No. 134, ¶ 17; ECF No. 135-18 at 8]. Critically, on August 12, 2020, the order expired and was not renewed. [ECF No. 134, ¶ 17].

### 3. The June 2, 2020 Incident

On the evening of June 2, 2020, the Plaintiff was accompanied by members of the WPD, Defendant Officer Nicole Holmes and Officer Kyle Altieri, to Cummings' house to pick up his belongings. [ECF No. 134, ¶ 125]. Cummings was present when they arrived. [ECF No. 134, Def. SOF ¶ 19; ECF No. 135-7 at 2]. Officer Altieri accompanied the Plaintiff while they were inside the property to assist and ensure the safety of all individuals. [ECF No. 134, Def. SOF ¶ 19; ECF No. 135-7 at 2]. During that time, Cummings sat at the kitchen table with a man. [ECF No. 134, ¶ 126]. Officer Holmes mostly remained in the downstairs kitchen area while Officer Altieri was upstairs with the Plaintiff. [ECF No. 134, ¶ 20; ECF No. 135-7 at 2].

At one point, Officer Holmes "heard what sounded like loud objects being thrown around" and went to check on the noise. [ECF No. 135-7 at 2-3]. As she was going up the stairs, the Plaintiff came down the same set of stairs quickly and went around her. [ECF No. 134, Def SOF ¶ 21; ECF No. 135-7 at 1-3]. As the Plaintiff was going around her, Officer Holmes did not threaten the Plaintiff in any way. [ECF No. 134, Def SOF ¶ 22; ECF No. 135-7 at 1-3]. She also never pulled her firearm or had any reason to do so. [ECF No. 134, Def SOF ¶ 23; ECF No. 135-7 at 1-3].

*4. The Criminal Complaint Application*

As a result of the incident on May 24, 2020, Det. Carlo filed an application for a criminal complaint against the Plaintiff for assault and battery on Cummings with a clerk-magistrate at the Waltham District Court. [ECF No. 134, ¶ 26; ECF No. 135-11 at 1]. The document is dated May 26, 2020 and was docketed on July 14, 2020. [ECF No. 135-8 at 1; ECF No. 135-9 at 2]. Det. Carlo's submission included the summons report and the photo of Cummings' arm. [ECF No. 134, ¶ 111; ECF No. 135-11 at 1].

*5. The May 14, 2021 Hearing*

On May 14, 2021, a hearing was held before a clerk-magistrate at the Waltham District Court at which both the Plaintiff and Cummings testified. [ECF No. 134, ¶ 27]. Prior to the hearing, the Plaintiff had applied for a criminal complaint against Cummings on the basis that she filed a false police report. [ECF No. 134, ¶ 27].

At the hearing, the clerk-magistrate found probable cause to charge the Plaintiff with the crime of assault and battery on Cummings. [ECF No. 134, Def. SOF ¶ 28; ECF No. 135-11 at 2; ECF Nos. 135-8, 135-9]. He did not find probable cause to charge Cummings. [ECF No. 134, ¶ 28]. Despite the clerk-magistrate's finding, Det. Carlo, with the agreement of Cummings' counsel, indicated that the WPD was satisfied with no criminal complaint issuing against the Plaintiff. [ECF No. 134, Def. SOF ¶ 29; ECF No. 135-11 at 2]. As a result, no criminal complaint

did issue against him. [ECF No. 134, Def. SOF ¶ 29; ECF No. 135-11 at 2].
Moreover, the Plaintiff was never arrested or charged with any crime. [ECF No. 134,
Def. SOF ¶ 24; ECF No. 135-3 at 3].

## STANDARD OF REVIEW

### A.    Motions for Summary Judgment

Summary judgment is appropriate where the moving party shows that "there
is no genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary
judgment, the court draws all reasonable inferences in favor of the non-moving
party. *Pineda v. Toomey*, 533 F.3d 50, 53 (1st Cir. 2008). On appeal, summary
judgment grants are reviewed de novo. *United Paperworkers Int'l Union, Local 14
v. Int'l Paper Co.*, 64 F.3d 28, 31 (1st Cir. 1995) ("Because the summary judgment
standard requires the trial court to make a legal determination rather than to engage
in factfinding, appellate review is plenary.") (citation omitted); *Noviello v. City of
Bos.*, 398 F.3d 76, 84 (1st Cir. 2005) ("An order granting summary judgment
engenders de novo review.") (citation omitted).

The party seeking summary judgment must identify portions of the record
"which it believes demonstrate the absence of a genuine issue of material fact."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A defendant can meet this burden
either by "offering evidence to disprove an element of the plaintiff's case or by

demonstrating an 'absence of evidence to support the nonmoving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006), quoting *Celotex*, 477 U.S. at 325.

Applying this legal standard to the uncontroverted evidence in this case demonstrates that summary judgment was properly entered in the Defendants' favor.

### B.     Motions to Strike

A trial court's decision on a motion to strike is reviewed for abuse of discretion. *FDIC v. Kooyomjian*, 220 F.3d 10, 16 (1st Cir. 2000). *See also Dodi v. Putnam Cos.*, No. 95-2266, 1996 U.S. App. LEXIS 22177, 1996 WL 489998, at *2 (1st Cir. Aug. 28, 1996) ("We review the district court's decision to strike for abuse of discretion.") An abuse of discretion occurs when a judge makes "a mistake of law" or "a clearly erroneous finding of fact." *Young v. City of Providence*, 404 F.3d 33, 38 (1st Cir. 2005). *See also Obert v. Republic W. Ins. Co.*, 398 F.3d 138, 143 (1st Cir. 2005).

Here, the Plaintiff has failed to establish how the District Court made a mistake of law or a clearly erroneous finding of fact. Thus, applying this legal standard to the parties' motions to strike, the District Court did not abuse its discretion or commit any reversible error.

## SUMMARY OF THE ARGUMENT

The District Court for the District of Massachusetts properly entered summary judgment in favor of the Defendants for several reasons. *First*, the District Court

correctly found that there were no issues of material facts with respect to any of the Plaintiff's various federal or state law claims because none of the Plaintiff's attempts to create disputes are supported by admissible evidence in the record and are insufficient under Rule 56. In other words, based on the undisputed facts, there is nothing for a jury to decide here.

*Second*, with respect to the Plaintiff's § 1983 claims against Sgt. Bousios and Chief Goulding, in particular, the District Court properly held that, based on the undisputed evidence, none of the Plaintiff's constitutional rights were violated. Specifically, to the extent the Plaintiff is asserting a procedural due process claim, it fails because the Plaintiff cannot show that he was deprived of any due process or that his post-deprivation remedies were inadequate. To the extent he is asserting a substantive due process claim, he cannot demonstrate any actions by Sgt. Bousios or Chief Goulding that "shock the conscience," as is required to support such a claim. The Plaintiff's "class of one" equal protection claim likewise fails because he suffered no deprivation of any right and cannot identify substantially similar individuals who have been treated more favorably. Similarly, the Plaintiff's § 1983 "conspiracy claim" fails because the factual record demonstrates that Sgt. Bousios and Chief Goulding did not conspire to deprive the Plaintiff of any federal or state rights.

*Third*, the District Court properly entered summary judgment in the Defendants' favor with respect to the Plaintiff's state law claims. Specifically, with respect to the Plaintiff's abuse of process claim, the District Court properly found that the Plaintiff cannot demonstrate that the Defendants acted with an improper motive when applying for a criminal complaint against him. Similarly, the Plaintiff's malicious prosecution claim fails because no criminal complaint ever issued against him, and he cannot demonstrate malice. The Plaintiff has also failed to proffer any evidence to support his assault claim against Officer Holmes and Chief Goulding. The Plaintiff's MCRA claim fails because he cannot show that either Officer Holmes or Chief Goulding violated any of his federal or state rights, or did so by means of threats, intimidation, or coercion. Finally, the Plaintiff's intentional infliction of emotional distress claim fails because the Defendants' actions were clearly not extreme or outrageous.

As for the Plaintiff's appeal of the District Court's Order denying his second motion to strike and partially granting the Defendants' motion to strike portions of the Plaintiff's affidavit, the Plaintiff has failed to explain how the District Court committed any reversible error or abused its discretion.

# ARGUMENT

## I. The Defendants' Motion for Summary Judgment was Properly Granted Because There is No Genuine Issue of Material Fact with Respect to Any of the Plaintiff's Claims.

The District Court properly entered summary judgment in favor of the Defendants because there are no genuine issues of material fact and, therefore, there is nothing for a jury to decide.

A party opposing summary judgment may not "rely on hearsay or conjecture or unsupported statements of belief." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000). Rather, they must "affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *Melanson v. Browning-Ferris Indus.*, 281 F.3d 272, 276 (1st Cir. 2002), quoting *McCarthy v. Northwest Airlines*, 56 F.3d 313, 315 (1st Cir. 1995). Although the reviewing court "will draw reasonable inferences in the nonmovant's favor, [it] will not 'draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.'" *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014), quoting *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007).

Here, the Plaintiff relies almost exclusively on inadmissible and conclusory assertions in a futile effort to manufacture a triable issue of fact. In essence, the crux of the Plaintiff's argument on appeal is that because he disagrees with the factual

basis supporting the District Court's decision, summary judgment is improper and he is entitled to a trial on the issue. Nowhere in the Plaintiff's fifty-five (55) pages of briefing does he point to relevant and admissible *evidence* which satisfies his burden of showing a genuine issue of fact or identifies any reversible error by the District Court. Rather, the Plaintiff's brief is replete with remarkable language accusing the District Court of erring in admitting that: "Officer Broughton authored the summons report and selected 'Apparent Minor Injury;'" "Cummings applied for an abuse prevention order while she was in the station;" "Judge Michael Pomarole issued the abuse prevention order;" and "[the Plaintiff] was not arrested and was not charged with a crime." *See* Plaintiff's brief, pp. 17, 26-31, and 33-35. However, with respect to all of the Plaintiff's purported disputes, the District Court properly held that the Plaintiff failed to cite to any admissible evidence in the record to support these assertions as required by Rule 56. [*See* ECF No. 154 at 6-7, 9, 16].

The bottom line is that the District Court appropriately examined the record and properly determined that no genuine issue of material fact exists because the Plaintiff failed to meet his burden to set forth a *prima facie* case for any of his various federal and state law claims. Accordingly, the District Court properly entered summary judgment in the Defendants' favor as to all of the Plaintiff's claims asserted against them and this Court should affirm that decision.

**A.    The District Court correctly granted summary judgment on the Plaintiff's Section 1983 claims against Chief Goulding and Sgt. Bousios.**

The District Court properly dismissed the Plaintiff's § 1983 claims because based on the undisputed evidence, none of the Plaintiff's constitutional rights were violated. In Counts I-III, the Plaintiff alleges a due process violation, a "class of one" equal protection violation, and a conspiracy claim against Sgt. Bousios and Chief Goulding pursuant to 42 U.S.C. § 1983. While it is difficult to ascertain the precise basis of the Plaintiff's § 1983 claims, it appears that his claims are based on Sgt. Bousios' alleged failure to follow proper procedures on May 24, 2020 and that he allegedly falsified documents when assisting Cummings with her application for a 209A order against the Plaintiff.

Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally secured rights. *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). A suit brought under § 1983 "has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Id.* (citation omitted). Additionally, the plaintiff must show "that the [defendant's] conduct was the cause in fact of the alleged deprivation." *Id.* (alteration in original) (further quotation marks omitted). At the

outset, the Plaintiff's § 1983 claims fail as a matter of law because the undisputed facts demonstrate that he was not deprived of any constitutional right.

1. *The Plaintiff's due process claim (Count I) fails because he was afforded adequate due process of law and the conduct of Sgt. Bousios and Chief Goulding does not "shock the conscience."*

   i. <u>The Plaintiff's procedural due process claim fails because he was afforded adequate due process of law.</u>

The Plaintiff's procedural due process claim fails because the undisputed facts establish that the on-call judge, Judge Pomarole, issued the 209A order against the Plaintiff only after the appropriate process was followed. The undisputed facts further establish that, once the 209A order had issued against the Plaintiff, he was afforded the proper procedures set forth under M.G.L. c. 209A, § 4.

To prevail on his purported procedural due process claim under 42 U.S.C. § 1983, the Plaintiff must demonstrate that: (1) he has a protected liberty or property interest, as defined by law; and (2) the defendants, acting under color of state law, deprived him of that property interest without constitutionally adequate process. *Mongeau v. City of Marlborough*, 462 F. Supp. 2d 144, 149-150 (D. Mass. 2006), citing *SFW Arecibo, Ltd. v. Rodriguez*, 415 F.3d 139, 149 (1st Cir. 2005).

Here, the Plaintiff's due process claim is based on an allegation that Sgt. Bousios falsified parts of documents and failed to follow the appropriate process for an abuse prevention order issued against him. [ECF No. 1-1 at 21-22]. But contrary to the Plaintiff's unsupported, conclusory allegations, he has failed to demonstrate

that he was deprived of a constitutionally-protected liberty or property interest, which is fatal to his due process claim.

Critically, Chapter 209A provides that a court may issue an abuse prevention order upon a determination that an individual has caused or attempted to cause the applicant physical harm, or has placed the applicant in fear of imminent serious physical harm. M.G.L. c. 209A, §§ 1-3. Further, a 209A order may be used even in the absence of a romantic relationship. *Tabia v. Dekeon*, No. CV 19-11132-LTS, 2019 WL 2578277, at *2 (D. Mass. June 24, 2019). And, as the District Court found in *Nollet v. Justs. of Trial Ct. of Com. of Mass.*, 83 F. Supp. 2d 204, 212 (D. Mass. 2000), *aff'd sub nom.*, *Nollet v. Justs. of Trial Ct. of Com. of Massachusetts*, 248 F.3d 1127 (1st Cir. 2000), the *ex parte* procedure set forth in Chapter 209A satisfies due process. In coming to this conclusion, the *Nollet* court identified several procedural safeguards, namely participation by a judicial officer, a prompt post-deprivation hearing, and verified petitions or affidavits containing detailed allegations based on personal knowledge, as the prerequisites required to satisfy due process. *Id.* at 213. The *Nollet* court also described the procedure for obtaining such an order:

> If the 209A petitioner proves the existence of such abuse by a preponderance of the evidence, the court may then issue an order imposing significant restrictions on the defendant. Although the Court is free to fashion whatever remedy it deems appropriate, the statute enumerates a number of specific orders which the Court may issue, including: ordering the alleged abuser to vacate the household abode…

...

A court can issue a temporary order granting the remedies provided in ch. 209A, § 3, without giving the alleged abuser notice and an opportunity to be heard, provided that the petitioner files a complaint and demonstrates "a substantial likelihood of immediate danger of abuse." If the court does issue an ex parte temporary order under Section 4, the court must then give the defendant the opportunity to be heard on the question of continuing the temporary order within ten (10) business days after the issuance of the ex parte order.

*Nollet*, 83 F. Supp. 2d at 207, citing M.G.L. c. 209A, § 4 (additional citations omitted).

In addition to these procedures, M.G.L. c. 209A, § 5 also provides that when a court is closed for business, a court department "may grant relief to the plaintiff as provided under section four if the plaintiff demonstrates a substantial likelihood of immediate danger of abuse." M.G.L. c. 209A, § 5. "In the discretion of the justice, such relief may be granted and communicated by telephone to an officer or employee of an appropriate law enforcement agency...." *Id.*

While it appears that the Plaintiff's due process claim partially arises from his allegations that the Weston Police Department authorized the 209A order, not Judge Pomarole, the undisputed evidence shows the opposite to be true. As the District Court properly explained, the undisputed facts are as follows: Judge Pomarole issued the abuse prevention order at approximately 8:00 p.m. on May 24, 2020. [ECF No. 154 at 24]. Sgt. Bousios affixed the digital signature of the WPD on the order but he does not "recall the process involved." *Id.* Sgt. Bousios stated that after filling out

the abuse prevention order form in accordance with Judge Michael Pomarole's issuance of the order, "I printed the order and affixed my physical signature to the document below the words 'Weston Police' in order to demonstrate that I was the officer at the Weston Police Department who had spoken with Judge Michael Pomarole and that I had filled out the form." *Id.* Indeed, these undisputed facts show that the on-call judge issued the 209A order against the Plaintiff only after an appropriate process was followed. *Id.* The undisputed facts also show that Chief Goulding had no involvement in the application for or issuance of the order. [ECF No. 134, ¶ 30].

Despite the fact that the Plaintiff continues to dwell on his unsupported conspiracy theories relating to the 209A order issued against him, he has still failed to establish that he was denied procedural due process. To start, the Plaintiff had abundant notice and opportunity to be heard. [ECF No. 154 at 24]. He also received notice of the order on the day it was issued. *Id.* The Plaintiff then attended a hearing on June 1, 2020, at which time he requested and received a continuance to hire counsel. *Id.* The order was, in turn, extended until August 12, 2020, which was the date of the next scheduled hearing. *Id.* Then, on August 12, 2020, the order expired and was not renewed. *Id.* Thus, contrary to the Plaintiff's contentions, he was afforded the proper procedures set forth under M.G.L. c. 209A, § 4 (i.e., the same procedures that this Court has held satisfies due process). Accordingly, based on the

undisputed facts, the Plaintiff's right to procedural due process was not violated when the 209A order was issued against him.

　　　ii.　　The Plaintiff's substantive due process claim fails because Sgt. Bousios' and Chief Goulding's conduct does not "shock the conscience."

To the extent that the Plaintiff is asserting a substantive due process claim, his claim still fails because Sgt. Bousios' and Chief Goulding's conduct does not "shock the conscience."

To prevail on a substantive due process claim under § 1983, the Plaintiff must establish that the Defendants engaged in behavior that is "conscience-shocking." *Pagán v. Calderón*, 448 F.3d 16, 33 (1st Cir. 2006). "Thus, in alleging that the specific acts of an official violated his/her due process rights, [the] Plaintiff must sufficiently allege "that the acts were so egregious as to shock the conscience and that [such acts] deprived [the Plaintiff] of a protected interest in life, liberty, or property." *Id*. at 32.

Here, the undisputed facts establish that Sgt. Bousios followed proper procedures while assisting Cummings in applying for the abuse prevention order and that Chief Goulding had no direct involvement in the process. [ECF No. 154 at 24]. Thus, as the District Court properly held, the Plaintiff has not shown, based on the undisputed facts, that the Defendants' conduct rose to the level of conscience-shocking illegality necessary to support a substantive due process claim. *Id.; See*

*e.g., County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (finding that high speed police pursuit that was undertaken with deliberate indifference to passenger's survival was insufficient to support a substantive due process claim); *Evans v. Avery*, 100 F.3d 1033 (1st Cir. 1996) (finding that police conduct in pursuit during which suspect's vehicle struck and injured pedestrian did not shock the conscience so as to give rise to a substantive due process claim by the pedestrian); *Wilmot v. Tracey*, 938 F. Supp. 2d 116 (D. Mass. 2013) (finding that initiation of child abuse investigation did not shock the conscience and therefore there was no substantive due process claim).

Accordingly, because neither Sgt. Bousios nor Chief Goulding engaged in conscience-shocking conduct, the Plaintiff's substantive due process claim fails.

> 2. *The Plaintiff's "class of one" equal protection claim fails because he cannot carry his burden of proving substantial similarity or malicious intent.*

As a preliminary matter, it bears noting that the Plaintiff's equal protection argument appears to be nothing more than a recasting of his previous argument that the Defendants violated his right to due process and it likewise fails. More specifically, the District Court properly held that the Plaintiff's "class-of-one" equal protection claim against Sgt. Bousios and Chief Goulding fails because no reasonable jury could infer that the Plaintiff was singled out for unlawful oppression.

A "class of one" equal protection claim is "a claim in which the plaintiffs do not claim membership in a class or group, but assert that the defendants impermissibly singled them out for unfavorable treatment." *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 33 (1st Cir. 2008). To prevail on his "class of one" equal protection claim, the Plaintiff must prove each of the four elements: "(1) that [he] was intentionally treated differently (2) from others similarly situated (3) without a rational basis for that difference in treatment *and* (4) that the difference in treatment was due to malicious or bad faith intent on the part of the defendants to injure [him]." *Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 145 (D. Mass. 2006) (emphasis added). In making a class of one equal protection claim, "proof of a similarly situated, but differently treated, comparator is essential." *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995). The First Circuit has defined a similarly situated individual as one that is "roughly equivalent" to the Plaintiff "in all relevant aspects." *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001) (citations and internal quotations marks omitted). *See Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) (a class of one claim requires plaintiffs to "identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently, instances which have the capacity to demonstrate that [plaintiff was] singled … out of unlawful oppression") (citations omitted) (emphasis in original).

Here, the District Court correctly found that the Plaintiff has not shown—and cannot show—how he was treated differently than other similarly situated individuals. [ECF No. 154 at 26]. To carry the burden of proving substantial similarity, the Plaintiff "must show an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself]." *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quotation omitted). Indeed, there is no question that the Plaintiff has failed to show the "extremely high degree of similarity" between himself and his comparators sufficient to meet that requirement as he has not identified one similarly situated individual who was treated differently by Sgt. Bousios or Chief Goulding. Because the Plaintiff has not identified any "similarly situated" people who received different treatment than him, he cannot meet his burden of proving substantial similarity. In the absence of such proof, the Plaintiff's class of one equal protection claim must be dismissed. *Freeman v. Town of Hudson*, 714 F.3d 29, 39 (1st Cir. 2009) (affirming dismissal of equal protection where plaintiff failed to allege people who were "similarly situated"). Additionally, the factual record clearly does not support the Plaintiff's necessary showing that Sgt. Bousios and Chief Goulding acted with a malicious or bad faith intent to injure him. In light of this, the District Court properly concluded that no reasonable jury could infer that the Plaintiff was singled out for unlawful oppression. [ECF No. 154 at 26].

Accordingly, this Court should affirm summary judgment in favor of the Defendants on the Plaintiff's "class of one" equal protection claim.

3. The Plaintiff's § 1983 conspiracy claim (Count III) fails because he cannot show that Sgt. Bousios and Chief Goulding conspired to deprive him of any constitutional right or that he suffered a violation of a constitutional right due to any conspiracy.

The District Court properly held that the Plaintiff has failed to present any admissible evidence of an agreement between Sgt. Bousios and Chief Goulding from which a reasonable jury could infer a conspiracy among them. [ECF 154 at 27]. In addition, the District Court also correctly found that there is no evidence that the Defendants committed acts that violated the Plaintiff's constitutional rights. *Id.*

To prevail on a conspiracy claim under § 1983, the Plaintiff must prove that there has been an agreement and an actual deprivation of a right secured by the Constitution and laws of the United States. *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988), citing *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980). A conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008), quoting *Benoit*, 850 F.2d at 844. In other words, "[i]n order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual

abridgment of some federally-secured right." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001), citing *Benoit*, 850 F.2d at 844. Further, the Plaintiff must "identify the specific constitutional right infringed." *Id.*, citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Thus, taken together, the Plaintiff must allege and prove both a conspiracy and an actual deprivation of rights. *Landrigan*, 628 F.2d at 742.

Here, the summary judgment record is completely devoid of any evidence that Sgt. Bousios and Chief Goulding entered into a conspiratorial agreement with each other to violate any of the Plaintiff's constitutional rights. [ECF 154 at 27]. There is also no evidence that Chief Goulding had any involvement in the issuance of the abuse prevention order against the Plaintiff. *Id.* Thus, the Plaintiff cannot show that Sgt. Bousios and Chief Goulding deprived him of any constitutional rights, or that he suffered a violation of any rights as a result of any conspiracy between them.

Accordingly, this Court should affirm summary judgment in the Defendant's favor with respect to the Plaintiff's § 1983 conspiracy claim.

### 4. *The Defendants are also entitled to qualified immunity.*

Not only do the Plaintiff's § 1983 claims fail on their merits, but they also fail because Sgt. Bousios and Chief Goulding are entitled to qualified immunity from liability for the alleged civil rights violations.

It is undisputed that Chief Goulding had absolutely no involvement with the Plaintiff or Cummings and was not involved with assisting Cummings in applying

for an abuse prevention order against the Plaintiff. [ECF No. 134, ¶ 30]. Rather, Sgt. Bousios assisted Cummings in seeking an abuse prevention order, and Judge Pomarole ultimately issued the order. Sgt. Bousios filled out the application for the abuse prevention order based on information provided by Cummings and included Cummings's sworn affidavit stating that the Plaintiff, who resided in a rented room inside her home, had acted in a threatening manner towards her and had grabbed her by the arm during an argument on the same day she sought the order. [ECF No. 134, ¶ 9]. Sgt. Bousios then contacted the on-call judge, Judge Pomarole, and read him the complete contents of Cummings's affidavit, described the relevant facts relayed to him by Cummings and Officer Broughton, who had initially met with Cummings that evening, and described the living arrangement between the Plaintiff and Cummings. [ECF No. 134, ¶¶ 11-12]. Judge Pomarole then issued the temporary abuse prevention order. [ECF No. 134, ¶ 13]. To the extent the Plaintiff's § 1983 claims are based on an allegation that Sgt. Bousios violated the Plaintiff's rights by issuing an abuse prevention order against the Plaintiff on his own without contacting Judge Pomarole, the Plaintiff has produced absolutely no evidence to support such a claim and the factual record in this matter clearly demonstrates that Sgt. Bousios did contact the Court and it was Judge Pomarole, not Sgt. Bousios, who actually issued the order. [ECF No. 134, ¶¶ 11-15, 31].

Under federal law, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity, which is a question of law, is an issue that is appropriately decided by the court during the early stages of the proceedings and should not be decided by the jury." *Tatro v. Kervin*, 41 F.3d 9, 15 (1st Cir. 1994). The standard for judging a motion brought by a government official seeking qualified immunity is "whether a reasonable official could have believed his actions were lawful in light of clearly established law." *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91 (1st Cir. 1994). The First Circuit applies a two-prong analysis in determining whether a defendant is entitled to qualified immunity: "(1) whether the facts alleged ... by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right at issue was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009), citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). This Court need not inquire about the second factor because as set forth above, the uncontroverted evidence demonstrates that neither Sgt. Bousios nor Chief Goulding violated any of the Plaintiff's constitutional rights. But regardless, the Plaintiff also cannot identify a case in which substantially similar conduct has been determined to violate any

constitutional right, which would have given the Defendants the requisite notice that their actions were unlawful.

Accordingly, Sgt. Bousios and Chief Goulding are entitled to qualified immunity and the Plaintiff's § 1983 claims fail as a matter of law.

**B.** **Summary Judgment was also properly entered in favor of the Defendants with respect to the Plaintiff's state law claims.**

*1.* *The Plaintiff's abuse of process claim (Count IV) fails because he cannot show that any of the Defendants had an ulterior motive for applying for a criminal complaint against him.*

The Plaintiff's abuse of process claim against Defendants Bousios, Goulding, and Carlo fails because there is no evidence in the summary judgment record to suggest that the Defendants had an ulterior motive for applying for the criminal complaint against the Plaintiff. Additionally, the undisputed facts also establish that Sgt. Bousios and Chief Goulding did not even participate in applying for the criminal complaint.

"The tort of malicious abuse of process consists [of] the use of lawful process primarily for a purpose for which it is not designed." *Gutierrez v. Massachusetts Bay Transp. Authority*, 437 Mass. 396, 407-408 (2002), citing J.R. Nolan & L.J. Sartorio, Tort Law § 82, at 108 (2d ed.1989). To establish an abuse of process claim, the Plaintiff must show that "(1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 775-776 (1986) (internal citation marks and quotation omitted).

The term "[p]rocess, in the context of abuse of process, means causing papers to be issued by a court to bring a party or property within its jurisdiction." *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 406 n.9 (2000) (internal quotations and citations omitted). It must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed. *Beecy v. Pucciarelli*, 387 Mass. 589, 595 (1982). The defendants must have used criminal process for coercion or harassment to obtain something that is not properly part of the proceedings. *Broadway Management Services, Ltd. v. Cullinet Software, Inc.*, 652 F. Supp. 1501, 1503 (D. Mass. 1987). *See also Cohen v. Hurley*, 20 Mass. App. Ct. 439, 442 (1985), quoting from Prosser & Keeton, Torts, § 121, at 898 (5th ed. 1984) (describing abuse of process as a "form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money...."). There is no liability for abuse of process "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Antelman v. Lewis*, 480 F. Supp. 180, 186 (D. Mass. 1979).

Here, the District Court properly held that the Plaintiff's abuse of process claim against Sgt. Bousios and Chief Goulding fails at the outset because, as the undisputed evidence shows, they did not participate in applying for the criminal

complaint against the Plaintiff. Rather, the criminal complaint application was written and filed by Det. Carlo. [ECF No. 154 at 29]. Additionally, the District Court properly found that the Plaintiff's abuse of process claim fails against Det. Carlo, in particular, because there is no evidence in the summary judgment record to suggest that Det. Carlo had an ulterior motive for applying for the criminal complaint. [ECF No. 154 at 30]. Rather, Det. Carlo, who had no direct involvement with Cummings, filed an application for a criminal complaint against the Plaintiff because, as the Weston Police Department's court prosecutor, it is his duty to apply for all criminal complaints on behalf of the Department. [ECF No. 134, ¶ 26]. Det. Carlo submitted the application for a complaint based on the information contained in the summons report authored by Officer Broughton. [ECF No. 134, ¶ 26]. Officer Broughton's report contained facts supporting all the required elements of the charge of assault and battery.[1] [ECF No. 134, ¶¶ 3-6]. As such, there are no facts in the record to support the Plaintiff's conclusory claim, as alleged within his complaint and argued in his brief, that Det. Carlo filed the application for a criminal complaint against him

---

[1] The elements of assault and battery are that an unjustified touching occurred and that the touching was (1) physically harmful; (2) potentially physically harmful; or (3) nonconsensual. *Com. v. Burke*, 390 Mass. 480, 483–484 (1983). An intentional assault and battery is an "intentional and unjustified use of force upon the person of another, however slight." *Com. v. Porro*, 458 Mass. 526, 529 (2010), citing *Commonwealth v. McCan*, 277 Mass. 199, 203 (1931).

to cover up the Weston Police Department's misconduct in issuing the 209A prevention order or for any other ulterior purpose.

Additionally, the Plaintiff's abuse of process claim also fails because he has failed to make the required showing that the Defendants' use of the legal process caused the Plaintiff any damage. *See Datacomm Interface, Inc.*, 396 Mass. at 775-776. Indeed, it is undisputed that no criminal complaint ever actually issued against the Plaintiff. [ECF No. 134, ¶ 29].

Accordingly, this Court should affirm summary judgment in the Defendants' favor with respect to the Plaintiff's abuse of process claim.

> 2. *The Plaintiff's malicious prosecution claim (Count V) fails because he cannot demonstrate malice.*

The District Court properly held that the Plaintiff's malicious prosecution claim failed because he cannot demonstrate that the Defendants acted with malice towards him.

To prevail on a malicious prosecution claim, the Plaintiff must show: (1) that the Defendant(s) commenced a criminal proceeding against the Plaintiff; (2) the proceeding terminated in the Plaintiff's favor; (3) there was no probable cause for the charges; and (4) actual malice.[2] *Nieves v. McSweeney*, 241 F.3d at 53. (citation

---

[2] To show malice, the Plaintiff must show that the accuser knew "there was no probable cause for the prosecution and" that he "personally acted with an improper motive or he knew that [the other accusing party] was motivated by malice." *Beecy v. Pucciarelli*, 387 Mass. 589, 593-594 (1982).

omitted). More importantly, under Massachusetts law, "mere application for a criminal complaint, without issuance of the complaint, is insufficient to support a cause of action" for malicious prosecution. *Fletcher v. Wagner*, 221 F. Supp. 2d 153, 154 (D. Mass. 2002).

Here, it is undisputed that although Det. Carlo filed an application for a criminal complaint against the Plaintiff, no criminal complaint was ever issued against him. [ECF No. 134, ¶¶ 26-29]. *See also Fletcher*, 221 F. Supp. 2d at 155 (granting defendant summary judgment on the plaintiff's malicious prosecution claim and stating: "[I]in Massachusetts a claim for malicious prosecution will only lie if a criminal complaint actually issues. *Mere application for a complaint will not be enough*."); *Stromberg v. Costello*, 456 F. Supp. 848, 850 (D. Mass. 1978) (holding that the complaint did not state a claim for malicious prosecution where no criminal proceedings resulted from the defendant's applications for criminal complaint). As such, summary judgment on the Plaintiff's malicious prosecution claim was properly entered in the Defendants favor because no criminal complaint was ever issued against the Plaintiff.[3]

---

[3] Moreover, with respect to the Plaintiff's malicious prosecution claim against Chief Goulding and Sgt. Bousios, in particular, it is crucial to note that the Plaintiff has offered no evidence that Chief Goulding or Sgt. Bousios encouraged or demanded that Det. Carlo institute criminal proceedings against him. In addition, the Plaintiff has presented no admissible evidence from which a reasonable jury could infer that Sgt. Bousios took part in the filing of the application. [ECF No. 154 at 31].

But even if a criminal complaint had issued against the Plaintiff, the Plaintiff's malicious prosecution claim still fails because the Defendants had probable cause to charge the Plaintiff with assault and battery. There is no dispute that, on May 24, 2020, Cummings went to the Weston Police Station and stated to Officer Broughton that the Plaintiff had intentionally grabbed her arm without consent during an argument earlier that evening and that she was afraid of the Plaintiff. [ECF No. 134, ¶¶ 3-9]. Cummings also included these statements within an affidavit she authored in support of a 209A order that evening. [ECF No. 134, ¶ 9]. These statements by Cummings satisfied the elements of assault and battery: that an unjustified touching occurred and that the touching was (1) physically harmful; (2) potentially physically harmful; or (3) nonconsensual. *Com. v. Burke*, 390 Mass. 480, 483–484 (1983). An intentional assault and battery is an "intentional and unjustified use of force upon the person of another, however slight." *Porro*, 458 Mass. at 529, citing *McCan*, 277 Mass. at 203. Thus, not only does the evidence demonstrate that there was probable cause to charge the Plaintiff with assault and battery, but to prevail on his malicious prosecution claim, the Plaintiff must show that the *Defendants knew there was no probable cause*. But as the District Court correctly found, the Plaintiff has failed to make this showing. [ECF No. 154 at 32]. In fact, the undisputed facts even demonstrate that a clerk-magistrate found that there was probable cause to charge the Plaintiff with the crime of assault and battery. [ECF No. 134, ¶ 28]. Additionally,

contrary to the Plaintiff's unsupported contentions, the District Court properly found that the Plaintiff failed to show that the Defendants acted with actual malice in pursuing a criminal complaint against him. [ECF No. 154 at 32].

Accordingly, this Court should affirm the dismissal of the Plaintiff's malicious prosecution claim.

> 3. *The Plaintiff's assault claim (Count VI) fails because he has not proffered any admissible evidence to support such a claim.*

The Plaintiff has also failed to proffer any evidence to support his assault claim against Officer Holmes (and Chief Goulding), which arises from when Officer Holmes accompanied the Plaintiff to Cummings' house to collect his belongings on June 2, 2020.

Under Massachusetts' law "[c]ivil assault requires that a defendant 'act[ed] intending to cause a harmful or offensive contact' with a plaintiff, 'or [acted to create] an imminent apprehension of such a contact,' and that a plaintiff was 'thereby put in such imminent apprehension.'" *Diaz v. Devlin*, No. CV 16-40039-TSH, 2019 WL 4804803, at *6 (D. Mass. Sept. 30, 2019), quoting Restatement (Second) of Torts § 21 (1) (Am. Law Inst. 1965) (additional citations omitted). While Massachusetts law allows for assault claims against police officers, *Raiche v. Pietroski*, 623 F.3d 30, 40 (D. Mass. 2010), police officers are allowed to use reasonable force, which provides a valid defense to assault and battery claims. *Id.* Courts look to the objective reasonableness of the officer's actions given the specific

circumstances. *Titus v. Town of Nantucket*, 840 F. Supp. 2d 404, 413-414 (D. Mass. 2011). "[T]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 414 (citation and quotation marks omitted).

Here, the Plaintiff contends that the Court erred in adopting Officer Holmes' version of the events. *See* Plaintiff's brief, p. 48. But his argument is flawed because even with construing the facts in the light most favorable to the Plaintiff, no reasonable juror could find that Officer Holmes assaulted him. Indeed, the Court correctly noted that after the 209A order issued against the Plaintiff, he was only allowed back into Cummings' house to retrieve his belongings under police escort. [ECF No. 154 at 34]. The District Court, in turn, properly concluded that even if Officer Holmes had placed her hand on her gun and blocked the Plaintiff's way, her actions at that time were reasonable given that she was there to ensure the safety of everyone. *Id.*

Accordingly, summary judgment was properly entered in the Defendants' favor with respect to the Plaintiff's assault claim.

> 4. *The Plaintiff's MCRA claim (Count VII) fails because he cannot demonstrate that the Defendants violated any federal or state rights or did so through threats, intimidation or coercion.*

The Plaintiff's MCRA claim fails because he cannot show that either Officer Holmes or Chief Goulding violated any of his federal or state rights, or did so by

means of threats, intimidation, or coercion. Additionally, the Plaintiff's MCRA claim fails because Officer Holmes and Chief Goulding are entitled to qualified immunity and common law immunity.

To prevail under the MCRA, the Plaintiff "must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" *Bally v. Northeastern Univ*., 403 Mass. 713, 717 (1989), quoting G.L. c. 12, § 11H. "The MCRA is coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not, and the derogation of secured rights must occur by threats, intimidation or coercion." *Sietins v. Joseph*, 238 F. Supp. 2d 366, 377–378 (D. Mass. 2003). The MCRA "was not intended to create, nor may it be construed to establish, a vast constitutional tort." *Mancuso v. MIAA, Inc*., 453 Mass. 116, 131–132 (2009) (internal quotation marks and citation omitted.

Here, the undisputed facts establish that the Defendants did not violate any of the Plaintiff's rights when Officer Holmes accompanied the Plaintiff to Cumming's house so that he could gather his belongings. But even if the Plaintiff were to demonstrate a deprivation of a protected right—which he cannot - he also cannot demonstrate that the alleged deprivation was accomplished by means of threats,

41

intimidation, or coercion. The Plaintiff must demonstrate a separate act by Officer Holmes and Chief Goulding constituting threats, intimidation, or coercion other than the alleged deprivation itself. "On its face, the MCRA contemplates a two-part sequence: (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do." *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009). In this case, the Plaintiff has failed to proffer any evidence of threats, intimidation, or coercion by Chief Goulding, so the MCRA claim against him fails outright. [ECF No. 154 at 36]. As for Officer Holmes, the Plaintiff argues that her actions from the June 2nd incident were meant to threaten and intimidate him from testifying in court. *See* Plaintiff's brief at p. 60. But this argument fails because none of the Plaintiff's constitutional rights were *actually* violated during this incident. Further, there is absolutely no evidence in the record to support the allegation that Officer Holmes' actions were intended to prevent him from testifying in court. Thus, as the District Court correctly held, nothing in the Plaintiff's version of the events shows that Officer Holmes was attempting to threaten, intimidate, or coerce him in order to cause him to give up a constitutional right. [ECF No. 154 at 36].

Additionally, the Defendants would also be entitled to qualified immunity from the Plaintiff's MCRA claim because it has not been clearly established through existing precedent that the Defendants' conduct would violate the MCRA. *See*

*Krupien v. Ritcey*, 94 Mass. App. Ct. 131, 134 (2018) ("Qualified immunity principles developed under 42 U.S.C. § 1983 apply equally to MCRA claims"), citing *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 595 (2001). Similarly, the Defendants are also protected by common law immunity from the Plaintiff's MCRA claim because there is no evidence that they acted in bad faith, with malice, or corruptly towards the Plaintiff. *South Boston Betterment Trust Corp. v. Boston Redevelopment Auth.*, 438 Mass. 57, 69 (2002) ("SBBTC").

Accordingly, this Court should affirm summary judgment in favor of the Defendants with respect to the Plaintiff's MCRA claim.

> 5. *The Plaintiff's intentional infliction of emotional distress claim (Count IX) fails as a matter of law because the Defendants' actions were not extreme or outrageous.*

Finally, the Court correctly dismissed the Plaintiff's claim for intentional infliction of emotional distress because the Defendants' actions were not extreme or outrageous.

To succeed on a claim for intentional infliction of emotional distress, the Plaintiff must prove: (1) that the Defendants intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) that the Defendants' conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community"; (3) that the Defendants' actions were the cause of the Plaintiff's

distress; and (4) that his emotional distress was "severe" and of a nature "that no reasonable man could be expected to endure it." *Agis v. Howard Johnson Co*., 371 Mass. 140 (1976) (citations omitted). *See also Doyle v. Hasbro, Inc*., 103 F.3d 186, 195 (1st Cir. 1996). "To be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and ... utterly intolerable in a civilized community. Liability cannot be founded upon mere insults, threats, or annoyances." *Foley v. Polaroid Corp.,* 400 Mass. 82, 99 (1987). It is not enough that the defendant acted with a tortuous or criminal intent, that he or she intended to inflict emotional distress, or even that his or her conduct has been characterized by malice. *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997).

Here, this Court should affirm summary judgment on the claim for intentional infliction of emotional distress because viewing the facts in the light most favorable to the Plaintiff, none of the Defendants' actions could conceivably be deemed extreme and outrageous or rise to the level of egregiousness necessary to support such a claim. Even assuming a criminal complaint had wrongfully issued against the Plaintiff (which it did not) and he was charged with a crime, this alone would not give rise to a claim for intentional infliction of emotional distress. *See Finucane v. Town of Belchertown*, 808 F. Supp. 906, 911 (D. Mass. 1992) (granting summary judgment on the plaintiff's intentional infliction of emotional distress claim and holding that the defendant's conduct was not extreme and outrageous and stating:

"[w]hile it is reasonable to conclude that, for most people, arrest is a traumatic experience, especially if the charges later prove to be false ... this factor alone does not give rise to a claim for intentional infliction of emotional distress."). And as the District Court correctly noted, the "[Plaintiff's] allegations for this claim rely heavily on his charges of false documents and conspiracies, none of which are supported by the undisputed facts." [ECF No. 154 at 38]. In light of this, the District Court properly concluded "that there is no genuine issue of material fact that the Weston Defendants' behavior was extreme and outrageous." *Id.* The entry of summary judgment in favor of the Defendants on this claim thus should be affirmed.

> 6. *The Defendants are also protected by common law immunity against the Plaintiff's state law claims.*

All of the Plaintiff's intentional tort claims also fail because the Defendants are protected by common law immunity. Common law immunity shields public officials from liability for intentional tort claims arising from their official acts, where there is no evidence that they acted in bad faith. *SBBTC*, 438 Mass. at 69; *Duarte v. Healy*, 405 Mass. 43, 49-50 (applying common law immunity to statutory invasion of privacy claim against city officials). In determining whether common law immunity applies, "[t]here is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare." *Id.*, quoting *Foster from Gloucester, Inc. v. City Council of Gloucester*, 10 Mass. App. Ct. 284, 294 (1980). To defeat a claim of common law

immunity, the Plaintiff must establish that the Defendants acted with bad faith or malice. *See Echavarria v. Roach*, 2017 WL 3928270, at *14 (D. Mass. Sept. 7, 2017). There is no evidence to support such a finding in this case.

Here, the Defendants, as public officials responsible for public safety and law enforcement, acted within their discretion and in furtherance of their duties to protect the public when taking any actions relating to the Plaintiff. Furthermore, the summary judgment record is devoid of any evidence from which a reasonable jury could infer that any of the Defendants acted in bad faith or with malice towards the Plaintiff. As a result, the Defendants are also entitled to common law immunity from all of the Plaintiff's intentional tort claims.

## II. The District Court Properly Denied the Plaintiff's Second Motion to Strike and Properly Allowed Portions of the Defendants' Motion to Strike.

Judge Sorokin did not abuse his discretion, but rather acted well within the District Court's ample management authority, in denying the Plaintiff's second motion to strike and allowing portions of the Defendants' motion to strike. Further, to the extent that the Plaintiff contends "that the District Court erred in not striking the affidavit of Sgt. Bousios for lack of credibility," it is critical to note that the Plaintiff never moved to strike that affidavit and has therefore waived all such arguments.

In any event, the Plaintiff appeals the District Court's Order denying his motion to strike Exhibit 2 "since it is a false document." *See* Plaintiff brief at p. 27. However, there is no evidence from which a jury could find that Exhibit 2, which is a Weston Police Department summons report regarding the Plaintiff, was falsified. More specifically, Exhibit 2 is an electronic copy of the May 24, 2020 Weston Police Department summons report, summons # 20-65-AR. Not only has this document not been falsified, but the Plaintiff has also submitted a slightly different version of this same summons report within one of his summary judgment filings (i.e., ECF No. 141-6), which contains the physical signature of Sgt. Bousios. According to the Plaintiff's second motion to strike, it appeared that the Plaintiff was requesting the District Court to consider his version of this document rather than the version supplied by the Defendants. In response to this, the Defendants raised no objection to the District Court considering the Plaintiff's version of the document. And despite the Plaintiff's arguments to the contrary, any differences between these two versions were irrelevant to the Defendants' motion for summary judgment. In light of this, the District Court properly denied the Plaintiff's motion to strike Exhibit 2 as moot because "for purposes of summary judgment, [the] Court [relied] on Docket No. 141-6 and/or its equivalent rather than Exhibit 2." [ECF No. 153 at 5]. The Plaintiff offers absolutely no legitimate explanation on appeal as to how the District Court abused its discretion in denying his motion to strike Exhibit 2, especially when it did

not even consider Exhibit 2 in its analysis of the parties' cross-motions for summary judgment. Accordingly, the District Court's Order denying the Plaintiff's second motion to strike was proper and should be affirmed.

Additionally, the Plaintiff devotes several pages within his brief seeking to overturn the District Court's ruling striking portions, particularly paragraph 28, of his affidavit. *See* Plaintiff's brief at pp. 31-33. But again, the Plaintiff cannot show that there was an abuse of discretion. Indeed, in opposing the Defendants' motion for summary judgment, the Plaintiff filed an affidavit that was rife with inadmissible statements that failed to meet the requirements of Rule 56(c)(4). For example, in paragraph 28 of his affidavit, the Plaintiff described a December 1, 2020 phone call with Stephen Poitrast, a clerk-magistrate for the Waltham District Court. [ECF 124-1 at 12]. Specifically, the Plaintiff alleges that Clerk-Magistrate Poitrast "*replied by saying that Sergeant Bousios did not even speak to the on-call judge*." This statement and all allegations relating to the Plaintiff's alleged conversation with Clerk-Magistrate Poitrast were properly stricken from the Plaintiff's affidavit because they constitute inadmissible hearsay and lack the Plaintiff's personal knowledge. Indeed, "[i]t 'is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted.'" *Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 428 (1st Cir. 2017). In granting the Defendants' motion to strike paragraph 28, the District Court properly determined that the Plaintiff was

impermissibly relying on the clerk-magistrate's out-of-court statement, which constituted inadmissible hearsay. [ECF No. 153 at 9]. It also properly held that the statements did not fall into any hearsay exception. *Id.* Nevertheless, the Plaintiff argues on appeal, *for the first time*, that this statement falls within the co-conspirator hearsay exception. *See* Plaintiff's brief at p. 33. Not only has the Plaintiff waived this argument, but it also fails as a matter of law because based on the interplay of Fed. R. Evid. 104(a) and Fed. R. Evid. 801(d)(2)(E), an out-of-court statement of an alleged co-conspirator will be admissible only if the judge makes a preliminary "determination" that the statement was made "(1) during the course and (2) in furtherance (3) of a conspiracy (4) of which declarant is a member." *Benoit*, 850 F.2d at 840–841 (internal citations omitted). Here, there have been no such findings, nor could there be.

Accordingly, because the District Court committed no abuse of discretion, this Court should affirm its rulings relating to the parties' motions to strike.

## CONCLUSION

For the foregoing reasons, the Defendant-Appellees respectfully request that this Honorable Court affirm the decision of the District Court in its entirety.

Respectfully submitted,

Defendants - Appellees,

By Their Attorneys,

*/s/ Francesca Papia*

Francesca Papia, Bar #1203977
Leonard H. Kesten, Bar #36865
Thomas R. Donohue, Bar #88816
Brody, Hardoon, Perkins & Kesten LLP
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 880-7100
FAX (617) 880-7171
fpapia@bhpklaw.com
lkesten@bhpklaw.com
tdonohue@bhpklaw.com

Dated: November 13, 2023

**CERTIFICATE OF COMPLIANCE**
**Pursuant to Rule 16(k) of the**
**Massachusetts Rules of Appellate Procedure**

I, Francesca Papia, hereby certify that the foregoing brief complies with the rules of court that pertain to the filing of briefs, including, but not limited to:

Mass. R. A. P. 16 (a)(13) (addendum);
Mass. R. A. P. 16 (e) (references to the record);
Mass. R. A. P. 18 (appendix to the briefs);
Mass. R. A. P. 20 (form and length of briefs, appendices, and other documents); and
Mass. R. A. P. 21 (redaction).

I further certify that the foregoing brief complies with the applicable length limitation in Mass. R. A. P. 20 because it is produced in the proportional font Times New Roman at size 14, and contains 12,112, total non-excluded words as counted using the word count feature of Microsoft 365.

/s/ Francesca Papia
Francesca Papia, Bar #1203977
Leonard H. Kesten, Bar #36865
Thomas R. Donohue, Bar #88816
Brody, Hardoon, Perkins & Kesten LLP
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 880-7100
FAX (617) 880-7171
fpapia@bhpklaw.com
lkesten@bhpklaw.com
tdonohue@bhpklaw.com

Dated: November 13, 2023

# CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

> Brian T. Mulcahy
> Direct: 617-878-0383
> Office of the Chief Administrative Justice
> 2 Center Plaza, Room 540
> Boston, MA 02108

I further certify that on November 13, 2023 I served a copy of the foregoing document on the following parties or their counsel of record by U.S. mail, postage prepaid:

> Imad G. El Khoury
> Direct: 781-392-8458
> [NTC Pro Se]
> 1579 Race Lane
> Marstons Mills, MA 02648

/s/ *Francesca Papia*
Francesca Papia, Bar #1203977
Leonard H. Kesten, Bar #36865
Thomas R. Donohue, Bar #88816
Brody, Hardoon, Perkins & Kesten LLP
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 880-7100
FAX (617) 880-7171
fpapia@bhpklaw.com
lkesten@bhpklaw.com
tdonohue@bhpklaw.com

# ADDENDUM

**ADDENDUM**
**TABLE OF CONTENTS**

Order on Plaintiff's Motion to Amend .............................................................Add. 1

Report and Recommendation on Parties' Motions to Strike ...........................Add. 6

Report and Recommendation on Parties' Cross-Motions for Summary
    Judgment................................................................................................Add. 17

Judgment .......................................................................................................Add. 56

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

```
_____
                               )
IMAD EL KHOURY,                )
                               )
        Plaintiff,             )
                               )
        v.                     )         Civil No. 21-cv-11036-LTS
                               )
MICHAEL GOULDING et al.,       )
                               )
        Defendants.            )
_____)
```

ORDER ON PLAINTIFF'S MOTION TO AMEND
[Docket No. 129]

February 9, 2023

Boal, M.J.

Pro se plaintiff Imad El Khoury has moved for leave to amend his complaint to add a new

claim of false arrest pursuant to 42 U.S.C. §1983 against defendant Efthimios Bousios.  See

Docket No. 129.[1]  For the following reasons, I deny[2] El Khoury's motion.

I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

El Khoury alleges that on May 24, 2020, he had a disagreement with his landlord,

defendant Oxana Cummings, which resulted in Cummings contacting the Weston Police.

Docket No. 1-1 at 5-6.  Cummings, El Khoury contends, gave false statements to the police

---

[1] On March 3, 2022, Judge Sorokin referred this case to the undersigned for full pretrial
management.  Docket No. 93.

[2] In this district, courts have found that a motion to amend is a non-dispositive matter under Rule
72(a) of the Federal Rules of Civil Procedure.  See Trustees of Bos. Univ. v. Everlight Elecs.
Co., C.A. No. 12-11935-PBS, Docket No. 883 (D. Mass. Oct. 10, 2014); see also Pagano v.
Frank, 983 F.2d 343, 346 (1st Cir. 1993).

1
Add. 1

about the incident.  Id. at 14-15.  The Weston Police subsequently provided El Khoury with a

209A restraining order that had been issued against him.  Id. at 7-8.

On July 21, 2021, El Khoury filed suit against Weston Police Department officials and

Cummings, alleging various federal and state law claims.  Docket No. 1.  The final fact

discovery deadline was March 1, 2022.  Docket No. 37 at 1.  The deadline to amend the

pleadings was December 29, 2021.  Id.

During this case, El Khoury has sought to amend the complaint several times.  First, he

sought to add new parties, WPD Officer Amanda Broughton and WPD Captain Thomas Kelley.

Docket Nos. 51, 55.  El Khoury then sought to add Judge Pomarole, as well as Officer

Broughton and Captain Kelly.  Docket No. 66.  Judge Sorokin denied the motions as to Pomarole

on December 30, 2021, and as to the other two defendants on January 13, 2022.  Docket Nos.

70, 79.  Judge Sorokin also denied motions for reconsideration as to Captain Kelly and Officer

Broughton on March 2, 2022 and April 7, 2022.  Docket Nos. 91, 109.

The defendants filed a motion for summary judgment on May 6, 2022.  Docket No. 120.

El Khoury filed a cross-motion for summary judgment on June 6, 2022.  Docket No. 124.  On

June 29, 2022, El Khoury filed the instant motion for leave to amend his complaint for the first

time to add a claim of false arrest against defendant Weston Police Officer Bousios.  Docket No.

129.  The defendants filed an opposition on March 29, 2022.  Docket No. 137.

II.   STANDARD OF REVIEW

After the filing of a responsive pleading, Rule 15(a) of the Federal Rules of Civil

Procedure permits an opposed amendment to a pleading only by leave of Court.  Fed. R. Civ. P.

15(a)(2).  Rule 15(a)(2) provides that a "court should freely give leave [to amend a pleading]

when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court "enjoys significant latitude in

deciding whether to grant leave to amend."  U.S. ex rel. Gagne v. City of Worcester, 565 F.3d

40, 48 (1ˢᵗ Cir. 2009) (citations omitted).  "Reasons for denying leave to amend include undue

delay in filing the motion, bad faith or dilatory motive, . . . undue prejudice to the opposing

party, and futility of amendment."  Id.  (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

    "[T]he longer a party waits before filing its motion to amend, the more exacting the

standard becomes.  Certain milestones, such as a scheduling order, close of discovery, or a

timely-filed motion for summary judgment, may change a court's hospitality towards a motion to

amend."  Viscito v. Nat'l Plan. Corp., No. CV 3:18-30132-MGM, 2019 WL 7578462, at *2 (D.

Mass. July 5, 2019).  Moreover, after the deadline set forth in the scheduling order for filing an

amendment has passed, the "freely given" standard is replaced by the more demanding "good

cause" standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure.  Trans-Spec Truck

Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 327 (1st Cir. 2008).  The purpose of limiting the

period for amendment is to assure "that at some point both the parties and the pleadings will be

fixed."  Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendment.  It is incumbent

upon the party moving to amend in such circumstances to explain the reason for the late filing.

"Unlike Rule 15(a)'s 'freely given' standard, which focuses mostly on the bad faith of the

moving party and the prejudice to the opposing party . . . Rule 16(b)'s 'good cause' standard

emphasizes the diligence of the party seeking the amendment."  Vargas Caban v. Caribbean

Transp. Servs., No. 02-1902 (JAG), 2005 WL 3560689 at *1 n. 2 (D.P.R. Sept. 23, 2005)

(internal citations omitted).

    When, as here, "leave to amend is not sought until after discovery has closed and a

summary judgment motion has been docketed, the proposed amendment must be not only

theoretically viable but also solidly grounded in the record."  Hatch v. Dep't for Child., Youth &

Their Fams., 274 F.3d 12, 19 (1st Cir. 2001) (citing Resolution Trust Corp. v. Gold, 30 F.3d 251,

253 (1st Cir. 1994)).  "In that type of situation, an amendment is properly classified as futile

unless the allegations of the proposed amended complaint are supported by substantial evidence." Id.

III.   DISCUSSION

El Khoury has not demonstrated good cause for the delay in seeking this amendment.  El Khoury contends that he initially was tricked into believing he was not arrested, but now, based on a summons report produced by defendants, he believes he was arrested by defendant Bousios. Docket No. 129 at 3.  In light of this new belief, El Khoury seeks to add a claim of false arrest against Bousios.  Id.

El Khoury filed the instant motion six months after the December 29, 2021 deadline set by Judge Sorokin.  A litigant who ignores a case-management deadline does so at his peril. Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1988).  Given his delayed filing, Rule 16(b) applies, and requires that El Khoury demonstrate 'good cause' for the delay.  He has not met this standard.

El Khoury argues that he was arrested based on a line on the summons report that states: "Arrest Date/Time: 05/24/2020 @ 1929."   Docket No. 24-2 at 9.  Yet, he was aware of the summons report and its contents for more than a year prior to his filing of this motion.  He has had the document since, at minimum, September 21, 2021, the date on which he filed it as an exhibit in this case.  See Docket No. 24-2 at 9.

In addition, nothing else in the record, supports El Khoury's allegations.  In his motion to amend, El Khoury contends that he was "questioned, then taken into police custody, booked and arrested" on May 24, 2020 at 19:29.  Docket No. 129 at 5.  However, there is no support in the record for this statement.  Indeed, the line about the arrest is in a summons report, not an arrest report.  He disputes the Weston Defendants' statement of fact that states El Khoury was never arrested.  However, he only offers as evidence (1) the line in the summons report; (2) that he was

never told he was under arrest; and (3) the Weston Police Department sought a criminal complaint against him.  Docket No. 134 at 29 ¶ 24.  None of these facts show that El Khoury was arrested.

El Khoury also contends that "the fact that officer Broughton instructed the plaintiff to come straight to the Weston Police Station when he was driving for Lyft in Boston constituted an arrest."  Docket No. 129 at 4.  However, according to El Khoury, the call did not occur until approximately 8:00 p.m., and he did not arrive at the police station until 8:45 p.m.  Id. at 2. By his own version of events, he therefore could not have been arrested at 7:29 p.m.  El Khoury also fails to link Broughton's conversation to any action by Bousios.

Any amendment therefore is not only too late, but also futile.  Accordingly, El Khoury's motion to amend is denied.

IV.   ORDER

For the foregoing reasons, I deny El Khoury's motion to amend his complaint.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

```
_____
                                    )
IMAD EL KHOURY,                     )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )          Civil No. 21-cv-11036-LTS
                                    )
MICHAEL GOULDING et al.,            )
                                    )
        Defendants.                 )
_____)
```

REPORT AND RECOMMENDATION ON PARTIES' MOTIONS TO STRIKE[1]
[Docket Nos. 123, 136, 138]

February 10, 2023

Boal, M.J.

Pro se plaintiff Imad El Khoury filed suit against Weston Police Department ("WPD") officials Michael Goulding, Efthimios Bousios, William Carlo, and Nicole Holmes in their individual capacities (collectively "the Weston Defendants"), as well as his former landlord, Oxana Cummings, alleging various federal and state law claims arising out of a disagreement with Cummings and his subsequent interactions with the Weston Defendants.  Docket No. 1-1.

In conjunction with the parties' pending cross-motions for summary judgment, both El Khoury and the Weston Defendants have moved to strike various statements of fact and responses, portions of affidavits, and exhibits.  Docket Nos. 123, 136, and 138.  For the following reasons, I recommend that Judge Sorokin grant in part and deny in part the parties' motions to strike.

---

[1] On March 3, 2022, Judge Sorokin referred this case to the undersigned for full pretrial management and report and recommendations on dispositive motions.  Docket No. 93.

Add. 6

I.      PROCEDURAL BACKGROUND

On July 21, 2021, El Khoury filed the instant suit.  Docket No. 1.  Pursuant to 42 U.S.C. § 1983, El Khoury brings, against defendants Bousios and Goulding, a due process claim, a "class of one" equal protection claim, and a conspiracy claim.  Docket No. 1-1 at 20-23.  El Khoury asserts state law claims for abuse of process and malicious prosecution against defendants Bousios, Goulding, and Carlo for pursuing a criminal complaint for assault and battery against El Khoury.  Id. at 23-24.  El Khoury asserts a state law claim of assault and also a claim under the Massachusetts Civil Rights Act against defendants Holmes and Goulding for interactions that occurred at Cummings' home when El Khoury returned to retrieve his belongings.  Id. at 24-25.  Finally, El Khoury asserts a claim for intentional infliction of emotional distress against all defendants based on the totality of the circumstances arising from the above-described events.  Id. at 25-26.

On May 6, 2022, the Weston Defendants filed a motion for summary judgment.  Docket No. 120.  On June 6, 2022, El Khoury filed an opposition to the Weston Defendants' motion and a cross-motion for summary judgment.  Docket No. 124.  El Khoury also filed a motion to strike one exhibit and one statement of fact ("SOF") filed by the Weston Defendants.  Docket No. 123. On June 21, 2022, the Weston Defendants filed an opposition to El Khoury's motion to strike. Docket No. 126.  On July 14, 2022, the Weston Defendants filed a reply in connection with their summary judgment motion, as well as an opposition to El Khoury's cross-motion.  Docket No. 133.  They also moved to strike parts of El Khoury's affidavit and certain submissions regarding the parties' joint SOF.  Docket No. 136.  On July 25, 2022, El Khoury filed an opposition to the Weston Defendants' motion to strike and a reply in support of his cross-motion for summary judgment.  Docket Nos. 139, 140.  He also filed a motion to, among other things, strike two exhibits filed by the Weston Defendants.  Docket No. 138.  On August 2, 2022, the Weston

Defendants filed an opposition to El Khoury's motion to strike.  Docket No. 142.  This Court

heard oral argument on November 21, 2022.

II.     ANALYSIS

      To determine the scope of the record for purposes of summary judgment, this Court must

first consider the parties' motions to strike.

      A.  El Khoury's First Motion To Strike

      El Khoury has moved to strike paragraph 31 of the Weston Defendants' statement of

facts and Exhibit 13 relating to the same.  Docket No. 123.  Paragraph 31 states:

> Theresa Gillis McDougall, the Judicial Response Manager for the Office of Court
> Management for the Trial Court of Massachusetts confirmed for Chief Goulding that
> Judge Michael Pomarole was serving as the on-call judge in Region A4 which covers
> the town of Weston on May 24, 2020 and on that date at approximately 7:51 p.m.,
> Judge Pomarole received a call from the Weston Police Department for a G.L. c.
> 209A Order, which he then issued.  Exhibit 13  E-mail correspondence.

Docket No. 134 ¶ 31.  Exhibit 13 is comprised of two emails dated August 2 and 4, 2021 from

Theresa McDougall to defendant Goulding conveying information about the judge who was on

call on May 24, 2020, the evening when the WPD requested and obtained a 209A[2] order against

El Khoury.  Docket No. 135-13.

      As a general matter, only evidence that would be admissible at trial may be considered in

connection with a motion for summary judgment.  Iorio v. Aramark Servicemaster, No. 03–

40147–FDS, 2005 WL 3728715, at *6 (D. Mass. Sept. 30, 2005).  In particular, inadmissible

hearsay evidence may not be considered on a motion for summary judgment.  Garside v. Osco

Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).

      "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the

---

[2] This Court uses the terms "209A order," "abuse prevention order," and "restraining order"
interchangeably in this report and recommendation.

current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Id. at 801(a). A "declarant" is "the person who made the statement." Id. at 801(b). Statements made outside of trial or a hearing are admissible only if they are not hearsay or satisfy one of the exceptions to the rule against hearsay. See Fed. R. Evid. 802.

The emails at issue contain out-of-court statements made by Theresa Gillis McDougall. Docket No. 135-13. The Weston Defendants appear to offer these statements to prove the matter asserted, namely, that on May 24, 2020, Judge Pomarole was the on-call judge, that he received a call from the WPD, and that in response to that call, he issued a 209A order against El Khoury. Id.; see also Docket No. 142 at 3. The emails, therefore constitute hearsay and must fall within an exception to the hearsay rule to be considered for purposes of summary judgment.

The Weston Defendants do not assert that any particular exception applies. See Docket No. 142. Rather, they argue the emails are cumulative of other undisputed evidence in the summary judgment record, and the substance of the emails is undisputed. Id. at 3. However, even if an email is cumulative of other evidence in the case, that fact does not make admissible otherwise inadmissible evidence. See Ira Green, Inc. v. Mil. Sales & Serv. Co., 775 F.3d 12, 20 (1st Cir. 2014).

Accordingly, this Court recommends that Judge Sorokin grant El Khoury's motion to strike Exhibit 13. This Court will not consider paragraph 31, which relies on Exhibit 13, in its analysis of the summary judgment motions.

B.  El Khoury's Second Motion To Strike

El Khoury has moved to strike the Weston Defendants' Exhibits 2 and 5. Docket No. 138. Exhibit 2 is a WPD summons report regarding El Khoury that he claims the Weston

Defendants have falsified.  Docket No. 135-2.  El Khoury has submitted a different version of

Exhibit 2 (see Docket No. 141-6) and requests that this Court consider his version instead, to

which the Weston Defendants have no objection.  Docket No. 142 at 4.  This Court therefore

recommends that El Khoury's motion to strike Exhibit 2 be denied as moot because, for purposes

of summary judgment, this Court will rely on Docket No. 141-6 and/or its equivalent rather than

Exhibit 2.[3]

Exhibit 5 is Oxana Cummings' complaint for protection from abuse pursuant to G.L. c.

209A, which El Khoury asserts the Weston Defendants filed to hide evidence.  Docket No. 135-

5.  He states that:

> Defendants filed Exhibit 5 in which the pages of the Complaint do NOT show
> anymore that the two pages of Cummings Affidavit were authored using a blue pen,
> whereas Sergeant Bosuios used a black pen to complete the first three pages and a
> blue pen to sign on behalf of Cummings. The aforementioned is relevant to
> paragraph 21 in the Plaintiff's Memorandum (see Doc. No. 124 at 9).

Docket No. 138 at 3 (emphasis in original).  With respect to the ink color, the Weston

Defendants state that the exhibit is a black and white copy of the application for abuse prevention

order and supporting forms.  Docket No. 142 at 4.  To the extent that El Khoury uses the ink

color to argue that the exhibit is not authentic, such argument is not persuasive.  The 2010

amendments to Rule 56 dispensed with the requirement that documents submitted in support of a

summary judgment motion be authenticated.  Tsai v. McDonald, No. 15-11676-MBB, 2017 WL

3526252, at *11 (D. Mass. Aug. 16, 2017).  Accordingly, this Court recommends that Judge

Sorokin deny El Khoury's motion to strike Exhibit 5.

---

[3] The document at Docket No. 141-6 appears to be substantively identical to another document to
which El Khoury cites, Docket No. 24-2 at 9-12 (also at Docket No. 135-18 at 9-12).  The only
difference appears to be a fax stamp on one.  El Khoury appears to rely on both documents in his
submissions.

C.  <u>The Weston Defendants' Motion To Strike</u>

The Weston Defendants have moved to strike portions of El Khoury's affidavit as well as certain of his facts and responses to facts in the parties' joint statement of undisputed facts. Docket No. 136.

1.  <u>El Khoury's Affidavit</u>

Pursuant to Rule 56(c)(4) of the Federal Rules of Civil Procedure, the Weston Defendants contend that paragraphs 19, 20, 23, 24, and 26 of El Khoury's affidavit contain inadmissible statements because they: (1) are not based on personal knowledge; (2) contain improper opinions and conclusions; and/or (3) are based on speculation.  Docket No. 136 at 2.  They also argue that paragraphs 28 and 29 of El Khoury's affidavit contain inadmissible hearsay.  <u>Id.</u>

Rule 56(c)(4) provides that an affidavit in support or opposition of a motion for summary judgment to be made "on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  In deciding a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial . . . [but] inadmissible evidence may not be considered."  <u>Facey v. Dickhaut</u>, 91 F. Supp. 3d 12, 19 (D. Mass. 2014) (quoting <u>Horta v. Sullivan</u>, 4 F.3d 2, 8 (1st Cir. 1993)).  "If evidence cannot be presented in a form that would be admissible at trial, the court may not rely on it."  <u>Id.</u> (citations omitted).

A party moving to strike an affidavit must specify both the objectionable portions of the affidavit and also the grounds for objection.  <u>Id.</u> (citations omitted).  A court will disregard only those portions of the affidavit that are inadmissible and consider the rest of it.  <u>Id.</u>

A "party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment."  <u>Id.</u> (citations omitted).  Conversely, "summary judgment is appropriate if the non-

moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007) (citation omitted).

          a.   Paragraphs 19 And 20

In paragraphs 19 and 20 of his affidavit, El Khoury describes a telephone conversation with Officer Amanda Broughton of the WPD. Docket No. 124-1 at 7. El Khoury asserts that "such content does not exist anymore in the narrative of Officer Broughton and/or it had been altered significantly." Id. ¶ 19. El Khoury further asserts that

> [w]ith the exception of the above-statements/content that are referred to in Statement No. 19 and that do not exist anymore in the narrative of Officer Broughton or were altered significantly, all other details that had been exchanged between Officer Broughton and me over the phone were still included in the narrative of Officer Broughton.

Id. ¶ 20 (emphasis in original).

The Weston Defendants argue that El Khoury has not shown that he has personal knowledge as to whether the subject "content" was ever included and then removed from Officer Broughton's narrative. Docket No. 136 at 5. El Khoury offers nothing, either in his opposition or in the affidavit itself, to show a basis for this statement. Accordingly, this Court recommends that Judge Sorokin grant in part and deny in part the Weston Defendants' motion to strike paragraphs 19 and 20[4] from El Khoury's affidavit.[5]

---

[4] The Weston Defendants move to strike the entirety of paragraphs 19 and 20. See, e.g., 136 at 4, 7. It appears, however, that striking only the language quoted above is more appropriately consistent with the Weston Defendants' argument.

[5] Specifically, this Court recommends that Judge Sorokin strike the following language from paragraph 19: "and such content does not exist anymore in the narrative of Officer Broughton and/or it had been altered significantly." This Court also recommends that Judge Sorokin strike the following language in paragraph 20: "[w]ith the exception of the above-statements/content that are referred to in Statement No. 19 and that do not exist anymore in the narrative of Officer Broughton or were altered significantly".

b.  Paragraph 23

In paragraph 23, El Khoury states that Officer Nicole Holmes of the WPD accompanied him to Oxana Cumming's home to remove his belongings.  The Weston Defendants move to strike two sentences from paragraph 23:  (1) "I am not sure if officer Holmes was pointing her gun at me while I was taking my stuff from the closet, since she was standing behind me"; and (2) "I felt at that moment that Officer Holmes was going to shoot me."  Docket No. 124-1 at 9-10 ¶ 23.

Both statements simply reflect El Khoury's own beliefs and feelings at that time. Accordingly, this Court recommends that Judge Sorokin deny this portion of the Weston Defendants' motion to strike.

c.  Paragraphs 24 And 26

The Weston Defendants move to strike the following statements by El Khoury in paragraphs 24 and 26:

> I believe that the man who was sitting with Oxana Cummings in the kitchen on June 2, 2020 when I was assaulted by officer Nicole Holmes was Weston Police Captain/Operations Commander Thomas Kelly. I was able to identify Captain Kelly when I was later surfing photos for members of Weston Police on the Face book page of the Town of Weston.

Docket No. 124-1 at 10 ¶ 24.  El Khoury's belief that the man was Officer Kelly is based on social media research.  He, however, has failed to provide any supporting documentation and therefore offers nothing other than his own say so in this regard.  El Khoury's personal belief alone does not establish that the man was, in fact, Captain Thomas Kelly.

During that same incident, El Khoury states that "I believe Officer Altieri was recording me."  Id. at 11 ¶ 26.  El Khoury does not state that Altieri was actually recording him, only that El Khoury believed he was.

Accordingly, this Court recommends that Judge Sorokin (1) grant the Weston

Defendants' motion as to paragraph 24 and (2) deny the Weston Defendants' motion as to

paragraph 26.

d. <u>Paragraphs 28 And 29</u>

In paragraph 28, El Khoury describes a December 1, 2020 phone call with Stephen

Poitrast, a Clerk-Magistrate for the Waltham District Court. <u>Id.</u> at 12 ¶ 28. El Khoury states that

> Mr. Poitrast replied by saying that Sergeant Bousios did <u>not</u> even speak to the on-
> call judge. Mr. Poitrast also added, among other things, that I can say during the
> "show cause hearing" that Oxana Cummings reported a false crime because she has
> "issues", but I don't need to say that Weston Police altered the narrative; otherwise,
> I would get into problems with the police who can prosecute me if they want.

<u>Id.</u> (emphasis in original). El Khoury offers this out-of-court statement to show the truth of the

matter asserted, namely, among other things, that Poitrast told him that Bousios did not speak with

the on-call judge. The statement is therefore hearsay. It does not appear to fall into any exception.

This Court therefore recommends that the Weston Defendants' motion to strike paragraph 28 be

granted.

In paragraph 29, El Khoury states that "[o]n December 28, 2020 and on December 29,

2020, I was told via emails (Exhibit 24) by two different employees in Waltham District Court that

the docket file for the Abuse Prevention Order does <u>not</u> exist anymore since Judge Ellis had

allowed my motion to expunge." <u>Id.</u> ¶ 29 (emphasis in original). El Khoury offers these out-of-

court statements for the truth of the matter asserted, namely that the file does not exist anymore.

The statements are therefore hearsay and do not fall into any of the hearsay exceptions.

Accordingly, this Court recommends that Judge Sorokin strike the language quoted above

from paragraph 29.

2. <u>El Khoury's Statements Of Uncontested Facts And Responses</u>

The Weston Defendants move to strike numerous paragraphs from El Khoury's statement

of material uncontested facts, as well as his responses, because they: (1) rely upon inadmissible

statements in El Khoury's affidavit; (2) are without adequate evidentiary support; (3) contain

inadmissible conclusory statements of opinion, speculation, and hearsay; (4) contain irrelevant

and immaterial; and/or (5) fail to cite to material in the record that establishes the existence of a

genuine dispute.[6]  Docket No. 136 at 8, 10-11.[7]

Local Rule 56.1 requires a party supporting or opposing a motion for summary

judgement to "include a concise statement of the material facts of record as to which it is

contended that there exists a genuine issue to be tried, with page references to affidavits,

depositions and other documentation."  L.R. 56.1; see also Foley v. Yacht Mgmt. Grp., Inc., No.

CIV.A. 09-11280-DJC, 2011 WL 4020835, at *3 (D. Mass. Sept. 9, 2011) ("[W]hen parties

ignore the Local Rules, they do so at their own peril.") (citing Cabán Hernández v. Philip Morris

USA, Inc., 486 F.3d 1, 6–7 (1st Cir. 2007)).  A party asserting that a fact is genuinely disputed

must support the assertion by citing to particular parts of materials in the record.  See Fed. R.

Civ. P. 56(c)(1)(A).  When a party moving for or opposing summary judgment does not comply

with Local Rule 56.1,  the district court may treat the moving party's statement of facts as

uncontested.  Foley, 2011 WL 4020835, at *3 (citations omitted).

I will address the remainder of the Weston Defendants' motion to strike in the Facts

section below.  To the extent that the motion to strike with respect to a particular statement of

---

[6] The Weston Defendants move to strike paragraphs 63–65, 76, 103, 126, 127, and 129 of El
Khoury's SOFs and his responses to paragraphs 5-7, 9, 11-13, 15, 19, 21-23, 25, 28, and 31
because they rely on inadmissible statements from El Khoury's affidavit.  Docket No. 136 at 8,
11.  To the extent that El Khoury's SOFs rely on portions of his affidavit that this Court has
recommended Judge Sorokin strike, the facts are unsupported and are acknowledged as such in
this Court's analysis of the parties' cross-motions for summary judgment.

[7] The Weston Defendants include El Khoury's response to paragraph 8 and his SOF paragraph
125 in their requests to strike.  Docket No. 136 at 2, 8, 11.  Those inclusions appear to be
typographical errors.  The Weston Defendants do not address those particular paragraphs in their
substantive argument.  See id. at 8-10, 13-14.  Indeed, they admit to the contents of El Khoury's
SOF at paragraph 125.  The motion is therefore denied with respect to the response to paragraphs
8 and paragraph 125.

fact or response is not addressed, that is because the statement was not material to my analysis.

## III.  RECOMMENDATION

For the foregoing reasons, as well as the reasons included in my report and recommendation on the parties' cross-motions for summary judgment, I recommend that Judge Sorokin grant in part and deny in part the parties' motions to strike.

## IV.  REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

———————————————————
                                    )
IMAD EL KHOURY,                     )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        Civil No. 21-cv-11036-LTS
                                    )
MICHAEL GOULDING et al.,            )
                                    )
        Defendants.                 )
———————————————————)

REPORT AND RECOMMENDATION ON PARTIES'
CROSS-MOTIONS FOR SUMMARY JUDGMENT[1]
[Docket Nos. 120, 124]

February 10, 2023

Boal, M.J.

        Pro se plaintiff Imad El Khoury filed suit against Weston Police Department ("WPD")

officials Michael Goulding, Efthimios Bousios, William Carlo, and Nicole Holmes in their

individual capacities (collectively "the Weston Defendants"), as well as his former landlord,

Oxana Cummings, alleging various federal and state law claims arising out of a disagreement

with Cummings and his subsequent interactions with the Weston Defendants.  Docket No. 1-1.

        The Weston Defendants have moved for summary judgment on all of El Khoury's claims

against them.  Docket No. 120.  El Khoury has cross moved for summary judgment on all such

claims.  Docket No. 124.  For the following reasons, I recommend that Judge Sorokin grant the

Weston Defendants' motion for summary judgment and deny El Khoury's motion for summary

judgment.

———————————————
[1] On March 3, 2022, Judge Sorokin referred this case to the undersigned for full pretrial
management and report and recommendations on dispositive motions.  Docket No. 93.

I.      PROCEDURAL BACKGROUND

On July 21, 2021, El Khoury filed the instant suit.  Docket No. 1.  Pursuant to 42 U.S.C.

§ 1983, El Khoury brings, against defendants Bousios and Goulding, a due process claim, a

"class of one" equal protection claim, and a conspiracy claim.  Docket No. 1-1 at 20-23.  El

Khoury asserts state law claims for abuse of process and malicious prosecution against

defendants Bousios, Goulding, and Carlo for pursuing a criminal complaint for assault and

battery against El Khoury.  Id. at 23-24.  El Khoury asserts a state law claim of assault and also a

claim under the Massachusetts Civil Rights Act ("MCRA") against defendants Holmes and

Goulding for interactions that occurred at Cummings' home when El Khoury returned to retrieve

his belongings.  Id. at 24-25.  Finally, El Khoury asserts a claim for intentional infliction of

emotional distress ("IIED") against all defendants based on the totality of the circumstances

arising from the above-described events.  Id. at 25-26.

On May 6, 2022, the Weston Defendants filed a motion for summary judgment.  Docket

No. 120.  On June 6, 2022, El Khoury filed an opposition to the Weston Defendants' motion and

a cross-motion for summary judgment.  Docket No. 124.  El Khoury also filed a motion to strike

one exhibit and one statement of fact ("SOF") filed by the Weston Defendants.  Docket No. 123.

On June 21, 2022, the Weston Defendants filed an opposition to El Khoury's motion to strike.

Docket No. 126.  On July 14, 2022, the Weston Defendants filed a reply in connection with their

summary judgment motion, as well as an opposition to El Khoury's cross-motion.  Docket No.

133.  They also moved to strike parts of El Khoury's affidavit and certain submissions regarding

the parties' joint SOF.  Docket No. 136.  On July 25, 2022, El Khoury filed an opposition to the

Weston Defendants' motion to strike and a reply in support of his cross-motion for summary

judgment.  Docket Nos. 139, 140.  He also filed a motion to, among other things, strike two

exhibits filed by the Weston Defendants.  Docket No. 138.  On August 2, 2022, the Weston

Defendants filed an opposition to El Khoury's motion to strike.  Docket No. 142.  This Court

heard oral argument on November 21, 2022.  On February 10, 2023, this Court issued a separate

report and recommendation addressing the majority of the parties' motions to strike.  Docket No.

153.[2]

II.    FACTUAL BACKGROUND[3]

    A.  The Parties

        1.  El Khoury And Cummings

On January 1, 2020, El Khoury rented a room with its own bathroom at Oxana

Cummings' house in Weston, MA.[4]  Cummings shared the common areas with El Khoury,

including the kitchen.[5]  El Khoury and Cummings' relationship was at all relevant times that of

landlord and tenant.[6]

        2.  The Weston Police Department

Defendant Michael Goulding was at all relevant times employed as the Chief of the

WPD.[7]  As Chief, Goulding had no direct involvement with Cummings, the drafting of the

summons report regarding the incident between Cummings and El Khoury or other material

---

[2] As indicated in that ruling, I reserved certain decisions with respect to the motion to strike for resolution where necessary in this decision.

[3] Because this case is before this Court on cross-motions for summary judgment, I set out any disputed facts in the light most favorable to the non-moving party.  See Ahern v. Shinseki, 629 F.3d 49, 53-54 (1st Cir. 2010) (citing Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004)).  The undersigned relies on the Weston Defendants' statement of undisputed material facts ("Def. SOF"), which incorporates El Khoury's responses ("Pl. Resp.") and includes El Khoury's additional statements of material fact ("Pl. SOF"), and the Weston Defendants' responses ("Def. Resp.").  The citations to these various statements of fact refer to those as contained in the parties' unified statement of material facts at Docket No. 134.

[4] Pl. SOF ¶ 32; Def. Resp. ¶ 32.

[5] Def. SOF ¶ 2.  El Khoury only admits that starting in January 2020, he rented a room in Cummings' house and that he "used to share mainly the kitchen."  Pl. Resp. ¶ 2.

[6] Pl. SOF ¶ 33; Def. Resp. ¶ 33.

[7] Def. SOF ¶ 30; Docket No. 135-12.  Although El Khoury states that he disputes the entirety of paragraph 30, he does not actually dispute this statement.  Pl. Resp. ¶ 30.

events in this case.[8]

Amanda Broughton and defendant Nicole Holmes are employed as WPD police officers.[9] Defendant Efthimios Bousios is a WPD sergeant.[10]  Defendant William Carlo is a WPD detective and also WPD's court prosecutor.[11]

B.  The May 24, 2020 Incident

Relations between El Khoury and Cummings were civil until May 24, 2020.[12]  On Sunday, May 24, 2020 at 4:27 p.m., El Khoury complained by text that he had no hot water and could not take a shower before going to work.[13]  El Khoury had complained multiple times about the hot water situation since April 19, 2020.[14]  Accusations ensued between Cummings and El Khoury; Cummings alleged that El Khoury had damaged furniture in his room and caused leaks, which Cummings believed balanced out El Khoury's lack of hot water.[15]  The messages ended at 5:34 p.m., after Cummings texted that there seemed to be hot water in other parts of the house.[16] She asked if she could come to El Khoury's room to check the water, and El Khoury agreed.[17]

---

[8] Def. SOF ¶ 30.  Docket No 135-12 at 1.  El Khoury disputes this statement of fact, but his response either fails to provide a citation in support as required by Local Rule 56.1 or the citations provided do not support his contention that Goulding, as a supervisor, had responsibility for or signed the material documents generated by WPD in this case.  Pl. Resp. ¶ 30.

[9] Def. SOF ¶¶ 3, 18; Pl. Resp. ¶ 3.  Although El Khoury states that he disputes the entirety of paragraph 18, he does not actually dispute this statement.  Pl. Resp. ¶ 18.

[10] Def. SOF ¶ 7.  Defendant Bousios' affidavit states that he works for the "Town of Westwood's Police Department."  Docket No. 135-32 ¶ 1.  This appears to be a typographical error. Although El Khoury states that he disputes the entirety of paragraph 7, he does not actually dispute this statement.

[11] Def. SOF ¶ 26; Pl. Resp. ¶ 26.

[12] Pl. SOF ¶ 45; Def. Resp. ¶ 45.

[13] Pl. SOF ¶ 47; Def. Resp. ¶ 47.

[14] Id.

[15] Pl. SOF ¶ 48; Def. Resp. ¶ 48.

[16] Pl. SOF ¶ 50; Def. Resp. ¶ 50.

[17] Id.

1.  <u>El Khoury's Version Of The Incident</u>

When Cummings arrived at El Khoury's room, she knocked on the door.[18]  El Khoury opened the door, moved to the other side of the room, and stood by the window while Cummings entered the bathroom alone to check the water.[19]  Cummings turned the water on for a few minutes and then called El Khoury to enter the bathroom to see that the water was hot.[20]  El Khoury entered the bathroom, touched the water, and told Cummings that the water was not cold, but it was not warm enough to shower or shave, and that he got sick twice when he attempted to shower with such water.[21]  Cummings left the bathroom, while El Khoury stayed to turn off the water.[22]  El Khoury left the bathroom and found Cummings standing in his room near the upper right corner of the bed.[23]  Cummings reinitiated the dispute by arguing "that the damages she accused El Khoury of causing balanced out the lack of hot water."[24]  Cummings and El Khoury were standing about eight feet apart, with Cummings standing near the upper right corner of the bed while El Khoury stood near the window close to the lower left corner of the bed.[25]  The argument ended when Cummings said: "we are even." [26]  El Khoury replied: "I don't agree about this." [27]  Cummings then replied: "We agree to disagree", and left the room.[28]

Cummings then spent about twenty to twenty-five minutes talking with her daughter in the garden.[29]  At around 6:10 to 6:15 p.m., while El Khoury was eating in the kitchen,

---

[18] Pl. SOF ¶ 57; Def. Resp. ¶ 57.
[19] <u>Id.</u>
[20] <u>Id.</u>
[21] <u>Id.</u>
[22] <u>Id.</u>
[23] <u>Id.</u>
[24] <u>Id.</u>
[25] <u>Id.</u>
[26] <u>Id.</u>
[27] <u>Id.</u>
[28] <u>Id.</u>
[29] Pl. SOF ¶ 56; Def. Resp. ¶ 56.

Cummings came in, looked for something, then left from the kitchen door leading into the garage.[30]

### 2. Cummings' Version Of The Incident

Cummings provided the following version of events in her affidavit in support of a restraining order:[31]

> Everything was untill this morning when Imad star sending me rude and threatening massages because we had irregular hot water in the house even thoug I told him that plumber coming tomorrow.  We exchange massages about that all day and he kept on complaining and thettening me. . . . The water was warm, but no super hot.  So he continue to scream at me and damand 500$ back for inconvinean. . . . He was getting really agreavated, called me a liar and was shaking and was really loud a scary.  After that went 10-15 min He got really mad and grab my right arm! I was really scared and left his room immedeatly and came to Weston police.  My 19 y.o. daughter was in her room but got very scared because of that noice and now my kids and I afraid to come home. Pleas Help![32]

### 3. The 209A[33] Application And WPD Paperwork

On Sunday, May 24, 2020, at approximately 6:30 p.m., Cummings met with Officer Amanda Broughton at the Weston Police Station.[34]  While at the station, Cummings applied for an abuse prevention order pursuant to G. L. c. 209A.[35]  Cummings' affidavit was witnessed by Sergeant Bousios, who assisted Cummings in applying for the abuse prevention order.[36]

---

[30] Pl. SOF ¶ 59; Def. Resp. ¶ 59.

[31] This statement is reproduced as it appears in the exhibit, including typographical errors.

[32] Def. SOF ¶ 9; Pl. Resp. ¶ 9.  El Khoury appears to dispute that Cummings herself authored the affidavit in support of her application for an abuse prevention order.  His lengthy response, however, does not controvert the statement.  Indeed, he acknowledges that "Cummings authored her 2-page affidavit using a blue pen."  Pl. Resp. ¶ 9; see also Docket No. 135-19 at 10-11.

[33] This Court uses the terms "209A order," "abuse prevention order," and "restraining order" interchangeably in this report and recommendation.

[34] Pl. SOF ¶ 60; Def. Resp. ¶ 60; Def. SOF ¶ 3; Pl. Resp. ¶ 3.

[35] Def. SOF ¶ 9; Pl. Resp. ¶ 9.  El Khoury disputes that Cummings herself applied for an abuse prevention order while at the police station.  His lengthy response, however, does not controvert the statement.

[36] Def. SOF ¶ 10; Pl. Resp. ¶ 10.  El Khoury disputes that the affidavit was witnessed by Bousios but fails to provide a citation supporting his contention as required by Local Rule 56.1.

Sergeant Bousios handwrote in black pen the three pages of the application for the abuse prevention order.[37]  The name of the police officer "SGT. E.G. BOUSIOS", and the name of the police department "Weston'' are typed on the first page of the abuse prevention order.[38]

Sergeant Bousios took a photograph of Cummings' arm to document where she indicated El Khoury grabbed her.[39]  The photograph also depicts a pen.[40]  Sergeant Bousios cannot confirm whether he was the person holding the pen.[41]

Officer Broughton telephoned El Khoury at about 7:00 p.m. that evening and said that Cummings wanted to pursue criminal charges against him and that she was afraid to return to her house because El Khoury would be angry with her for going to the police.[42]  El Khoury denied that he touched Cummings during their argument.[43]  Officer Broughton told El Khoury to avoid any argument or problem with Cummings when he returned to Cummings' home.[44]  The call between Officer Broughton and El Khoury was not recorded.[45]

Officer Broughton wrote a "summons report" regarding the incident.[46]  The summons

---

[37] Pl. SOF ¶ 86; Def. Resp. ¶ 86. See Docket No. 83-7.

[38] Pl. SOF ¶ 94; Def. Resp. ¶ 94.

[39] Def. SOF ¶ 7; Pl. Resp. ¶ 7. El Khoury does not dispute that Sergeant Bousios took the picture of Cummings' arm.  Rather, he disputes the purpose for which it was taken.  El Khoury offers no admissible evidence to support his version of the purpose for taking the photograph.

[40] Pl. SOF ¶ 79; Def. Resp. ¶ 79.  The Weston Defendants dispute other portions of this paragraph, but not this part.

[41] Pl. SOF ¶ 116; Def. Resp. ¶ 116.

[42] Def. SOF ¶ 8; Pl. Resp. ¶ 8; Pl. SOF ¶¶ 75-76; Def. Resp. ¶ 75-76.  Docket No. 124-1 ¶ 19.  El Khoury asserts that the narrative's second paragraph has been altered.  Pl. SOF ¶ 76.  However, El Khoury cites only to paragraph 19, the relevant portion of which this Court has recommended Judge Sorokin strike.

[43] Id.

[44] Id.

[45] Pl. SOF ¶ 66; Def. Resp. ¶ 66.

[46] Def. SOF ¶ 5; Pl. Resp. ¶ 5 (citing to Docket No. 24-2 at 9).  El Khoury disputes that Officer Broughton wrote the report, which he asserts Sergeant Bousios significantly altered.  El Khoury does not, however, provide citations to particular parts of the record that support these assertions as required by Rule 56 of the Federal Rules of Civil Procedure.

report indicates "Arrest Date/Time: 05/24/2020 @ 1929."[47]  Officer Broughton entered her

original narrative for the incident on May 24, 2020 at 7:34 p.m.[48]  7:34 p.m. is the time at which

Officer Broughton began the report, not when she completed it.[49]  In the report, Officer

Broughton wrote:

> It should be noted that upon initial contact with Cummings, she stated that she was
> uninjured and I did not notice and[50] obvious markings or bruising on her arm where
> she indicated she had been grabbed.[51]

In the section of report that addresses any injuries to a victim, "Apparent Minor Injury," was

selected from a "pre-determined drop-down menu option within the electronic report system"

used by the WPD.[52]

One page of the report bears the description: "Narrative for Officer Amanda B.

Broughton."[53]  The header section of Officer Broughton's narrative indicates that Sergeant

Bousios' ID (474 EGB) was used to modify and approve the narrative on 05/25/2020 at 00:08

a.m., and that Sergeant Bousios added his own supplemental narrative on 05/25/2020 at 00:08.[54]

The report has only the physical or handwritten signature of Sergeant Bousios.[55]

As Officer Broughton's supervising sergeant, Sergeant Bousios is required to review and

approve her reports.[56]  He did not make any substantive modifications to the contents of the

narrative of the summons report authored by Officer Broughton.[57]  He does not recall any

---

[47] Pl. SOF ¶ 90; Def. Resp. ¶ 90.
[48] Pl. SOF ¶ 67; Def. Resp. ¶ 67.
[49] Def. Resp. ¶ 67. See Docket No. 135-32 ¶ 3.
[50] This appears to be a typographical error wherein the word "and" is used in place of the word "any."
[51] Def. SOF ¶ 6; Pl. Resp. ¶ 6; Pl. SOF ¶ 63; Def. Resp. ¶ 63.
[52] Def. SOF ¶ 6; Pl. Resp. ¶ 6. See Docket No. 141-6 at 2.
[53] Docket No. 141-6 at 3.
[54] Pl. SOF ¶¶ 71, 77; Def. Resp. ¶¶ 71, 77.
[55] Pl. SOF ¶ 72; Def. Resp. ¶ 72.
[56] Pl. SOF ¶ 68; Def. Resp. ¶ 68.
[57] Id.

specific modifications he made but he may have corrected some spelling and/or grammar contained in the narrative prior to approving the report.[58]  Per Sergeant Bousios, whenever an incident report is opened, and approved by a supervisor, the WPD's electronic report system indicates that the report was "'modified,' regardless of whether content was changed."[59]  The second page of the report bears the description: "Supplemental Narrative for Sergeant Efthimios G. Bousios."[60]

Because it was after business hours, and due to COVID-19 protocols, Sergeant Bousios telephoned the on-call judge, the Honorable Michael Pomarole regarding Cummings' request for an abuse prevention order.[61]  The conversation was not recorded.[62]  Sergeant Bousios read Judge Pomarole the complete contents of Cummings' signed affidavit and described the living arrangements between El Khoury and Cummings.[63]  Sergeant Bousios also described the relevant facts relayed to him by Cummings and Officer Broughton and may have also summarized for Judge Pomarole the contents of the summons report narrative written by Officer Broughton.[64]  Cummings did not speak to the on-call judge while in the police station.[65]

Judge Pomarole issued the abuse prevention order at approximately 8:00 p.m. on May 24,

---

[58] Id.

[59] Id.

[60] Docket No. 141-6 at 4.

[61] Def. SOF ¶ 11.  Docket No. 135-3 at 2.  El Khoury's response is based on hearsay statements from Clerk-Magistrate Poitrast which this Court has recommended that Judge Sorokin strike.  In addition, El Khoury has not presented any admissible evidence to support the other statements in his response.  Therefore this statement of fact is deemed admitted.

[62] Pl. SOF ¶ 97; Def. Resp. ¶ 97.

[63] Def. SOF ¶ 11.  Docket No. 135-3 at 2.  El Khoury's response is based on hearsay statements from Clerk-Magistrate Poitrast which this Court has recommended that Judge Sorokin strike.  In addition, El Khoury has not presented any admissible evidence to support the other statements in his response.  Therefore this statement of fact is deemed admitted.

[64] Id.

[65] Pl. SOF ¶ 85; Def. Resp. ¶ 85.

2020.[66]  The order required El Khoury to vacate Cummings' residence.[67]  Sergeant Bousios

affixed the digital signature of the WPD on the order but he does not "recall the process

involved."[68]  He also affixed his physical signature below the digital signature.[69]  Sergeant

Bousios stated that after filling out the abuse prevention order form in accordance with Judge

Michael Pomarole's issuance of the order, "I printed the order and affixed my physical signature

to the document below the words 'Weston Police' in order to demonstrate that I was the officer

at the Weston Police Department who had spoken with Judge Michael Pomarole and that I had

filled out the form."[70]

At approximately 8:00 p.m. on May 24, 2020, Officer Broughton telephoned El Khoury

again.[71]  She asked El Khoury to head immediately to the Weston Police Station.[72]  When El

Khoury arrived, Officer Broughton handed El Khoury the emergency abuse prevention order,

explained a few things related to the order, and told El Khoury to look for future mail from the

court.[73]

The last paragraph of Officer Broughton's narrative is as follows:[74]

The judge approved the application for the abuse prevention order against Elkhoury
at 20:00 hours. I called Elkhoury back and instructed him to come straight to the
police station in order to be served and informed him of the restrictions now in
place. He stated he understood and would come to the station as soon as he could

---

[66] Def. SOF ¶ 13. Docket No. 135-3 at 2; Docket No. 135-6 at 2. El Khoury's response is based
on hearsay statements from Clerk-Magistrate Poitrast which this Court has recommended that
Judge Sorokin strike.  In addition, El Khoury has not presented any admissible evidence to
support the other statements in his response.  Therefore this statement of fact is deemed
admitted.
[67] Def. SOF ¶ 14. Docket No. 135-6 at 1.  El Khoury states that the "Weston Police authorized
the issuance" of the order but fails to provide a citation to support that statement.  Pl. Resp. ¶ 14.
[68] Pl. SOF ¶ 91; Def. Resp. ¶ 91.
[69] Id.
[70] Docket No. 135-3 at 1.  Pl. SOF ¶ 95; Def. Resp. ¶ 95.
[71] Def. SOF ¶ 16; Pl. Resp. ¶ 16.
[72] Id.
[73] Id.
[74] This statement is reproduced as it appears in the exhibit, including typographical errors.

as he was in Boston driving for Lyft. The order allows Elkhoury to be escorted to the residence to grab some belongings and then vacate. At the time of this report, Sgt. Bousios and I are awaiting Elkhoury's arrival to the station. I informed Cummings of the approval and that we will call her when we are corning to the house so she can leave for the time being. There is nothing further to report at this time.[75]

The events described in these lines took place on May 24, 2020 at or after 8:00 p.m.[76]

Sergeant Bousios faxed an eleven-page document on May 25, 2020 at 12:18 a.m.[77] to the Waltham District Court.[78] El Khoury describes the eleven pages as follows: (1) transmission verification report (1 page); (2) summons report (4 pages); (3) the last page of the abuse prevention order (1 page); and (4) application for an abuse prevention order, including a two-page affidavit authored by Oxana Cummings (5 pages).[79]

The summons report that was faxed and filed with the Waltham District Court has only the physical signature of Sergeant Bousios.[80]  The offense included in that summons report was

_____

[75] Pl. SOF ¶ 73; Def. Resp. ¶ 73.  Docket No. 135-18 at 11.  El Khoury maintains that this portion of the paragraph was added.  Pl. SOF ¶ 73.  The Weston Defendants deny this statement to the extent that it implies that anyone other than Broughton wrote the narrative in her summons report.  Def. Resp. ¶ 73.

[76] Id.

[77] El Khoury's statement of fact says "12:18 pm" rather than 12:18 a.m.  Pl. SOF ¶ 82.  This appears to be a typographical error.  See Docket No. 135-19 at 1; see also Docket No. 135-18 at 7-8 (containing one fax stamp from May 25, 2020 at 12:18 a.m. at the bottom of the page and one fax stamp from June 1, 2020 at 12:31 p.m. at the top of the page).

[78] Pl. SOF ¶ 82; Def. Resp. ¶ 82.

[79] Pl. SOF ¶ 83; Def. Resp. ¶ 83.  El Khoury disputes that the third page of the abuse prevention order was faxed to the Waltham District Court on May 25, 2020 at 12:18 a.m.  Pl. SOF ¶ 84.  In support of this contention, El Khoury points to a different copy of the first two pages of the abuse prevention order which bear footers indicating that they were faxed on May 25, 2020 at 12:18 a.m.  See Pl. SOF ¶ 84 (citing to Docket No. 24-2 at 7-8).  The footer indicates that they are pages 02/11 and 03/11.  Docket No. 24-2 at 7-8.  The next page, which is not the third page of the abuse prevention order, shows a footer indicating page 06/11.  Id. at 9.  It appears then, that pages 04/11 and 05/11 are missing from that version of the document.  Without the missing pages, it is unclear whether the third page of the abuse prevention order was included in the fax. In any event, the Weston Defendants admit that the documents referenced in Pl. SOF ¶ 83 are, in fact, the documents that the Weston Defendants provided to the Waltham District Court on May 25, 2020.

[80] Pl. SOF ¶ 78; Def. Resp. ¶ 78.

"Assault and Battery".[81]   The abuse prevention order issued against El Khoury was stamped as

received by the Waltham District Court on May 26, 2020.[82]

A hearing on the 209A order was scheduled at the Waltham District Court for June 1, 2020.[83]

On that date, the hearing was postponed until August 12, 2020 to allow El Khoury to obtain

counsel.[84]   The 209A order was extended by agreement of the parties until the same date.[85]   On

August 12, 2020, the order expired and was not renewed.[86]

   C.   The June 2, 2020 Incident

   On the evening of June 2, 2020, El Khoury, accompanied by members of the WPD, went

to Cummings' house to pick up his belongings.[87]   Defendant Officer Nicole Holmes insisted that

El Khoury take no more than fifteen minutes, and, if he needed longer than that, he should

arrange for another time to finish.[88]   Officers Altieri and Holmes accompanied El Khoury to

Cummings' home.[89]   Cummings was present when they arrived.[90]   Officer Altieri accompanied

El Khoury while they were inside the property to assist and ensure the safety of all individuals.[91]

During that time, Oxana Cummings sat at the kitchen table with a man.[92]   Officer Holmes mostly

---

[81] Pl. SOF ¶ 110; Def. Resp. ¶ 110.
[82] Docket No. 24-2 at 7.  See Pl. SOF ¶ 98; Def. Resp. ¶ 98.
[83] Def. SOF ¶ 17; Pl. Resp. ¶ 17.
[84] Def. SOF ¶ 17. El Khoury disputes other parts of this statement, but not this portion.
[85] Def. SOF ¶ 17; Pl. Resp. ¶ 17.  See also Docket No. 135-18 at 8.  Although El Khoury states that he disputes the entirety of paragraph 17, he does not actually dispute this statement.  Pl. Resp. ¶ 17.
[86] Def. SOF ¶ 17.  El Khoury disputes other parts of this statement, but not this portion.
[87] Pl. SOF ¶ 125; Def. Resp. ¶ 125.
[88] Id.
[89] Def. SOF ¶ 18; Pl. Resp. ¶ 18; Pl. SOF ¶ 126; Def. Resp. ¶ 126.
[90] Def. SOF ¶ 19.  Docket No 135-7 at 2.  El Khoury disputes portions of this statement, but not this particular fact.
[91] Id.
[92] Pl. SOF ¶ 126; Def. Resp. ¶ 126.  In his statement of fact, El Khoury makes assertions relating to the man's identity.  Pl. SOF ¶ 126.  This Court has recommended that those statements be struck.  In any event, the man's identity is not material to any of El Khoury's claims regarding the June 2, 2020 incident.

remained in the downstairs kitchen area while Officer Altieri was upstairs with El Khoury.[93]

While El Khoury was moving his belongings from his rented room on the second floor to his car,

Officer Altieri followed a few feet behind him.[94]

 While he was in Cummings' house, El Khoury states that Officer Holmes stood between

the kitchen table and the path that leads from the stairs into the kitchen and then to the door of

the garage that El Khoury was using to move his things to the car.[95]  El Khoury asserts that he

was about to remove his belongings from a kitchen closet when

> Officer Holmes seemed to get "anxious", and started yelling and moving in an
> intimidating way to the other side of the table (to the side where Cummings was
> sitting), and she called officer Altieri to get close to the plaintiff, which he did.
> When Officer Holmes was acting in the way just described, Plaintiff saw
> Cummings and [the man El Khoury believed to be] Captain Kelly suddenly putting
> their heads down on the table/bar, and there was a loud noise coming from the plates
> and glasses. Plaintiff felt at that moment that Officer Holmes was going to shoot
> him. While taking his stuff from the closet, Plaintiff was able to stay calm, kept his
> hands in a way anyone can see them, avoided any "sudden moves", and continued
> to talk slowly about the stuff he was taking from the closet. Plaintiff did not dare to
> look back; Plaintiff is not sure if Officer Holmes was pointing her gun at him while
> he was taking his stuff from the closet, since she was standing behind him.[96]

 El Khoury further states that at one point while he was coming down the stairs, Holmes

jumped in front of him and "willfully blocked" his way.[97]  El Khoury asserts that when that

occurred, Officer Holmes was standing on the first floor near the end of the stairs, and El Khoury

was descending the stairs quickly while carrying some light objects in his right hand.[98]  El

Khoury contends that during this interaction, Officer Holmes had her right hand on her gun.[99]

---

[93] Def. SOF ¶ 20; Pl. Resp. ¶ 20.  Docket No 135-7 at 2.
[94] Pl. SOF ¶ 127; Def. Resp. ¶ 127.
[95] Id.
[96] Pl. Resp. ¶ 22.  El Khoury's response is reproduced as it appears in the parties' joint statement
of facts, including typographical errors.  See also Docket No. 124-1 ¶¶ 23, 25.
[97] Pl. SOF ¶ 128.  Docket No. 124-1 ¶¶ 23, 25.
[98] Id.
[99] Id.

Officer Holmes states that she did not jump in front of El Khoury to block his way.[100]
Rather, she maintains that she "heard what sounded like loud objects being thrown around" and
went to check on the noise.[101]  As she was going up the stairs, El Khoury came down the same
set of stairs quickly and went around her.[102]  Officer Holmes also maintains that she did not
threaten El Khoury in any way.[103]  Further, she asserts that she never pulled her firearm or had
any reason to do so.[104]

     D.   <u>The Criminal Complaint Application</u>

As a result of the incident on May 24, 2020, defendant Detective Carlo filed with a clerk-
magistrate at the Waltham District Court an application for a criminal complaint for assault and
battery by El Khoury against Cummings.[105]  The document is dated May 26, 2020 and was
docketed on July 14, 2020.[106]  Detective Carlo's submission included the summons report and
the photo of Cummings' arm.[107]

     E.   <u>The Expungement Of The Abuse Prevention Order</u>

On September 11, 2020, El Khoury filed a motion with the Waltham District Court to
expunge the 209A order.[108]  Judge Sara Ellis ruled as follows:

> After reconsideration of the evidence presented, the relationship of the parties was
> a landlord-tenant relationship, and not a qualifying G.L. c. 209A relationship.  The
> order that issued 6/1/2020 was by agreement of both the plaintiff and the defendant
> via telephone hearing in the interests of justice, including consideration of the <u>pro</u>

---

[100] Def. SOF ¶ 21.  Docket No 135-7 at 3.

[101] Docket No 135-7 at 2-3.

[102] Def. SOF ¶ 21.  Docket No 135-7 at 1-3.

[103] Def. SOF ¶ 22.  Docket No 135-7 at 1-3.

[104] Def. SOF ¶ 23.  Docket No 135-7 at 1-3.

[105] Def. SOF ¶ 26; Pl. Resp. ¶ 26.  <u>See</u> Docket No. 135-11 at 1.

[106] Docket No. 135-8 at 1; Docket No. 135-9 at 2.

[107] Pl. SOF ¶ 111; Def. Resp. ¶ 111.  Docket No 135-11 at 1.

[108] Docket No. 135-15.  The Weston Defendants note that they became aware of documents
relating to the expungement for the first time when El Khoury filed them as part of his
opposition to their summary judgment motion and therefore are unable, due to the apparent
expungement, to admit or deny the contents of Judge Ellis' order.  Def. Resp. ¶ 102.

<u>se</u> defendant asking for additional time during the COVID-19 pandemic to obtain counsel, and the fact that the defendant vacated the residence at issue, and the plaintiff did not seek an extension of the order, the order is hereby void <u>ab</u> <u>initio</u> as of 6/1/20.  Motion to expunge is hereby allowed.[109]

F.  <u>El Khoury's Telephone Conversation With Detective Carlo</u>

On November 9, 2020, El Khoury spoke on the telephone with Detective William Carlo who, without any request from El Khoury, pulled the summons report and started reading the incident narrative.[110]  While he was reading, Detective Carlo suddenly stopped on the "not" when he was reading the statement in which Officer Broughton stated that she "did not notice any obvious markings or bruising on the arm of Oxana Cummings."[111]  During the same phone call, Detective Carlo refused El Khoury's request to produce Officer Broughton as a witness for the show cause hearing.[112]

G.  <u>The May 14, 2021 Hearing</u>

On or about May 14, 2021, a hearing was held before a clerk-magistrate at the Waltham District Court at which both El Khoury and Cummings testified.[113]  Prior to the hearing, El Khoury had applied for a criminal complaint against Cummings on the basis that she filed a false police report.[114]

When asked about the photo of Cummings' arm in the hearing, Detective Carlo stated that he was not sure what the photo depicted and that it was not attached to the summons report that he had brought to the hearing.[115]  At the hearing, the clerk-magistrate found probable cause

---

[109] Docket No. 135-15 at 1.
[110] Pl. SOF ¶ 113; Def. Resp. ¶ 113.
[111] <u>Id.</u>
[112] Pl. SOF ¶ 114; Def. Resp. ¶ 114.
[113] Def. SOF ¶ 27; Pl. Resp. ¶ 27.
[114] <u>Id.</u>
[115] Pl. SOF ¶ 112; Def. Resp. ¶ 112.

to charge El Khoury with the crime of assault and battery on Cummings.[116]  He did not find

probable cause to charge Cummings.[117]  Despite the clerk-magistrate's finding, Detective Carlo,

with the agreement of Cummings' counsel, indicated that the WPD was satisfied with no

criminal complaint issuing against El Khoury.[118]  No criminal complaint did issue against him.[119]

El Khoury was never arrested or charged with any crime.[120]

     H.  El Khoury's Health

     El Khoury maintains that the Weston Defendants' actions have caused him emotional

distress and exacerbated his pre-existing health conditions.[121]  El Khoury has taken blood

pressure medication since December 2019, and his health situation was "stable" prior to the May

24, 2020 incident.[122]  During the remaining part of 2020 and until after the May 14, 2021

hearing, El Khoury's blood pressure readings were significantly elevated, and he experienced

dizziness, a lack of energy, headaches, and numbness.[123]  Surprised by the elevated readings, El

Khoury's primary doctor recommended that he purchase a monitor and measure his blood

pressure daily.[124]  After May 14, 2021, El Khoury's blood pressure readings gradually started to

---

[116] Def. SOF ¶ 28.  Docket No 135-11 at 2; Docket No 135-8; Docket No. 135-9.  El Khoury disputes this statement of fact.  Pl. Resp. ¶ 28.  However, his response is based on inadmissible statements about a telephone call with Clerk-Magistrate Poitrast that do not contravene the fact at issue.

[117] Def. SOF ¶ 28.  El Khoury disputes other parts of this statement of fact, but not this portion. Pl. Resp. ¶ 28.

[118] Def. SOF ¶ 29.  Docket No 135-11 at 2. El Khoury disputes this fact but fails to provide a citation in support as required by Local Rule 56.1.  Pl. Resp. ¶ 29.

[119] Id.

[120] Def. SOF ¶ 24.  Docket No 135-3 at 3.  El Khoury disputes this statement of fact.  Pl. Resp. ¶ 24.  However, the citations that he offers do not show that he was ever placed under arrest. Although El Khoury disputes the entirety of this statement of fact, he does not, in fact, dispute that he was never charged with a crime.  Pl. Resp. ¶ 24.

[121] Pl. SOF ¶ 130; Def. Resp. ¶ 130 (admitted for purposes of summary judgment only).

[122] Id.

[123] Id.

[124] Id.

return to their pre-May 24, 2020 levels.[125]  Over the same period of time, El Khoury states that

he lost enjoyment in life, withdrew from social and community activities, and cut down on his

hours at work.[126]

III.    STANDARD OF REVIEW

      Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  An issue is "genuine" when a rational factfinder could resolve it in either

direction.  Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010) (citation

omitted).  A fact is "material" when its (non) existence could change a case's

outcome.  Id. (citation omitted).  This Court takes the facts from the parties' summary judgment

filings and from the record at large where appropriate.  See Evergreen Partnering Grp., Inc. v.

Pactiv Corp., 832 F.3d 1, 4 n.2 (1st Cir. 2016).

      The moving party bears the initial burden of establishing that there is no genuine issue of

material fact.   See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the

opposing party can avoid summary judgment only by providing properly supported evidence of

disputed material facts that would require trial.  See id. at 324.  "[T]he non-moving party 'may

not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts

showing that there is a genuine issue for trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841

(1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  The non-

moving party must produce evidence that is "significant[ly] probative."  Borges, 605 F.3d at

5 (citing Anderson, 477 U.S. at 249).

      The Court "must scrutinize the evidence in the light most agreeable to the nonmovants,

---

[125] Id.
[126] Id.

who are entitled to the benefit of all reasonable inferences therefrom." <u>Ahern</u>, 629 F.3d at 53-54 (citing <u>Cox</u>, 391 F.3d at 29). "A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." <u>Id.</u> (citations omitted). Indeed, "[a]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." <u>McRory v. Spigel (In re Spigel)</u>, 260 F.3d 27, 31 (1st Cir. 2001) (citation omitted). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." <u>Walsh v. Town of Lakeville</u>, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se." <u>Wightman v. Springfield Terminal Ry. Co.</u>, 100 F.3d 228, 230 (1st Cir. 1996) (citation omitted). "Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." <u>Id.</u> (citation omitted). "Where, as here, a district court rules simultaneously on cross-motions for summary judgment, it must view each motion, separately, through this prism." <u>Estate of Hevia v. Portrio Corp.</u>, 602 F.3d 34, 40 (1st Cir. 2010) (citing <u>Blackie v. Maine</u>, 75 F.3d 716, 721 (1st Cir. 1996) ("Barring special circumstances, the <u>nisi prius</u> court must consider each motion separately, drawing inferences against each movant in turn.")).

To ensure <u>pro se</u> pleadings are given fair and meaningful consideration, courts should hold such pleadings "to a less stringent standard than those drafted by lawyers and liberally construe them in favor of the <u>pro se</u> party." <u>Rossop v. Bank of Am. Corp.</u>, No. 13-CV-112-PB, 2013 WL 6633986, at *2 (D.N.H. Dec. 17, 2013) (citations omitted).

IV.    DISCUSSION

    A.    Section 1983 Claims

El Khoury alleges a due process violation, a "class of one" equal protection violation, and conspiracy against defendants Bousios and Goulding pursuant to 42 U.S.C. § 1983.  Docket No. 1-1 at 20-23.  Liberally construed, El Khoury's claims are based on Bousios' alleged failure to follow proper procedures on May 24, 2020 and falsified documents when assisting Cummings with her application for a 209A order against El Khoury.  Specifically, El Khoury alleges that Bousios (1) did not have Cummings speak with the on-call judge; (2) did not speak with the on-call judge himself; (3) signed the 209A order instead of the judge; and (4) improperly applied for the 209A order because El Khoury had a landlord-tenant, as opposed to romantic, relationship with Cummings.  Id.

Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights.  Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008).  Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

"A claim under Section 1983 has two essential elements.  First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law."  Soto v. Flores,

103 F.3d 1056, 1061 (1st Cir. 1997).

"It is axiomatic that the liability of persons sued under § 1983 in their individual capacities must be gauged in terms of their own actions." Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 70 (D. Mass. 2012) (citation and quotation marks omitted). "Individual police officers can be liable only if the individual officer personally participated in the alleged violation." Prall v. City of Bos., 985 F. Supp. 2d 115, 120 (D. Mass. 2013).

### 1. Supervisory Liability

With respect to his Section 1983 claims against defendant Chief Goulding, El Khoury argues that the Weston Police's digital signature on the abuse prevention order "is the responsibility of Chief Goulding who represented the Weston Police Department at all relevant times." Docket No. 124 at 3, 16. El Khoury also contends that Bousios "should have got the permission from Michael Goulding" to include the Weston Police's signature on the order. Docket No. 1-1 at 22. He claims that Goulding "directed Bousios to issue the 209A" order. Id. at 23. As a result, El Khoury asserts that Goulding is liable under Section 1983.

"[I]n order to hold a supervisor liable under Section 1983, the supervisor's behavior must be affirmatively linked to the constitutional violations of his or her subordinates, such that it could be deemed supervisory encouragement, condonation or acquiescence, or gross negligence . . . amounting to deliberate indifference." McClinton v. Suffolk Cnty. Jail, 569 F. Supp. 3d 71, 79 (D. Mass. 2021) (citation and quotation marks omitted).

The First Circuit has held that

> [a]lthough a supervisor need not personally engage in the subordinate's misconduct in order to be held liable, his own acts or omissions must work a constitutional violation. Facts showing no more than a supervisor's mere negligence vis-á-vis his subordinate's misconduct are not enough to make out a claim of supervisory liability. At a minimum, the plaintiff must allege facts showing that the supervisor's conduct sank to the level of deliberate indifference.

Id. at 15.

Goulding states that he did not participate personally in the conduct that El Khoury alleges deprived him of his rights under Section 1983.  Docket No. 121 at 8, 9, 12.  He had no direct involvement with Cummings, the drafting of the summons report, the application for the abuse prevention order, the criminal complaint, or the probable cause hearing at Waltham District Court.[127]  In addition, El Khoury has not provided facts sufficient to show that Goulding was on notice of any subordinate's misconduct.[128]  Accordingly, on this basis alone, this Court recommends that Judge Sorokin grant the Weston Defendants' motion for summary judgment as to El Khoury's three Section 1983 claims against Goulding.

### 2.   Count I - 14th Amendment Violation (Due Process Claim)

El Khoury's due process claim is based on an allegation that Sergeant Bousios falsified parts of documents and failed to follow the appropriate process for an abuse prevention order against El Khoury.  Docket No. 1-1 at 21-22.  For example, El Khoury alleges that Cummings and Bousios never spoke to the on-call judge.  Id. at 21.  He also alleges that the Weston Defendants "decided to delegate to themselves the judicial powers granted to the on-call judge to issue a 209A, as evidenced by the digital signature of Weston Police on the Restraining Order, along with the signature of Efthimios Bousios who performed the digital signature."  Id. at 21-22.

The Due Process Clause of the Fourteenth Amendment, which prohibits a state from

---

[127] Def. SOF ¶ 30.  Docket No 135-12 at 1.
[128] El Khoury contends that "[a]ffixing the digital signature of Weston Police on the Order is the responsibility of Chief Goulding. Also, since the complainant/Applicant in the 'Application for criminal complaint' is Weston Police Department, then it follows that Chief Goulding holds responsibility for filing the application for criminal complaint against the Plaintiff."  Pl. Resp. ¶ 30.  El Khoury, however, provides no citation for these statements, and this Court will not consider them.

depriving any person of life, liberty, or property without due process of law, has both a substantive and a procedural component.  Martini v. City of Pittsfield, C.A. No. 14-30152, 2015 WL 1476768, at *6 (D. Mass. 2015); see also U.S. Const. Amend. XIV, § 1.  The procedural component requires that there be notice and opportunity for a hearing before a person is deprived by state action of a protected property interest.  Logan v. Zimmerman, 455 U.S. 422, 428 (1982); Fuentes v. Shevin, 407 U.S. 67, 96-97 (1972) (before a state can assist a secured creditor in repossession of a debtor's property, there must be notice and a prior hearing).  The substantive component applies where state conduct is so brutal, demeaning, and harmful that it shocks the conscience.  Martini, 2015 WL 1476768, at *7.

"Chapter 209A provides that a person suffering abuse from a family or household member may file a complaint in the Superior, Probate and Family, or District/Municipal court requesting protection against such abuse."  Nollet v. Justs. of Trial Ct. of Com. of Mass., 83 F. Supp. 2d 204, 207 (D. Mass.), aff'd sub nom., Nollet v. Justs. of Trial Ct. of Com. of Massachusetts, 248 F.3d 1127 (1st Cir. 2000) (citing Mass. Gen. L. ch. 209A, § 3).  A 209A order may be used even in the absence of a romantic relationship.  Tabia v. Dekeon, No. CV 19-11132-LTS, 2019 WL 2578277, at *2 (D. Mass. June 24, 2019).

The Nollet court described the procedure for obtaining such an order:

If the 209A petitioner proves the existence of such abuse by a preponderance of the evidence, the court may then issue an order imposing significant restrictions on the defendant.  Although the Court is free to fashion whatever remedy it deems appropriate, the statute enumerates a number of specific orders which the Court may issue, including: ordering the alleged abuser to vacate the household abode . . . .

A court can issue a temporary order granting the remedies provided in ch. 209A, § 3, without giving the alleged abuser notice and an opportunity to be heard, provided that the petitioner files a complaint and demonstrates "a substantial likelihood of immediate danger of abuse."  If the court does issue an ex parte temporary order under Section 4, the court must then give the defendant the opportunity to be heard on the question of continuing the temporary order within ten (10) business days

after the issuance of the ex parte order.

Nollet, 83 F. Supp. 2d  at 207 (citing Mass. Gen. L. ch. 209A, § 4, additional citations omitted).

When a court is closed for business, a court department "may grant relief to the plaintiff as provided under section four if the plaintiff demonstrates a substantial likelihood of immediate danger of abuse."  Mass. Gen. L. ch. 209A, § 5.  "In the discretion of the justice, such relief may be granted and communicated by telephone to an officer or employee of an appropriate law enforcement agency . . . ."  Id.[129]

El Khoury's due process claim depends in part on his allegation that the WPD authorized the 209A order, not Judge Pomarole.  In support of his contention, El Khoury asserts that

> the on-call judge would not have proceeded with conducting the hearing if he knew that the relationship between the two parties is one of a "landlord-tenant", a fact clearly mentioned in the affidavit of Cummings and in the police report.  Such outrageous issuance of a 209A demonstrates that "the on-call judge" did not speak directly to Oxana Cummings and did not conduct a hearing over the phone, as he should have done, according to the "Guidelines for Judicial Practice: Abuse Prevention Proceedings", and that is what explains why Weston Police digitally signed the restraining order on May 24, 2020 at about 8:00 p.m.

Docket No. 1-1 at 8-9.

El Khoury's assertions, however, are not supported by sufficient evidence for a reasonable juror to conclude that El Khoury's claims are true.[130]  The undisputed facts are as

---

[129] To the extent that El Khoury claims that the 209A process itself violated his civil rights, the First Circuit has found otherwise.  Individuals are not deprived of clearly established rights guaranteed by the United States' laws or the Constitution through the issuance of a 209A order. Nollet, 83 F. Supp. 2d  at 211 (citing Rodriguez–Cirilo v. Garcia, 115 F.3d at 52).  "The ex parte procedure of ch. 209A, § 4 is constitutional because it provides the due process protections that are necessary before the state may deprive an individual of the constitutionally protected liberty and property interests that are at stake when a temporary restraining order is issued in a domestic abuse action."  Id.

[130] Nor are they legally accurate.  An abuse prevention order is legally feasible where the relationship at issue is one of landlord-tenant.  See Tabia, 2019 WL 2578277, at *2.

follows: Judge Pomarole issued the abuse prevention order at approximately 8:00 p.m. on May 24, 2020.[131]  Sergeant Bousios affixed the digital signature of the WPD on the order but he does not "recall the process involved."[132]  Sergeant Bousios stated that after filling out the abuse prevention order form in accordance with Judge Michael Pomarole's issuance of the order, "I printed the order and affixed my physical signature to the document below the words 'Weston Police' in order to demonstrate that I was the officer at the Weston Police Department who had spoken with Judge Michael Pomarole and that I had filled out the form."[133]  The undisputed statements of material fact show that the judge issued the 209A order after an appropriate process.  El Khoury points to numerous issues with respect to the documents.  However, none of these issues either individually or collectively present sufficient evidence to support a due process violation.

In addition, after construing the evidence in the light most favorable to El Khoury, this Court finds that he has not established that he was denied procedural due process.  Indeed, El Khoury had abundant notice and opportunity to be heard.  He received notice of the order on the day it was issued.[134]  He then attended a hearing on June 1, 2020.[135]  At that hearing, El Khoury requested and received a continuance to hire counsel.[136]  The order was extended until August 12, 2020, the date of the next scheduled hearing.[137]  On August 12, 2020, the order expired and was not renewed.[138]  Nor has El Khoury shown, based on the undisputed facts of record, that the officers' conduct is so brutal, demeaning, and harmful that it shocks the conscience.

---

[131] Def. SOF ¶ 13. Docket No. 135-3 at 2; Docket No. 135-6 at 2.
[132] Pl. SOF ¶ 91; Def. Resp. ¶ 91.
[133] Docket No. 135-3 at 1.  Pl. SOF ¶ 95; Def. Resp. ¶ 95.
[134] Def. SOF ¶ 16; Pl. Resp. 16.
[135] Def. SOF ¶ 17; Pl. Resp. 17.
[136] Def. SOF ¶ 17; Docket No. 138-18 at 8.
[137] Def. SOF ¶ 17; Pl. Resp. 17.
[138] Id.

Accordingly, this Court recommends that Judge Sorokin grant the Weston Defendants' motion for summary judgment as to El Khoury's due process claim.

### 3.   Count II – 14th Amendment Violation (Equal Protection Claim)

El Khoury alleges that Bousios, at Goulding's direction, intentionally treated him differently than other "similarly situated" individuals by failing to follow the proper procedures for obtaining an abuse prevention order.  Docket No. 1-1 at 23.  Rather, he alleges that Oxana Cummings never talked to the on-call judge, and Bousios altered the original incident report to charge a false crime.  Id.  The purpose of such conduct allegedly was to help Cummings evict El Khoury.  Id.

A "class of one" equal protection claim is "a claim in which the plaintiffs do not claim membership in a class or group, but assert that the defendants impermissibly singled them out for unfavorable treatment."  SBT Holdings, LLC v. Town Of Westminster, 547 F.3d 28, 33 (1st Cir. 2008).  To establish a "class of one" equal protection violation, El Khoury must allege that "compared with others similarly situated [he] was selectively treated . . . based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injury a person."  Barrington Cove, LP v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (internal quotation marks, citation, and emphasis omitted); see also Cordi-Allen v. Conlon, 494 F.3d 245, 250 (1st Cir. 2007) (plaintiffs must allege that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

The test for whether a plaintiff has shown that individuals are similarly situated is "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated."  Barrington Cove, 246 F.3d at 8 (internal quotation marks and citations omitted).  "Exact correlation is neither likely or necessary, but the

cases must be fair congeners.  In other words, apples must be compared to apples."  Id. Although the determination as to whether parties are similarly situated is a "fact-bound inquiry" this does not mean "that every case, regardless of the proof presented, is a jury case."  Cordi-Allen, 494 F.3d at 251.  A plaintiff must identify the similarly situated individuals and circumstances to "a high degree."  Rectrix Aerodrome Centers, Inc. v. Barnstable Municipal Airport Comm'n, 610 F.3d 8, 16 (1st Cir. 2010).  El Khoury must "first identify related specific instances where persons situated similarly in all relevant respects were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled . . . out for unlawful oppression."  Buchanon v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (emphasis in original).  El Khoury "must show that the parties with whom [they] seek[] to be compared have engaged in the same activity vis-a-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile."  Cordi-Allen, 494 F.3d at 251.

El Khoury relies on the same evidence to support this claim as his due process claim. Docket No. 124 at 16-17.  No reasonable juror could conclude, on the basis of the undisputed facts of record, that El Khoury's claims are true.  He identifies no other individuals as comparators, in other words, individuals who are situated similarly in all relevant aspects to him. A reasonable jury could not infer that El Khoury was singled out for unlawful oppression.  He therefore has not shown a violation of his constitutional rights.  Accordingly, this Court recommends that Judge Sorokin grant summary judgment in favor of the Weston Defendants on the "class of one" equal protection claim.

### 4.  Count III - Section 1983 Conspiracy Claim

El Khoury brings a Section 1983 conspiracy claim against Bousios and Goulding. Docket No. 1-1 at 23.  He alleges they conspired to falsely obtain the 209A order and to invent a crime of assault and battery to cover up their misconduct.  Id.  A Section 1983 conspiracy claim

is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."  Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (abrogated in part on other grounds by Maldonado v. Fontanes, 568 F.3d 263) (citation omitted).  A plaintiff must establish "not only a conspiratorial agreement but also an actual abridgment of some federally-secured right."  Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citation omitted).  Further, the plaintiff must specify the specific constitutional right infringed.

El Khoury has presented no admissible evidence of an agreement between defendants Bousios and Goulding from which a reasonable jury could infer a conspiracy among them.  Indeed, El Khoury has not provided any admissible evidence that Goulding was meaningfully involved in any of the events giving rise to this claim.  He only presents his own unsupported assertions that fail to show any communication, let alone an agreement, between Bousios and Goulding with respect to the incidents that led to this case.  In addition, there is no evidence that the defendants committed acts that violated El Khoury's constitutional rights.  Accordingly, this Court recommends that Judge Sorokin grant summary judgment in favor of the Weston Defendants on the conspiracy claim.[139]

B.    Count IV – Abuse Of Process

El Khoury alleges that Carlo, at Goulding's direction, filed an application for a criminal complaint against El Khoury, and that in so doing, both Carlo and Goulding engaged in abuse of

---

[139]  The Weston Defendants argue that Goulding and Bousios are entitled to qualified immunity with respect to El Khoury's Section 1983 claims.  Docket No. 121 at 3-5.  The qualified immunity doctrine provides public officials an immunity from suit and not a mere defense to liability.  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  However, because El Khoury's Section 1983 claims fail as a matter of law, this Court need not reach the question of qualified immunity.

process.  Docket No. 1-1 at 23-24.  El Khoury further alleges that Bousios also engaged in abuse of process by fabricating evidence against him.  Id.  El Khoury contends that the application for criminal charges was made for the improper purpose of covering up misconduct related to the issuance of the abuse prevention order and to gain "leverage over [El Khoury] against any potential civil claims he could bring against them for violating his civil rights on May 24, 2020 and for assaulting him by Officer Holmes on June 2, 2020."  Id. at 24; Docket No. 124 at 20.

To sustain an abuse of process claim, El Khoury must establish that "process was used 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'"  Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010) (quoting Quaranto v. Silverman, 345 Mass. 423, 426 (1963)).  Thus, the three elements of abuse of process are (1) "process" was used, (2) for an ulterior or illegitimate purpose, (3) resulting in damage.  Id. (citations omitted); Gutierrez v. Massachusetts Bay Transportation Authority, 437 Mass. 396, 407 (2002) (citations omitted); Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 389 (1975).

The tort differs from malicious prosecution because abuse of process may exist "regardless of whether there was probable cause or whether the proceedings terminated in favor of the charged party."  Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989); see Gutierrez, 437 Mass. at 408 ("probable cause is irrelevant to an abuse of process claim"); see also Fishman v. Brooks, 396 Mass. 643, 652 (1986) (proving "groundlessness of an action is not an essential element for an action for abuse of process").

"Process" refers to "the papers issued by a court to bring a party or property within its jurisdiction."  Jones, 369 Mass. at 390.  Massachusetts courts have limited process to three types: writs of attachment, the process used to institute a civil action, and the process related to the bringing of criminal charges.  Id. at 389-90.

It is undisputed that Carlo filed an application for a criminal complaint against El Khoury.[140] El Khoury does not point to any evidence that Bousios or Goulding were involved in drafting or filing the application for criminal charges against him.  Indeed, Carlo specifically denied that Goulding ordered him, directly or indirectly, to file the application for a criminal complaint.[141] In other words, there are no undisputed facts that show that either Bousios or Goulding used "process" against El Khoury.  Accordingly, this Court recommends that Judge Sorokin grant on this basis the Weston Defendants' motion for summary judgment as to El Khoury's claims of abuse of process against Goulding and Bousios.

El Khoury notes that Carlo admits that the photo of Cummings' arm, which was attached to the summons report, was included with the summons report that Carlo filed in support of his application for a criminal complaint against El Khoury.[142] He also notes that, when asked about the photo at the May 14, 2021 hearing, Carlo stated that he was not sure what it depicted and that the copy of the summons report he had with him did not include the photo.[143] In addition, El Khoury states that during a phone call with Carlo on November 9, 2020, Carlo read out loud from the summons report and stopped reading when he reached the word "not" in the sentence indicating that there were no obvious markings or bruising on Cummings' arm where she indicated she had been grabbed.[144] From all this, El Khoury concludes that "it can be inferred that Det. Carlo did <u>not</u> bring with him the photo of Cummings' arm for the hearing, since he had not been aware, prior to filing the report with the court on July 14, 2020, that officer Broughton's narrative stated that she 'did not notice any obvious markings.'" Docket No. 124 at 20

---

[140] Def. SOF ¶ 26; Pl. Resp. ¶ 26; Docket No. 135-11 at 1-2.
[141] Docket No. 135-11 at 2.
[142] Docket No. 124 at 19; Pl. SOF ¶ 111; Def. Resp. ¶ 111.
[143] Docket No. 124 at 19; Pl. SOF ¶ 112; Def. Resp. ¶ 112.
[144] Docket No. 124 at 19; Pl. SOF ¶ 113; Def. Resp. ¶ 113.

(emphasis in original).

Construing El Khoury's theory liberally, he appears to argue that Carlo presented the complaint on the assumption that Cummings had a visible injury at the time she reported to the WPD.  Even if Carlo was unaware that Broughton's narrative stated that she did not notice any obvious markings or bruising on Cummings' arm, that does not show that Carlo filed an application for a criminal complaint against El Khoury for any untoward reason.  Carlo's role within the WPD was that of court prosecutor.  Docket No. 135-11 at 1.  El Khoury presents no evidence showing that Carlo filed the application to prevent him from, for example, speaking at any hearing.

Accordingly, this Court recommends that Judge Sorokin grant the Weston Defendants' motion for summary judgment as to El Khoury's claims of abuse of process.

C.     Count V – Malicious Prosecution

El Khoury alleges that Carlo, under Goulding's direction, filed an application for a criminal complaint without probable cause.  Docket No. 1-1 at 24.  El Khoury also alleges that Bousios fabricated and omitted evidence.  Id.

Under Massachusetts law, the elements of malicious prosecution are "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice."  Nieves, 241 F.3d at 53.

1.     Initiation Of Criminal Proceedings

For the first element, "the defendant must have, in some sense, initiated the prosecution.  The mere transmission of information to a police officer, who using his or her independent judgment, then pursues the matter and institutes criminal proceedings, has never been held sufficient to support an action for malicious prosecution."  Correllas v. Viveiros, 410 Mass. 314,

318 (1991) (citation omitted).

Courts in this district disagree about whether the filing of an application for a criminal complaint, without the issuance of the complaint, suffices to initiate a criminal proceeding for the purposes of a claim of malicious prosecution.  In <u>Fletcher v. Wagner</u>, the court held that "[i]n this admittedly cloudy environment, the stronger authority appears to be that in Massachusetts a claim for malicious prosecution will only lie if a criminal complaint actually issues.  Mere application for a complaint will not be enough."  <u>Fletcher v. Wagner</u>, 221 F. Supp. 2d 153, 155 (D. Mass. 2002).  In <u>Damon v. Hukowicz</u>, however, the court held that "[i]n the case at bar, [the police officer] clearly instituted the criminal proceedings against Plaintiff by filing the application for a criminal complaint."  <u>Damon v. Hukowicz</u>, 964 F. Supp. 2d 120, 137 (D. Mass. 2013).  For the purposes of this analysis, this Court follows the <u>Damon</u> court's more inclusive view.  Therefore, because it is undisputed that Carlo filed an application for a criminal complaint against El Khoury, El Khoury meets the first element.[145]

El Khoury, however, has offered no evidence that Goulding or Bousios encouraged or demanded that Carlo institute criminal proceedings against El Khoury.  Both Carlo and Goulding deny that Goulding was involved with the filing of the application.[146]  In addition, El Khoury has presented no admissible evidence from which a reasonable jury could infer that Bousios took part in the filing of the application.   Accordingly, this Court recommends that Judge Sorokin grant the Weston Defendants' motion for summary judgment as to El Khoury's claims of malicious prosecution against Goulding and Bousios.

2.  <u>Actual Malice</u>

"To raise a genuine issue of material fact on the question of malice, the plaintiff must

---

[145] Def. SOF ¶ 26; Pl. Resp. ¶ 26; Docket No. 135-11 at 1-2.
[146] Docket No. 135-11 at 2; Docket No. 135-12 at 1.

come forward with some evidence that would permit a fact finder to conclude that [the defendant] (1) knew there was no probable cause, and (2) acted with an improper motive, i.e., acted primarily for a purpose other than that of properly adjudicating the claim." Sklar v. Beth Israel Deaconess Medical Center, 59 Mass. App. Ct. 550, 557 (2003) (internal quotation marks and citations omitted). "'[I]mproper motive may be one of vexation, harassment, annoyance, or attempting to achieve an unlawful end or a lawful end through an unlawful means.'" Chervin v. Travelers Ins. Co., 448 Mass. 95, 109 (2006) (citation omitted).

El Khoury has offered no admissible evidence to show that Carlo acted with an improper motive in filing the application for a criminal complaint.  In his memorandum, El Khoury refers only to Bousios and Goulding.  Specifically, El Khoury states:

> As for the element of "Malice", it could be inferred from actions in which Sergeant Bousios falsified the summons report, fabricated evidence and facts, conspired with Goulding to violate the civil rights of the plaintiff through the issuance of the Abuse Prevention order on May 24, 2020, and through all other actions detailed earlier through this Memorandum.

Docket No. 124 at 25.  El Khoury points to nothing in the record to indicate that Carlo's actions meet the definition of malice for the purposes of a malicious prosecution claim.  Furthermore, a plaintiff must show that the defendants knew there was no probable cause.  Here, El Khoury has provided no such evidence.  Indeed, a clerk-magistrate found probable cause.[147]

Accordingly, this Court recommends that Judge Sorokin grant the Weston Defendants' motion for summary judgment as to El Khoury's claim of malicious prosecution against Carlo.

D.    Count VI – Assault

El Khoury claims that Officer Holmes assaulted him when she accompanied him to Cummings' house to collect his belongings on June 2, 2020.  Docket No. 1-1 at 24.  He appears

---

[147] Def. SOF ¶ 28.  El Khoury disputes that the clerk-magistrate found probable cause.  Pl. Resp. ¶ 28.  His lengthy response, however, does not controvert the statement.

to allege two separate incidents of assault: (1) that he felt Officer Holmes was going to shoot him in Cummings' kitchen; and (2) that as he was rapidly descending a set of stairs, Officer Holmes suddenly jumped in front of him, blocking his way without touching him.  Id. at 10-11; Docket No. 124-1 at 9.  With respect to the second alleged incident, El Khoury asserts that while he was removing his belongings from Cummings' house:

> I was coming down the stairs quickly, Officer Holmes this time suddenly jumped in front of me, fully blocking my way to tell me again that I could have an additional five minutes. The way Officer Holmes suddenly positioned herself in front of me signaled that she was expecting me to collide with her or maybe to push her away from my way. Officer Holmes had her right hand on her gun when she blocked my way. I was lucky to avoid her with a miracle.

Docket No. 124-1 ¶ 23.[148]

Under Massachusetts' law "[c]ivil assault requires that a defendant 'act[ed] intending to cause a harmful or offensive contact' with a plaintiff, 'or [acted to create] an imminent apprehension of such a contact,' and that a plaintiff was 'thereby put in such imminent apprehension.'"  Diaz v. Devlin, No. CV 16-40039-TSH, 2019 WL 4804803, at *6 (D. Mass. Sept. 30, 2019) (quoting Restatement (Second) of Torts § 21 (1) (Am. Law Inst. 1965)) (additional citations omitted).  Massachusetts law allows for assault claims against police officers.  Raiche v. Pietroski, 623 F.3d 30, 40 (D. Mass. 2010).  However, police officers are allowed to use reasonable force, which provides a valid defense to assault and battery claims.  Id  Courts look to the objective reasonableness of the officer's actions given the specific circumstances.  Titus v. Town of Nantucket, 840 F. Supp. 2d 404, 413-14 (D. Mass. 2011).  "[T]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 414

---

[148] El Khoury also claims that Goulding directed Holmes to assault El Khoury.  Docket No. 1-1 at 25.  However, he provides no evidence showing Goulding's involvement in the alleged acts of assault.  For this reason alone, summary judgment should be granted for Goulding on this claim.

(citation and quotation marks omitted).[149]

Here, a judge had issued a 209A order against El Khoury.  He had been directed to stay away from Cummings.  He was only allowed back into the house to retrieve his belongings under police escort.  While El Khoury was in the house, Officer Holmes heard loud noises that sounded like large objects being thrown around, so she went upstairs to determine the cause of the noise.  Docket No. 135-7 at 2-3.  Even if Officer Holmes had placed her hand on her gun and blocked El Khoury's way, her actions at that time were reasonable given that she was there to ensure the safety of everyone.  Construing the facts in the light most favorable to El Khoury, no reasonable juror could find that Officer Holmes committed assault.

Accordingly, I recommend that Judge Sorokin deny El Khoury's motion for summary judgment and grant the Weston Defendants' motion for summary judgment as to El Khoury's claims of assault as to Holmes and Goulding.

E.      Count VII – Civil Rights Claim Pursuant To The Massachusetts Civil Rights Act

On June 2, 2020, when El Khoury went to retrieve his belongings, he was surprised by Cummings' presence.  El Khoury alleges that he was led to believe that Cummings would not be at the house when he collected his belongings, so when she was present, it felt like a trap "to justify harming [him]".  Docket No. 1-1 at 24-25.  El Khoury also alleges that Goulding ordered Holmes to assault him, "either with the intent to kill or threaten or harm [him] in some other way" to prevent him from testifying at his next court hearing.  Id. at 25.

The MCRA provides, in relevant part:

Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation

---

[149] The pertinent cases focus on assault and battery claims.  Indeed, there are very few cases in which a plaintiff alleges assault alone against a police officer.  Nevertheless, there is no reason to believe that the logic of a reasonableness determination with respect to a police officer's conduct should not be applied with equal force to a stand-alone assault claim.

or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured.

M.G.L. c. 12, § 11H.  The MCRA authorizes civil actions by any person subjected to an interference of rights as described in Section 11H.  Mass. Gen. Laws. ch. 12 § 11I.  To prevail, El Khoury "must prove that (1) [his] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'"  Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989) (quoting Mass. Gen. Laws ch. 12, § 11H).  "The MCRA is coextensive with 42 U.S.C. § 16 1983, except that the Federal statute requires State action whereas its State counterpart does not, and the derogation of secured rights must occur by threats, intimidation or coercion." Sietins v. Joseph, 238 F. Supp. 2d 366, 377-78 (D. Mass. 2003) (quotations and citations omitted).  This additional requirement distinguishes valid claims under the MCRA from those under Section 1983.

The MCRA "was not intended to create, nor may it be construed to establish, a vast constitutional tort." Mancuso v. MIAA, Inc., 453 Mass. 116, 131-132 (2009) (internal quotation marks and citation omitted).  "It is for this reason that the Legislature explicitly limited the Act's remedy to situations where the derogation of secured rights occurs by threats, intimidation, or coercion." Id. at 132.  "A direct violation of civil rights is not, without a showing of coercive behavior, actionable." Orwat v. Maloney, 360 F. Supp. 2d 146, 164 (D. Mass. 2005) (quotation omitted).

For purposes of the MCRA, "a 'threat' involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.  'Intimidation' involves putting in fear

for the purpose of compelling or deterring conduct. 'Coercion' involves the application to

another of such force, either physical or moral, as to constrain a person to do against his will

something he would not otherwise have done." Farrah v. Gondella, 725 F. Supp. 2d 238, 247 (D.

Mass. 2010) (quoting Planned Parenthood League of Massachusetts v. Blake, 417 Mass. 467,

474 (1994)).

Here, the record is devoid of any evidence of threats, intimidation, or coercion by

Goulding. With respect to Holmes, El Khoury argues that she "intimidated [him] and threatened

his personal safety and security when he was picking up his remaining be longings." Docket No.

124 at 29. El Khoury does not, however, identify any specific constitutional right that he claims

was violated during this incident.

Viewing the evidence in the light most favorable to El Khoury, Officer Holmes jumped

in front of him with her hand on her firearm and blocked his way to inform him he could have

additional time to collect his things. There is no evidence in the record to support the allegation

that Officer Holmes' actions were intended to prevent him from testifying in court. Nothing in

El Khoury's version of the events shows that Officer Holmes was attempting to threaten,

intimidate, or coerce El Khoury in order to cause him to give up a constitutional right.

Accordingly, this Court recommends that the Judge Sorokin grant summary judgment in

favor of the Weston Defendants on El Khoury's MCRA claim.[150]

F.    Count IX – Intentional Infliction Of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress, El Khoury must

prove that (1) the Weston Defendants either intended to inflict emotional distress, or knew or

---

[150] The Weston Defendants also move for summary judgment on the basis of qualified immunity with respect to El Khoury's MCRA claim. Docket No. 121 at 18. However, because El Khoury's MCRA claim fails as a matter of law, this Court need not reach the question of qualified immunity.

should have known that emotional distress was the likely result from their conduct; (2) the

Weston Defendants' conduct was extreme and outrageous, was beyond all possible bounds of

decency, and was utterly intolerable in a civilized society; (3) the Weston Defendants' conduct

caused El Khoury's emotional distress; and (4) the emotional distress suffered by El Khoury was

severe and of a nature that no reasonable person could be expected to endure it.  See Conley v.

Romeri, 60 Mass. App. Ct. 799, 803 (2004).  The Massachusetts Supreme Judicial Court has

explained that

> Liability cannot be predicated on mere insults, indignities, threats, annoyances,
> petty oppressions or other trivialities nor even is it enough that the defendant has
> acted with an intent which is tortious or even criminal, or that he has intended to
> inflict emotional distress, or even that his conduct has been characterized by malice
> or a degree of aggravation which would entitle the plaintiff to punitive damages for
> another tort.

Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (internal quotation marks

and citations omitted).

The test for intentional infliction of emotional distress is demanding and requires

behavior that is "extreme and outrageous . . . beyond all possible bounds of decency and . . .

utterly intolerable in a civilized society."  Conley, 60 Mass. App. Ct. at 803.

Examples of successful IIED claims include instances of "relentless" and "pernicious"

verbal and written attacks over a "more than four-year long war of vituperation" waged against

the plaintiff  which included "vicious and extraordinarily disturbing emails and text messages"

(Sindi v. El-Moslimany, 896 F.3d 1, 22 (1st Cir. 2018), and government officials knowingly

implicating innocent individuals in a murder, including by acting deliberately in order to lead to

the wrongful conviction and incarceration and stonewalling the individuals' petitions for post-

conviction relief.  Limone v. United States, 579 F.3d 79 (1st Cir. 2009).

The kind of behavior described above is not present in this case.  El Khoury's allegations

for this claim rely heavily on his charges of false documents and conspiracies, none of which are supported by the undisputed facts.  Having reviewed the record carefully, this Court finds that there is no genuine issue of material fact that the Weston Defendants' behavior was extreme and outrageous.

Accordingly, this Court recommends that Judge Sorokin grant the Weston Defendants' motion for summary judgment as to El Khoury's claim for intentional infliction of emotional distress.

V.    RECOMMENDATION

For the foregoing reasons, I recommend that Judge Sorokin grant the Weston Defendants' motion for summary judgment and deny El Khoury's motion for summary judgment.[151]

VI.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999);

---

[151] Even if Judge Sorokin adopts this Court's recommendation as to the Weston Defendants' motion for summary judgment, this case is not fully resolved because El Khoury's claims against defendant Cummings remain outstanding.

<u>Sunview Condo. Ass'n v. Flexel Int'l, Ltd.</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IMAD EL KHOURY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Civil No. 21-11036-LTS |
| | ) |
| MICHAEL GOULDING et al., | ) |
| | ) |
| Defendants. | ) |

JUDGMENT

March 16, 2023

SOROKIN, J.

    Pursuant to the Court's Order on, <u>inter alia</u>, Defendants' Motion for Summary Judgment, Doc. No. 157, judgment shall enter in favor of Defendants Michael Goulding, Efthimios Bousios, William Carlo, and Nicole Holmes (all defendants other than Oxana Cummings) on all counts asserted against them in Plaintiff Imad El Khoury's Complaint.

    The Complaint also names Oxana Cummings as a defendant in some counts. The Docket contains no evidence that she has been served as required under Federal Rule of Civil Procedure 4(c). Rule 4(m) provides, "If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The Court provided notice to Plaintiff that it was contemplating dismissal without prejudice of the claims against Defendant Cummings on February 28, 2023, and allowed Plaintiff until March 10, 2023 to show good cause for the failure

to serve or otherwise respond to the notice. Doc. No. 158. Plaintiff did not respond. Accordingly, all counts against Defendant Oxana Cummings are DISMISSED WITHOUT PREJUDICE under Rule 4(m) for failure to properly serve.

Plaintiff and Defendants shall bear their own costs and fees.


SO ORDERED.


 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

Add. 57