# United States Court of Appeals
# For the First Circuit

No. 23-1282

## IMAD G. EL KHOURY

Plaintiff - Appellant

V.

## MICHAEL GOULDING, Police Chief; EFTHIMIOS BOUSIOS, Sergeant; WILLIAM CARLO, Detective/Police Prosecutor; NICOLE HOLMES;

Defendants - Appellees

## OXANA CUMMINGS

Defendant.

On Appeal from the United States District Court
For the District of Massachusetts
Civil Action No. 21-cv-11036-LTS

**REPLY BRIEF OF APPELLANT IMAD EL KHOURY**

Imad El Khoury  (Pro Se)

1579 Race Lane, Marstons Mills, MA 02648
Email: imadkho@yahoo.com
Phone: 781-392-8458

TABLE OF CONTENTS

**TABLE OF AUTHORITIES**     **4**

**ARGUMENT**     **1**

I. Weston Defendants do not dispute that the affidavit of Sgt Bousios lacks credibility.     1

II. Weston Defendants have abandoned their statement that officer Broughton has electronically signed the summons report.     3

III. Doc. No. 135-2 ("Exhibit 2") is a false document, and the district court erred in not striking it, and erred in not sanctioning Weston Defendants.     4

IV. Cummings did not author her affidavit when she was in the Weston Police Station on May 24, 2020.     7

V. Clerk-Magistrate Poitrast was a co-conspirator to Weston Police.     9

VI. The district court erred in admitting as fact that Judge Michael Pomarole issued the abuse prevention order.     12

VII. Weston Defendants are not entitled to Qualified Immunity.     16

VIII. The District Court erred in granting Weston Defendants' Motion for Summary Judgment as to El Khoury's abuse of process claim.     17

IX. Weston Defendants lacked probable cause when they filed the application for criminal complaint, and they acted with an improper motive.     20

X. The District Court erred in granting Weston Defendants' Motion for Summary Judgment as to El Khoury's Assault & MCRA claims.     24

XI. Weston Defendants are not entitled for common law immunity.     25

**CONCLUSION**     **26**

**CERTIFICATE OF COMPLIANCE**     **27**

**CERTIFICATE OF SERVICE**     **28**

<u>**TABLE OF AUTHORITIES**</u>

**CASES**                                                                                                                                                              **PAGES**

<u>AC Asset, LLC v. Mitchell,</u> No. 110818, 2022 Ohio 1763 (Ohio Ct.App.

2022)..............................................................................................................................14

<u>Anderson v. Cryovac, Inc</u>, 862 F.2d 910, 923 (1st Cir. 1988)............................3, 7

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)............................. 2, 18

<u>Beecy v. Pucciarelli</u>, 387 Mass. 589, 593, 441 N.E.2d 1035, 1039 (1982).............23

<u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972).......................................12, 13

<u>Commonwealth v. Geordi G,</u> 111 N.E.3d 1102, 1107 (Mass. App. Ct. 2018)....... 21

<u>Commonwealth v. Hason</u>, 387 Mass. 169, 174 (1982)........................................... 21

<u>Commonwealth v. Roman</u>, 414 Mass. 642, 643 (1993)......................................... 21

<u>Garcia v. Berkshire Life Ins. Co. Of Am.</u>, 569 F.3d 1174, 1177-1180

 (10th Cir. 2009)...................................................................................................... 6

<u>Gutierrez v. Mass. Bay. Transp. Auth.</u> 437 Mass 396, 407,

772 N.E.2d 563 (2002)........................................................................................... 18

<u>Hutchins v. McKay,</u> 285 F. Supp. 3d 420, 429-430 (D. Mass. 2018)...............17, 18

<u>Independent Oil and Chemical Workers of Quincy, Inc. v. PG Mfg. Co.</u>, 864 F.2d

927, 929 (1st Cir. 1988)..................................................................................... 2, 3, 7

Lund v. Henderson, 22 F. Supp. 3d 94, 102 (D. Mass. 2014)................................19

Morash Sons, Inc. v. Commonwealth, 363 Mass. 612, 625 n.7 (Mass. 1973)....... 25

Payne v. Pauley, 337 F.3d 767, 778 (7th Cir. 2003)............................................... 24

Richardson v. City of Boston, 53 Mass. App. Ct. 201, 202

(Mass. App. Ct. 2001)........................................................................................... 21

Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151,

150 L.Ed.2d 272 (2001)......................................................................................... 16

Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999)............................... 23

Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923)..............................13

South Boston Betterment Trust Corp. v. Boston Redevelopment Auth.,

438 Mass. 57, 69 (2002)........................................................................................ 25

Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 286 n.9 (Mass. 1985)..25

Tippens v. Celotex Corp. , 805 F.2d 949, 952–53 (11th Cir. 1986)...........................3

United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997)..................................... 23

Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1314 (8th Cir. 1991)......10

Village of Willowbrook v. Olech, 528 U.S. 562, 565 (2000)..................................13

## STATUTES

42 U.S.C. § 1983 ("section 1983")....................................................................12, 14

Mass. General Laws c. 209A § 4……………………………………………… 11

Mass. General Laws c. 209A § 5 ……………………………………11, 13, 16

**OTHER AUTHORITIES**

Fed. Rules of Evidence 801(d)(2)(E).....................................................…… 9

Moore's Federal Practice § 56.15 (2d ed. 1985)........................................ 3

The Plaintiff-Appellant, Imad El Khoury ("El Khoury"), submits this Reply Brief in support of his appeal of the judgment against him in this case, and in reply to the Brief filed by the Defendants-Appellees ("Weston Defendants").

## ARGUMENT

### I. Weston Defendants do <u>not</u> dispute that the affidavit of Sgt Bousios lacks credibility.

In their brief, Weston Defendants stated:

> "Further, to the extent that the Plaintiff contends "that the District Court erred in not striking the affidavit of Sgt. Bousios for lack of credibility," it is critical to note that the Plaintiff never moved to strike that affidavit and has therefore waived all such arguments." (Weston Defendants' Brief, p. 57)

> To begin with, Weston Defendants throughout their brief did **not** dispute that the affidavit of Sgt. Bousios lacks credibility. Nonetheless, the statements of Weston Defendants that "El Khoury" has waived all arguments in regards to the affidavit of Bousios are incorrect, since "El Khoury" has properly preserved objections at various stages of the lower court proceedings. During the hearing on the Motion for Summary Judgment, held on November 21, 2022 before Judge Boal, "El Khoury" stated the following:

> "it turned that Sergeant Bousios continues to -- to be employed within the Town of Weston and not Westwood. And this brings me, your Honor, to question whether actually Sergeant Bousios saw this affidavit at all or whether it was some attorney representing Bousios, who wrote it because

clearly a person would not forget, you know, whether he's employed in Weston or Westwood or Westborough, right." [1]

In his objections to Judge Boal's Report and Recommendations under Objection No. 3, "El Khoury" stated, among others, that a jury could reasonably infer that Sergeant Bousios has not read or reviewed his affidavit, and that such an affidavit, therefore, lacks credibility. Moreover, "El Khoury" stated that the false statement in Bousios' affidavit that he is employed in Westwood instead of Weston is evidence that all sworn statements for Sgt Bousios lack credibility. (Doc. No. 156 pp. 11 - 12)

In his Initial Brief, "El Khoury" has raised again the afore-mentioned arguments, and argued that the District Court erred in inferring that it appears to be a typographical error that Sgt Bousios stated in his affidavit that he is employed in Westwood, instead of Weston. "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "El Khoury" contended further that the district court should have stricken the affidavit of Sgt. Bousios since it lacks credibility. (El Khoury's Brief, pp. 29 - 31).

"Abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and

---

[1] Transcript, Doc. No. 179, from page 21, line 23 till page 22, line 4

no improper factors are assessed, but the court makes a serious mistake in weighing them." <u>Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.</u>, 864 F.2d 927, 929 (1st Cir. 1988). "To warrant reversal for abuse of discretion, it must plainly appear that the court below committed a meaningful error in judgment". <u>Anderson v. Cryovac, Inc.</u>, 862 F.2d 910, 923 (1st Cir. 1988). Given that "Weston" and "Westwood" are two different names for two different towns in Massachusetts, a jury could reasonably infer that Sgt Bousios neither authored nor read his affidavit and that someone else drafted his affidavit. Nonetheless, a reasonable jury would also infer that **all** other sworn statements of Sgt Bousios lack credibility. "A party's affidavit should be considered although it differs from his evidence given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility." <u>Tippens v. Celotex Corp.</u>, 805 F.2d 949, 952–53 (11th Cir. 1986) (quoting Moore's Federal Practice § 56.15 (2d ed. 1985)). In light of the foregoing, the district court abused its discretion when it chose not to strike/disregard the affidavit of Bousios and all his other sworn statements for lack of credibility.

## II. Weston Defendants have abandoned their statement that officer Broughton has electronically signed the summons report.

In his initial brief, "El Khoury" argued that the district court erred in admitting as fact that Officer Broughton authored the summons report, and erred in admitting as fact that officer Broughton selected "Apparent minor injury" in the

victim(s) section of the summons report. Moreover, "El Khoury" argued that Weston Defendants' statements that 'Officer Broughton authored and electronically signed the summons report' [2] are false, since the summons report[3] demonstrates clearly that there is **no** electronic signature to any officer, and there is **no** mention at all to Officer Broughton. (El Khoury's Brief, pp. 23 - 25)

Throughout their brief, Weston Defendants have abandoned their false statement that officer Broughton electronically signed the summons report. Nonetheless, Weston Defendants have failed to provide any counter-argument to the arguments and evidence that "El Khoury" provided in his brief.

## III. Doc. No. 135-2 ("Exhibit 2") is a false document, and the district court erred in not striking it, and erred in not sanctioning Weston Defendants.

In his brief, "El Khoury" has demonstrated extensively how Weston Defendants falsified Doc. No. 135-2 ("Exhibit 2") and submitted it to the court in order to advance their false statement that officer Broughton authored and electronically signed the summons report. In fact, "El Khoury" has highlighted, among other things, the multiple alterations Weston Defendants had made to the structure and composition of each page of Exhibit 2, in addition to substantial fabrications made to the header section of certain pages. (see El Khoury's brief, pp. 25 -27). On the other hand, Weston Defendants stated that "there is no evidence

---

[2] Def. Resp. ¶ 72; Def. SOF ¶ 5
[3] Doc. No. 141-6 at 1 and 2

from which a jury could find Exhibit 2…was falsified." (Weston Defendants' brief, p. 58).

Furthermore, Weston Defendants stated: "According to the Plaintiff's second motion to strike, it appeared that the plaintiff was requesting the District Court to consider his version of this document rather than the version supplied by the Defendants." Id. The afore-mentioned statement of Weston Defendants is absurd for the following reasons. First, "El Khoury" filed his Motion to strike Exhibit 2 since such document has been falsified. In his motion, "El Khoury" pointed to alterations made to the structure and composition of different pages of the document, to the page numbers, and to the omission of the handwritten signature of Sgt. Bousios from its first page (see Doc. No. 138 at pp. 1-3). Moreover, during the hearing on the Parties' motions for summary judgment, "El Khoury" stated that Doc. No. 135-2 "has been manufactured to deceive the reader, and it is considered fraud on the court.." [4]. "El Khoury" also stated that he believes that the court should even take related sanctions.[5] Nonetheless, "El Khoury", in his objections to Judge Boal's Report and Recommendations under Objection No. 1, urged the district court again to strike Doc. No. 135-2 since it is a false or manufactured document, and requested again that the court sanction the Weston Defendants accordingly for such abusive legal practices (Doc. No. 156 at pp. 2 - 8).

---

[4] Transcript, Doc. No. 179, p. 11, line 18- line 19
[5] Id. p. 15, line 6

In addition, Weston Defendants argued that El Khoury "offers absolutely no legitimate explanation on appeal as to how the District Court abused its discretion in denying his motion to strike Exhibit 2, especially when it did not even consider Exhibit 2 in its analysis of the parties' cross-motions for summary judgment." (Weston Defendants' brief, pp. 58 - 59). The aforementioned statements for Weston Defendants are incorrect, since "El Khoury" argued extensively in his brief that Weston Defendants submitted Doc. No. 135-2 to advance their false statement that officer Broughton authored and electronically signed the summons report. Nonetheless, "El Khoury" cited *Garcia v. Berkshire Life Ins. Co. of Am.*, in which the plaintiff, Tina Garcia, presented a fabricated e-mail string to the court, in relation to a discovery motion. The magistrate judge concluded that Ms. Garcia prepared fabricated evidence 'willfully, knowingly, intentionally, after careful contemplation, for self-serving purposes'. As such, the magistrate judge recommended that Ms Garcia's claims be dismissed with prejudice, and the district court adopted such recommendation. On appeal, the Tenth Circuit affirmed the district court's decision, and stated: "*Nor is the exclusion of the fabricated evidence is always enough to deter discovery misconduct. Litigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues.*" Garcia v. Berkshire Life Ins. Co. Of Am., 569 F.3d 1174, 1177-1180 (10th Cir. 2009) (Emphasis added). see El Khoury's

brief, pp. 25 - 29. "Abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." <u>Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.</u>, 864 F.2d 927, 929 (1st Cir. 1988). "To warrant reversal for abuse of discretion, it must plainly appear that the court below committed a meaningful error in judgment". <u>Anderson v. Cryovac, Inc.</u>, 862 F.2d 910, 923 (1st Cir. 1988). In the instant case, the district court abused its discretion when it turned a blind eye to the false document and calculated fabrications that Weston Defendants made to advance their false statement that officer Broughton authored and electronically signed the summons report. The foregoing is destructive to the integrity of the justice system.

**IV.    Cummings did <u>not</u> author her affidavit when she was in the Weston Police Station on May 24, 2020.**

In their brief, Weston Defendants have abandoned their statement that the first two pages of the Abuse Prevention Order were **not** faxed to Waltham District Court on May 25, 2020 at 12:18 am. Thus, it follows that the eleven-page document (AD 61 - 71)[6] submitted by Weston Defendants is a false document for all the arguments "El Khoury" made in his brief (El Khoury's brief, pp. 36 - 39).

---

[6] "AD" refers to Addendum to El Khoury's initial brief

Moreover, the undisputed evidence demonstrates that the eleven pages that were faxed to Waltham District Court are the following:

- The four pages that make up the Abuse Prevention Order [7]

- The two pages that make up the summons report [8]

- One page that represents the narrative of officer Broughton [9]

- One page that represents the supplemental narrative of Sgt Bousios [10]

- The three pages that represent queries undertaken by Sgt. Bousios on May 24, 2020 [11]

Thus, a jury could reasonably infer that Cummings' affidavit was **not** faxed to Waltham District Court on May 25, 2020 at 12:18 am because Cummings did not author her affidavit while she was in the station on the evening of May 24, 2020. It also follows that Cummings did **not** apply for a 'complaint for protection from abuse' on May 24, 2020, and this could explain why the signatures attributed to Cummings on the three pages of the complaint from abuse that Sgt. Bousios completed[12] vary significantly in shape, size, and dimension. Nonetheless, it follows that since Cummings did not author her affidavit while she was in the police station on May 24, 2020, then the sworn statements of Sgt Bousios that he

---

[7] AD 79, AD 80, Doc. No. 135-18 at 5, AD 66
[8] AD 81, AD 82
[9] AD 83
[10] AD 84
[11] Doc. No. 135 -20
[12] AD 67 - 69

spoke to Judge Michael Pomarole over the phone on the evening of May 24, 2020 and read to him the affidavit of Cummings are false.

**V.    Clerk-Magistrate Poitrast was a co-conspirator to Weston Police.**

In their brief, Weston Defendants argued, in part, that "El Khoury" has waived the argument that paragraph 28 falls under the co-conspirator hearsay exception since he mentioned it in his brief *for the first time*. (Weston Defendants' brief, p. 60). The aforementioned is not accurate. In fact, "El Khoury" has properly preserved his objections on this issue. In his objections to Judge Boal's Report & Recommendations, under objection No. 10, "El Khoury" stated that the district court erred in striking paragraph 28 of his affidavit, and he referred to the Motion for Recusal of Mr. Poitrast[13] in which "El Khoury" stated that clerk-magistrate Poitrast lacked impartiality (Doc. No. 156 at pp. 24- 26). Moreover, "El Khoury" stated in his objections that "Despite knowing that Sergeant Bousios did **not** speak to the on-call judge on May 24, 2020, Clerk-Magistrate Poitrast still went on and docketed the Abuse Prevention Order in Waltham District Court on May 26, 2020." Id. at 51. Thus, "El Khoury" had described in his objections the conspiracy between Mr. Poitrast and Weston Police. What "El Khoury" stated for the first time in his brief was that such conspiracy falls under Fed. Rules of Evidence 801(d)(2)(E), and he stated it to improve the argument he had already made in his

---

[13] Doc. No. 135-27

objections. "Appeals courts don't want to prevent parties from improving arguments that were presented in a more rudimentary form below. [O]ne of the primary purposes of appellate review would be undermined, after all, if a court refuse[d] to consider each nuance or shift in approach urged by a party simply because it was not simply urged below.' <u>Universal Title Ins. Co. v. United States</u>, 942 F.2d 1311, 1314 (8th Cir. 1991).

The expungement of the abuse prevention order (or "209A", thereafter) sheds additional light on the conspiracy between Weston Police and Mr. Poitrast. Initially, Judge Ellis (Waltham District Court) allowed the motion to expunge the 209A stating that the relationship between "El Khoury" and Cummings was a landlord-tenant relationship, not a qualifying G.L.c. 209A relationship. Judge Ellis also ruled that the Order is hereby ***void ab initio*** as of 6/1/2020.[14] On January 13, 2021, Massachusetts Probation Services ("Probation") filed a Motion seeking clarification or reconsideration of the Court's decision on the expungement of the 209a issued against "El Khoury". In its Motion, Probation stated, among others:

> "The record does not support the entry of expungement... A court may only consider expungement of a c. 209A order, **when it explicitly finds by clear and convincing evidence that the petitioner obtained the order through fraud on the court.** Fraud upon the court must be supported by sufficient subsidiary findings." [15]

---

[14] Pl. SOF ¶ 104
[15] Pl. SOF ¶ 106 (emphasis added)

Surprisingly, Probation withdrew their Motion on June 4, 2021, stating that the emergency Order issued pursuant to G.L. c. 209A § 5 and not pursuant G.L.c. 209A § 4.[16] [17] Thus, it could be reasonably inferred that Probation withdrew their Motion and abandoned the stringent expungement standard for the court to 'explicitly find by clear and convincing evidence that the petitioner obtained the order through fraud on the court', so that there won't be a need to say that Weston Police authorized the issuance of the abuse prevention order against "El Khoury", and that Mr. Poitrast should not have docketed the order in Waltham District Court.

The aforementioned justifies further why Judge Ellis specified that the inception of the Abuse Prevention Order was 06/01/2020 and not 05/24/2020.

All of the foregoing, along with all the arguments and evidence included in El Khoury's initial brief, demonstrate that paragraph 28 of El Khoury's affidavit should not be stricken because Mr. Poitrast made such statements in furtherance of the conspiracy between him and Weston Police. Mr. Poitrast wanted "El Khoury" not to say in the upcoming show-cause hearing that Weston Police altered the narrative, and it could be also inferred that Mr. Poitrast intended to intimidate "El Khoury" in furtherance of such conspiracy.

---

[16] Pl. SOF ¶ 107

[17] This is wrong. First, the 209A was extended on June 1, 2020 pursuant to G.L.c. 209A § 4. More importantly, whether an Order was issued pursuant to c. 209A § 5 and not G.L.c. 209A § 4 is not grounds for expungement.

**VI.    The district court erred in admitting as fact that Judge Michael Pomarole issued the abuse prevention order.**

In his brief, "El Khoury" provided a detailed argument from which a jury could reasonably infer that the abuse prevention order issued against "El Khoury" was authorized by Weston Police (El Khoury's Brief, pp. 41 -47). On the other hand, Weston Defendants in their brief did **not** produce any relevant counter-arguments to El Khoury's arguments.[18]

When ruling on Weston Defendants' Motion for Summary Judgment, the district court failed to construe the evidence in light most favorable to "El Khoury" (the non-movant) who is entitled to the benefit of all reasonable inferences, and thus erred in granting Weston Defendants' Motion for Summary Judgment as to El Khoury's section 1983 claims.

By authorizing the issuance of the 209A against "El Khoury", Weston Police have deprived "El Khoury" of his protected property interest and liberty without due process of law. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement

---

[18] Note that the District Court (Sorokin, J) denied El Khoury's request to have access to the call log of the Judicial Response System (JRS) phone. The District Court stated, in part, that such discovery is an unwarranted, unjustified, and unnecessary intrusion into the judicial process not subject to discovery in this case. (Doc. No. 113)

to it." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). In the instant case, "El Khoury" was evicted from his rented room on Sunday, May 24, 2020 at about 9:00 pm; he had paid on May 1, 2020 the monthly rent for the full month of May.[19] In addition, certain restrictions were placed on El Khoury's freedom of movement as a result of the issued 209A.

In regards to the "Class of One" claim, "A plaintiff can allege a 'class of one' equal protection claim if he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. <u>Village of Willowbrook v. Olech,</u> 528 U.S. 562, 565 (2000) (quoting <u>Sioux City Bridge Co. v. Dakota County</u>, 260 U.S. 441 (1923))**.** Accordingly, in a 'class of one' claim, "the court would ask whether a reasonable official in the defendant's position would have known that she was violating the plaintiffs Equal Protection rights when she singled him out for differential treatment." <u>Harlow v. Fitzgerald,</u> 457 U.S. 800, 818-819 (1982). In the instant case, G.l.c. 209A § 5 states that when the court is closed for business a judge may authorize the issuance of an abuse prevention order, and communicate such order by phone to a police officer. The undisputed evidence, viewed in light most favorable to "El Khoury" who is entitled to the benefit of all reasonable inferences, demonstrates that Sgt. Bousios

---

[19] Pl. SOF ¶ 47

did **not** speak to Judge Pomarole on the evening of May 24, 2020, and thus Weston Police authorized the issuance of the 209A against "El Khoury".

Nonetheless, as "El Khoury" detailed in his brief, Weston Defendants failed to provide an audit report associated with the digital signature of Weston Police on the abuse prevention order ("audit report"). El Khoury's brief, pp. 45 - 47. In *AC Asset, LLC v. Mitchell,* AC Asset (plaintiff-Appellee) provided evidence of an electronically signed lease agreement and an **audit report** documenting the execution of the lease agreement. The audit report printed from Adobe Sign showed a timeline of the preparation, submission, and execution of the lease agreement. AC Asset, LLC v. Mitchell, No. 110818, 2022 Ohio 1763 (Ohio Ct.App. 2022). Construing the undisputed facts in light most favorable to "El Khoury" who is entitled to all reasonable inferences, and given all the arguments "El Khoury" made in his brief, the district Court erred in granting Weston Defendants' Motion for Summary Judgment as to El Khoury's section 1983 Conspiracy claim.

**<u>Note:</u>** On or about March 15, 2022, "El Khoury" filed a Motion for leave of Court to serve Weston Defendants with a request to produce the audit report (Doc. No. 100). On or about April 14, 2022, the district court (Boal, J) held a motion hearing, and on April 26, 2022, judge Boal denied the part of El Khoury's motion in which

he requested that Weston Defendants produce the audit report. In her Order, the district court (Boal, J) stated:

> "El Khoury has not provided any information regarding why he should be allowed to serve a new document request …months after the deadline for doing so has passed. He has failed to demonstrate the good cause necessary for making these requests after the deadline." Doc. No. 115 at 7.

On the other hand, when Weston Defendants filed on April 26, 2022 a motion for leave of Court to modify the standing Order Regarding Briefing of Summary Judgment Motions for Judge Leo T. Sorokin's Session so that Weston Defendants move first for summary judgment (Doc. No. 116), the district Court (Boal. J), after about 3 business hours, allowed their motion (Doc. No. 117). It is noteworthy to mention that prior to the Weston Defendants' motion, "El Khoury" had informed the court (Boal, J) and Weston Defendants' counsel that he intended to move for summary judgment. see Opposition of "El Khoury" in which he showed that Weston Defendants' counsel made false statements (Doc. No. 118) and the court made no changes to its prior order (Doc. No. 119).

In his Notice to Appeal, "El Khoury" appeals from the part of Judge Boal's Order in which she denied his Motion to serve the Weston defendants with a request for the production of the audit report (Doc. No. 160 at 2). Though he served his request for the production of the audit report about two months after the relevant deadline, "El Khoury" believes that the district court should have exercised its discretion and allowed his motion for the following reasons. First, the

production of the audit report is neither burdensome nor costly, since producing the

audit report takes a few seconds, and Weston Defendants can produce it from their

Adobe account. Secondly, and most importantly, the audit report would reveal

material facts that could resolve the whole case. Nonetheless, the "good cause" that

the district court (Boal, J) raised in its order when it denied El Khoury's motion

seems not convincing, because judge Boal never mentioned what "good cause" the

Weston Defendants had that justified modifying the Standing Order Regarding

Briefing of Summary Judgment Motions for Judge Leo T. Sorokin's Session.

## VII.    Weston Defendants are not entitled to Qualified Immunity.

"To determine whether police officers (defendants) are entitled to qualified

immunity, the court must first ask whether the facts alleged, taken in the light most

favorable to the Plaintiff, show that police officers violated a constitutional right,

and whether such right was clearly established at the time of the alleged injury.

Saucier v. Katz, 533 U.S. 194, 201 (2001). The relevant inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation the officer confronted.

Saucier, 533 U.S. at 202. Given that the issuance of an emergency abuse

prevention order is governed by G.L.c. 209A § 5, and upon viewing the facts

mentioned in El Khoury's initial brief and in this reply brief in light most favorable

to "El Khoury" and drawing all reasonable inferences in his favor, a jury could

reasonably infer that Bousios and Goulding knowingly violated the constitutional

rights of "El Khoury" and issued the 209A to evict him from his rented room.

**VIII.    The District Court erred in granting Weston Defendants' Motion for Summary Judgment as to El Khoury's abuse of process claim.**

In their brief, Weston Defendants argued that El Khoury's abuse of process

claim against Defendants Bousios, Goulding, and Carlo fails because there is no

evidence in the summary judgment record to suggest that the Defendants had an

ulterior motive for applying for the criminal complaint against him (Weston

Defendants' Brief, p. 44).

As detailed in El Khoury's initial brief and in this reply brief, the undisputed

evidence, when viewed in light most favorable to the non-movant [El Khoury] and

after drawing all reasonable inferences in his favor, demonstrates that Sgt Bousios

created, completed, signed, and then faxed the summons report to Waltham District

Court on May 25, 2020 at 12:18 am. The fact that Sgt Bousios denies that he

created the summons report demonstrates that he had an ulterior motive, and given

that Sgt Bousios signed the abuse prevention order when his handwritten signature

is **not** required, a jury could reasonably infer that Sgt Bousios created the summons

report, selected "Apparent minor injury" to exaggerate the gravity of the situation

so that the prosecutor would be more likely to press charges against "El Khoury",

and he did all of that to cover-up the first crime - the illegal issuance of the 209A

against El Khoury. "An abuse of process claim may still survive where there is

evidence that the officers' reports intentionally exaggerated the gravity of the situation so that the prosecutor would be more likely to press charges." Hutchins v. McKay, 285 F. Supp. 3d 420, 429-430 (D. Mass. 2018) (quoting Gutierrez v. Mass. Bay. Transp. Auth. 437 Mass 396, 407, 772 N.E.2d 563 (2002)). In the instant case, the summons report indicates "Apparent Minor Injury", which is false evidence. When viewed in light most favorable to "El Khoury", a jury could reasonably infer that Sgt Bousios selected "Apparent minor injury" in the summons report while he was unaware that Officer Broughton wrote in her narrative that Cummings was uninjured. Nonetheless, as "El Khoury" explained in his initial brief, genuine issues of material fact exist as to whether Sgt Bousios falsified the original narrative of officer Broughton, given that the header section of the narrative indicates that it was modified, and given all that is mentioned in the brief in relation to the "Entered" notation (El Khoury's initial brief, pp. 32- 34). "Where a jury can draw opposite inferences from the evidence, summary judgment is improper." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986).

Nonetheless, the undisputed factual record demonstrates that Det Carlo filed the application for criminal complaint on July 14, 2020[20], after about 50 days from the main incident date. When ruling on Weston Defendants' Motion for summary judgment, the district Court erred in choosing to believe that Carlo filed the

---

[20] Pl. SOF ¶ 100

application on May 26, 2020 and that the application was docketed on July 14, 2020[21], as such facts were **not** viewed in light most favorable to "El Khoury". "It is not within the province of the court to make credibility determinations in the context of a motion for summary judgment; the veracity of a witness' testimony, as well as the weight to be accorded that testimony, is for the jury to decide." Lund v. Henderson, 22 F. Supp. 3d 94, 102 (D. Mass. 2014). A jury could reasonably infer that after Sgt Bousios faxed the eleven-page document on May 25, 2020, the prosecuting attorney declined to press charges against "El Khoury", and as the issued 209A was approaching its expiry date, clerk-Magistrate Poitrast, the co-conspirator of Weston Police, issued a notice for a "show-cause hearing" to use the legal process as a means to release Weston Police from any potential civil liability. Furthermore, given that Det. Carlo denied El Khoury's request to invite officer Broughton as a witness to the "show-cause hearing" and given that officer broughton did not attend the hearing despite being served with a subpoena, and in light of all what "El Khoury" mentioned in his initial brief and in this reply brief, a jury could reasonably infer that Bousios, Carlo, and Goulding had an ulterior motive. (El Khoury's initial Brief, pp. 52 - 55)

Also, Weston Defendants argued that El Khoury's abuse of process claim fails because he has failed to make the required showing that Weston Defendants'

---

[21] AD 19

use of the legal process caused him any damage (Weston Defendants' brief, p. 47). The aforementioned is incorrect. "El Khoury" stated in his affidavit that throughout the period in which Weston Defendants' application for criminal complaint was still pending, "El Khoury" experienced emotional distress; his pre-existing medical condition worsened; he lost enjoyment in life; he withdrew from a lot of social and community activities, and also cut down on his hours of work.[22] During discovery phase, "El Khoury" has shared with Weston Defendants summaries of his tax returns that demonstrate a substantial drop in income, and shared a credit card statement that demonstrates that he incurred $3,000 in attorney's fees.

IX.     **Weston Defendants lacked probable cause when they filed the application for criminal complaint, and they acted with an improper motive.**

In their brief, Weston Defendants wrote:

> "There is no dispute that, on May 24, 2020, Cummings went to the Weston Police Station and stated to Officer Broughton that the Plaintiff had intentionally grabbed her arm without consent during an argument earlier that evening and that she was afraid of the Plaintiff. [ECF No. 134, ¶¶ 3-9]. Cummings also included these statements within an affidavit she authored in support of a 209A order that evening. These statements by Cummings satisfied the elements of assault and battery: that an unjustified touching occurred and that the touching was (1) physically harmful; (2) potentially physically harmful; or (3) nonconsensual."
>
> (Weston Defendants' Brief page 49)

---

[22] Pl. SOF ¶ 130

The foregoing statements of Weston Defendants do **not** constitute sufficient and trustworthy evidence to establish probable cause. "A demonstration of probable cause requires more than mere suspicion but something less than evidence sufficient to warrant a conviction." Commonwealth v. Roman, 414 Mass. 642, 643 (1993), quoting from Commonwealth v. Hason, 387 Mass. 169, 174 (1982). In *Richardson v. City of Boston,* "there was a c. 209A relationship between the victim and Richardson; probable cause was established after the sergeant observed that the victim was bruised when she reported to the police station. The victim also mentioned to the sergeant that she had been assaulted by Richardson two days before, causing her to move in with her sister because of her fear of him. A police report on file with respect to that incident stated that Richardson had punched the victim in the face, thrown a beeper against a wall and a television set on the floor and then fled. The report also identified another witness to some of the violence." Richardson v. City of Boston, 53 Mass. App. Ct. 201, 202 (Mass. App. Ct. 2001). Also, in *Commonwealth v. Geordi,* there were witnesses who saw that Geordi, a juvenile, bumped the teacher [the victim] in the school. Both the teacher and the principal wrote that the juvenile pushed the teacher after arguing with her. The counsellor also wrote that she observed the juvenile address the principal in a threatening manner and then bump him with the juvenile's side. Commonwealth v. Geordi G, 111 N.E.3d 1102, 1107 (Mass. App. Ct. 2018). In the instant case,

Officer Broughton stated that she didn't see any bruises once she first met Cummings in the police station; the "Apparent Minor Injury" selected in the summons report is false evidence; "El Khoury" confirmed to Officer Broughton that he did not touch Cummings in any way; there is no evidence that "El Khoury" had the requisite intent to touch Cummings; there are no facts in the record that corroborate the statements that Cummings made to Weston Police on the evening of May 24, 2020. The relationship between "El Khoury" and Cummings had been civil till May 24, 2020 (the incident day).[23] Cummings offered to come to El Khoury's room to check the water[24]. In addition, Cummings' statements lack credibility. In her affidavit, Cummings tried to convey that she was afraid and she had received threatening text messages. The exchanged text messages demonstrate the absence of any threatening nature[25], and a reasonable jury could infer that if Cummings were to perceive any text messages as threatening, she would not have offered to come to the room, in light of the fact that El Khoury's room had no locks and Cummings could enter at a later time as she did in prior incidents[26], and given that "El Khoury" was then preparing himself to leave the house for work. Nonetheless, Cummings met "El Khoury" in the kitchen, about 25 minutes after

---

[23] Pl. SOF ¶ 45, ¶ 46
[24] Pl. SOF ¶ 50
[25] Doc. No. 135-16
[26] Pl. SOF ¶ 40

she had left his room.[27] In her affidavit, Cummings accused "El Khoury" of causing water leaks and damages for the first time, whereas the factual record demonstrates that the bathroom was old and that Cummings called a plumber in January who replaced a part; Cummings then thanked "El Khoury" for his patience.[28] When "El Khoury" texted that he will withhold any payment for June until hot water is fixed properly, Cummings texted back that if rent is not paid on June first, "El Khoury" has to leave and she suggested not to play a hard ball with her.[29] It could be inferred from the foregoing that Cummings had the requisite intent to evict "El Khoury" from his rented room.

The malice element of malicious prosecution requires that the accuser knew there was no probable cause for the commencement of the action, and that the accuser acted with an improper motive. Beecy v. Pucciarelli, 387 Mass. 589, 593, 441 N.E.2d 1035, 1039 (1982). "Probable cause is to be determined based on the collective knowledge and information of all the officers involved." Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999) (quoting United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997)). It is undisputed that Officer Broughton told "El Khoury" to avoid any problem or argument with Cummings upon returning back to the house.[30] Thus, it could be inferred that officer Broughton did not believe that

---

[27] Pl. SOF ¶ 59
[28] Pl. SOF ¶ 39, ¶ 41; Doc. No. 135-16 at pp. 1-4, and Doc. No. 135-17
[29] Pl. SOF ¶ 47
[30] Def. SOF ¶ 8

"El Khoury" committed the crime of assault & battery, nor did she believe that he would commit any crime upon returning to the house. In addition, as "El Khoury" explained in his initial brief and in this reply brief, there is ample evidence (such as the selection of 'apparent minor injury' in the summons report and alterations made to the original narrative of Broughton, etc..) from which a jury could reasonably infer that Weston Defendants acted with an improper motive. ("El Khoury's brief, pp. 48 - 56).

## X. The District Court erred in granting Weston Defendants' Motion for Summary Judgment as to El Khoury's Assault & MCRA claims.

In his initial brief, "El Khoury" argued thoroughly that the district court erred by crediting Officer Holmes' version of the events that took place on June 2, 2020[31]. Upon ruling on Weston Defendants' Motion for summary judgment, the district court erred when it considered the reasonableness of Holmes' actions in light of her version of the events, and not in light of El Khoury's version of the events[32]. "It is the job of the jury, and not the district court judge at summary judgment, to determine which party's evidence to credit." <u>Payne v. Pauley</u>, 337 F.3d 767, 778 (7th Cir. 2003).

---

[31] Note that the district court used quotations around "wilfully blocked" in AD 18, but "El Khoury" did **not** use quotations (Pl. SOF ¶ 128; Doc. No. 156 at 63)
[32] see El Khoury's Initial Brief, pp. 56 - 60.

**XI.    Weston Defendants are not entitled for common law immunity.**

Weston Defendants' argued in their brief that El Khoury's intentional tort claims also fail because the Defendants are protected by common law immunity. (Weston Defendants' brief, p. 56). "While public employers . . . may not be held liable for intentional torts committed by their employees, the employees may be personally liable for any harm they have caused." Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 286 n.9 (Mass. 1985) (quoting Morash Sons, Inc. v. Commonwealth, 363 Mass. 612, 625 n.7 (Mass. 1973)). "Common law immunity shields public officials from liability for intentional tort claims arising from their official acts, where there is no evidence that they acted in bad faith." South Boston Betterment Trust Corp. v. Boston Redevelopment Auth., 438 Mass. 57, 69 (2002). When ruling on Weston Defendants' Motion for summary judgment and while viewing all the facts in light most favorable to "El Khoury" and drawing all reasonable inferences in his favor, a jury could reasonably infer that Weston Defendants, among other things, violated the civil rights of "El Khoury", fabricated evidence and submitted it to the court, assaulted him on June 2, 2020, and filed an application for criminal complaint against him despite knowing that they lacked probable cause.

**<u>CONCLUSION</u>**

For all the reasons set forth in his Initial Brief and in this Reply Brief, the Appellant-Plaintiff, "El Khoury", respectfully requests that this Court reverse the District Court's granting of Weston Defendants' Motion for Summary Judgment on all claims, and enter judgment in his favor.

Respectfully submitted,                          Dated: December 4, 2023

Appellant-Plaintiff (pro se)

 /s/ Imad El Khoury

Imad El Khoury (Pro Se)
1579 Race Lane, Marstons Mills, MA 02648
Phone: 781-392-8458
email: imadkho@yahoo.com

## **CERTIFICATE OF COMPLIANCE**

I, Imad El Khoury (pro se), hereby certify that this Reply Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) and any other related rule. The word count function of Microsoft Word indicates that this Brief contains 6,233 words, excluding those portions of this brief exempted by Fed. R. App. P. 32(f). I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) since this brief has been prepared in proportionally spaced typeface using Google Docs in a 14-point Times New Roman font.

Dated: December 4, 2023

/s/ Imad El Khoury

Imad El Khoury (Pro Se)
1579 Race Lane, Marstons Mills, MA 02648
Phone: 781-392-8458
email: imadkho@yahoo.com

## **CERTIFICATE OF SERVICE**

I, Imad El Khoury, hereby certify that on December 4, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. Counsel for all parties to the case are registered with CM/ECF and will be served by the appellate CM/ECF system.

/s/ Imad El Khoury

Imad El Khoury (Pro Se)
1579 Race Lane, Marstons Mills, MA 02648
Phone: 781-392-8458
email: imadkho@yahoo.com